## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
                                    )
THE NATIONAL SECURITY ARCHIVE       )
Gelman Library, Suite 701           )
2130 H Street, N.W.                 )
Washington, D.C. 20037,             )
                                    )
         Plaintiff,                 )
                                    )
v.                                  )          Case No. _____
                                    )
CENTRAL INTELLIGENCE AGENCY,        )
Washington, D.C. 20505,             )
                                    )
GENERAL MICHAEL V. HAYDEN,          )
in his official capacity as Director of the   )
Central Intelligence Agency,        )
Washington, D.C. 20505, and         )
                                    )
SCOTT A. KOCH, in his official capacity   )
as Information and Privacy Coordinator of   )
the Central Intelligence Agency,    )
Washington, D.C. 20505,             )
                                    )
         Defendants.                )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, the National Security Archive ("Archive"), brings this action for declaratory

and injunctive relief, alleging as follows:

### NATURE OF ACTION

1.       This is an action for violation of the Archive's rights under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, as amended by the Freedom of Information Reform

Act of 1986 ("FIRA"), against the Central Intelligence Agency ("CIA").  This is also an action

for violation of the Archive's rights under the under the Administrative Procedure Act ("APA"),

5 U.S.C. §§ 701-06, and the Declaratory Judgment Act, 28 U.S.C. § 2201, against the CIA, General Michael V. Hayden, in his official capacity as Director of the CIA, and Scott A. Koch, in his official capacity as Information and Privacy Coordinator of the CIA (collectively "Defendants").

2.    Since October 2005, Defendants have systematically and unlawfully denied the Archive's rights, as a representative of the news media, *not* to be charged processing fees (other than copying fees) in connection with the Archive's FOIA requests to the CIA for agency records. Defendants' illegal policy and practice of charging the Archive search fees in connection with its requests is directly contrary to the decision of the United States Court of Appeals for the District of Columbia Circuit in *National Security Archive v. United States Department of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1029 (1990), and violates the Order of the District Court in *National Security Archive v. CIA*, Civ. No. 88-0501 (D.D.C. Jan. 30, 1990) ("1990 Memorandum and Order") (**Exhibit 1 hereto**), that the CIA "must treat plaintiff as a 'representative of the news media' within the meaning of" the FOIA. This illegal policy and practice is irreparably injuring the Archive's ability to collect and disseminate comprehensive government documentation pertaining to selected issues of major public concern in the areas of foreign, defense, intelligence, and international economic policy, as well as the Archive's ability to monitor the operations of the CIA and the federal intelligence community at a time of utmost public concern regarding the federal government's intelligence activities. It also is significantly interfering with the public's right to know about these activities. Just as problematic, the CIA's new unlawful regime provides the CIA, not reporters and editors, with broad discretion to decide what constitutes "news."

3.    Under the FOIA, whenever a "representative of the news media" requests records from a federal agency, the disclosing agency may not impose upon the requester the costs of searching for and reviewing the records it releases, so long as the request is not made for a commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii). The agency may charge a "representative of the news media" only for duplication costs. *Id.*

4.    In 1989, the D.C. Circuit held that the Archive is entitled to preferential fee treatment under the FOIA as a "representative of the news media." *See Archive v. DOD*, 880 F.2d at 1387. In 1990, recognizing the precedential effect of the D.C. Circuit's decision, the District Court reached the same conclusion specifically with respect to FOIA requests submitted by the Archive to the CIA. 1990 Memorandum, Ex. 1. For 15 years, the CIA, like other federal agencies receiving FOIA requests from the Archive, abided by these decisions. Since these decisions, the Archive's status as a representative of the news media has become even more obvious and pronounced than it was at the time of the *Archive* decisions. This is evidenced by the fact that the Archive's publication activity has expanded dramatically, and its journalistic work has received numerous awards, including most recently the 2005 Emmy Award for Outstanding Achievement in News and Documentary Research.

5.    In October 2005, the CIA departed from this longstanding precedent and began systematically refusing to treat the Archive as a member of the news media and charging the Archive for search fees for FOIA requests that the Archive submitted in furtherance of its publishing activities and not for a commercial use, even though assessment of those fees was and is prohibited by the statute and the above-mentioned court decisions. In so doing, the CIA purported to rely at least in part on regulations that it promulgated in 1997, which include definitions of "[r]epresentative of the news media" and "news," 32 C.F.R. § 1900.02(h)(3). In

3

purported reliance on these regulations, the CIA determined whether to treat the Archive as a representative of the news media under the FOIA by evaluating the *substance of each individual request*, rather than the Archive's activities as a gatherer, publisher, and disseminator of news. The CIA has now demanded that the Archive pay search fees in connection with 42 separate FOIA requests submitted by the Archive, all of which sought information concerning current events or that would be of current interest to the public. The CIA also has retroactively determined that the Archive does not qualify as a representative of the news media with respect to a request it originally submitted to the CIA in 1999.

6.    Through this action, the Archive seeks a judgment: (1) declaring that the Archive is entitled to preferential status as a "representative of the news media" for purposes of assessing FOIA processing fees; (2) declaring that the CIA's contrary determinations and ongoing policy and practice of refusing to waive search fees for the Archive's FOIA requests violate the FOIA and the APA; (3) enjoining the CIA to treat the Archive as a representative of the news media for existing and future requests that are not made for commercial uses; (4) declaring invalid and enjoining enforcement of regulations relied upon by the CIA to determine that the Archive is not a "[r]epresentative of the news media," including but not limited to 32 C.F.R. § 1900.02(h)(3); and (5) providing further injunctive and equitable relief requiring the CIA immediately to process the Archive's previously submitted requests for records, to accord those requests the place in the processing queue that they would have had if the CIA had not wrongfully refused to process the requests without the Archive's agreement to pay search fees, and to disclose improperly withheld records; and, further, (6) to reimburse the Archive for all wrongfully assessed processing fees (including but not limited to search fees) that the Archive pays or has paid prior to resolution of this action.

4

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 702.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

9.    Plaintiff Archive is a not-for-profit research institution located at George Washington University in Washington, D.C.  The Archive was established in 1985 to promote research and public education on U.S. governmental and national security decision-making and to promote and encourage openness in government and government accountability.  The Archive collects, analyzes, and publishes declassified documents acquired through the FOIA.  The Archive has an extensive history of publishing and disseminating information, including publication of over 40 books; numerous extensive document sets in paper, microfiche, and electronic formats; articles appearing in a wide range of national and specialist periodicals and journals; and over 190 electronic briefing books.  The Archive has also consulted on a number of documentary films.

10.    Defendant CIA is a department of the executive branch of the United States Government.  The CIA is an "agency" within the meaning of 5 U.S.C. § 552(f).  It has possession and control over the records sought by the Archive's FOIA requests.

11.    Defendant General Michael V. Hayden (United States Air Force), is the Director of the CIA and is sued in his official capacity as Director.  Defendant CIA acts at the direction of, and is subject to the supervision of, Defendant Hayden.

12.    Defendant Scott A. Koch is the Information and Privacy Coordinator of the CIA and is sued in his official capacity as Information and Privacy Coordinator.  He is personally responsible for determining whether a FOIA requester qualifies as a "representative of the news media" and was personally responsible for failing to give the Archive preferential fee treatment for the 43 FOIA requests at issue in this action.

## BACKGROUND

### Statutory and Regulatory Framework

13.    The FOIA, as amended by the FIRA, authorizes federal agencies to charge a FOIA requester fees sufficient to recover certain costs of processing the FOIA request.  *See* 5 U.S.C. § 552(a)(4)(A).  The FOIA further authorizes federal agencies to promulgate regulations specifying the schedule of such processing fees and establishing guidelines for determining when those fees should be waived or reduced.  *See* 5 U.S.C. § 552(a)(4)(A)(i).  The FOIA requires that such regulations "shall conform" to guidelines promulgated by the Office of Management and Budget ("OMB"), which is authorized to establish guidelines and a uniform schedule of fees for all agencies.  *Id.*

14.    The FOIA expressly limits an agency's authority to recover processing fees from certain categories of requesters.  In particular, the statute requires that "agency regulations shall provide that" a "representative of the news media" who requests records from an agency for a non-commercial use may be charged only fees for record duplication.  Such a requester may not be charged fees for searching for or reviewing the records.  5 U.S.C. § 552(a)(4)(A)(ii).

15.    In 1987, the OMB promulgated fee guidelines pursuant to the FOIA which, according to OMB, apply to all agencies.  *See* 52 Fed. Reg. 10,012, 10,016 (Mar. 27, 1987).  These regulations define "representative of the news media" to mean "any *person* actively

6

gathering news for an entity that is organized and operated to publish or broadcast news to the public." *Id.* at 10,018 (emphasis added). The OMB regulations further define the term "news" to mean "information that is about current events *or* that would be of current interest to the public." *Id.* (emphasis added).

### The D.C. Circuit and District Court's Recognition of the Archive as a Representative of the News Media

16.      In *Archive v. DOD*, the D.C. Circuit held that the Archive is entitled to preferential fee treatment under the FOIA as a "representative of the news media," meaning that for purposes of non-commercial requests the FOIA authorizes federal agencies to impose on the Archive "only the cost of duplicating the records [they] release[]." 880 F.2d at 1383-87. The Court rested its decision not on the nature of the Archive's FOIA requests, but on the Archive's publication and dissemination activities, which at the time of the decision consisted of one previously published book and a firm intention to publish document sets in the future. *See id.* at 1386. Based on those activities, the Court concluded that "[a]bsent . . . a change in circumstances, . . . the Archive is entitled to preferred status." *Id.* at 1388.

17.      In *Archive v. DOD*, the D.C. Circuit also held that the Archive's intention to sell its document sets did not constitute a "commercial use" for purposes of preferred fee status under the FOIA. *Id.* at 1387-88.

18.      Similarly, in *Archive v. CIA*, the District Court agreed with the Archive that the CIA's decision not to give the Archive preferential fee treatment in connection with a FOIA request was unlawful. The District Court noted that, in *Archive v. DOD*, the D.C. Circuit had "viewed the Archive as a representative of the news media by reason of its publication activities." 1990 Memorandum at 3, Ex 1. The District Court concluded that the issues before it were "identical to those addressed" in *Archive v. DOD* and "need[ed] no further elaboration." *Id.*

at 4.  The District Court therefore "ORDERED that defendant [CIA] must treat plaintiff as a 'representative of the news media,' within the meaning of 5 U.S.C. 552(a)(4)(A)(ii)(II)."  1990 Order at 2, Ex. 1.

19.     In the 15 years following the courts' decisions in *Archive v. DOD* and *Archive v. CIA*, the Archive submitted to the CIA hundreds of FOIA requests in order to obtain information in support of the Archive's continuing publication of articles, books, and document sets.  From 1991 to October 2005, the CIA abided by the decision in *Archive v. DOD*, as well as the Order specifically directed to the CIA in *Archive v. CIA*, and recognized the Archive as a "representative of the news media" for purposes of waiving search and review fees associated with the Archive's numerous FOIA requests.  The Archive is unaware of any FOIA request that it submitted to the CIA during that time period for which the Archive was charged search or review fees.

### The Archive's Publication Activities

20.     Since the courts' decisions in *Archive v. DOD* and *Archive v. CIA*, the Archive's publication activity has expanded dramatically, and its journalistic work has received numerous awards, including most recently the 2005 Emmy Award for Outstanding Achievement in News and Documentary Research.

21.     The Archive now has an extensive publication history, including the production of over 40 books by Archive staff and fellows.  These include, among others, *Spying on the Bomb: American Nuclear Intelligence from Nazi Germany to Iran and North Korea*, by Jeffrey T. Richelson (W.W. Norton March 13, 2006); *Cardboard Castle: An Inside History of the Warsaw Pact, 1955-1991*, by Malcolm Byrne, *et al.* (Central European University Press, June 30, 2005); *The Pinochet File: A Declassified Dossier on Atrocity and Accountability*, by Peter Kornbluh

(The New Press, September 11, 2003); *The 1956 Hungarian Revolution: A History in Documents*, edited by Malcolm Byrne (Central European University Press, Jan. 1. 2003); *The Kissinger Transcripts: The Top Secret Talks with Beijing and Moscow,* by William Burr (The New Press, 1999); *Bay of Pigs Declassified: The Secret CIA Report,* by Peter Kornbluh (The New Press, 1998); *Atomic Audit: The Costs and Consequences of U.S. Nuclear Weapons since 1940,* by Stephen I. Schwartz, with Thomas S. Blanton, William Burr, *et al.* (Brookings Institution Press 1998).

22.      The D.C. Circuit and District Court's recognition of the Archive as a representative of the news media in *Archive v. DOD* and *Archive v. CIA*, respectively, rested in part on the Archive's intention to publish document sets, which include indexes and finding aids. *See* 880 F.2d at 1386-87; 1990 Memorandum at 4.  The Archive's most recent document sets, containing documents obtained through the FOIA, along with commentary, indexes and finding aids, include *The Cuban Missile Crisis Revisited: An International Collection of Documents from the Bay of Pigs to the Brink of Nuclear War* (forthcoming 2006); *The Kissinger Transcripts: A Verbatim Record of U.S. Diplomacy 1969-1977* (2005); *U.S. Policy in the Vietnam War, Part I, 1954-1968* (2004); *U.S. Policy in the Vietnam War, Part II: 1969-1975* (2004); *Japan and the United States: Diplomatic, Security, and Economic Relations, Part II, 1977-1992* (2004); and *Terrorism and U.S. Policy: 1968-2002* (2002).  These sets, published by Proquest/Chadwyck Healey, are available digitally and on microfiche, and are distributed to a broad range of libraries, universities, and research institutes.  In addition, any member of the public is able to access these for free in the Archive's public reading room.

23.      Articles written by Archive analysts based on records obtained from the CIA through the FOIA have appeared in *The Washington Post*, *The New York Times*, *The Wall Street*

*Journal*, *Congressional Quarterly*, *The Los Angeles Times*, *Harpers Magazine*, *The Miami Herald*, *The Nation*, *The Guardian*, *Vanity Fair*, *The Bulletin of the Atomic Scientists*, *World Policy Journal*, *Foreign Affairs*, *Foreign Policy*, *Newsweek*, *The International Journal of Intelligence and Counterintelligence*, *International Security*, *Intelligence and National Security* and other publications.

24.    Additionally, the Archive distributes electronic newsletters, at no cost, on an almost weekly basis to over 7,000 subscribers.  These newsletters directly link to documents recently released through the Archive's FOIA activities and update the public on issues pertaining to the operations and activities of the U.S. Government.  Furthermore, the Archive's website attracts well over one million successful visits per month, with visitors downloading an estimated 300,000 pages per day of declassified documents from some 190 electronic books published on the site.  A complete list of the Archive's electronic briefing books is available at http://www.gwu.edu/~nsarchiv/ NSAEBB/index.html.

### CIA Regulations

25.    In 1987, the CIA promulgated regulations purporting to govern assessment of fees for processing FOIA requests.  *See* 52 Fed. Reg. 46,456 (Dec. 8, 1987).  As relevant to this case, those original CIA regulations (which have since been superseded) mirrored the OMB's government-wide guidelines.  *See supra* ¶ 15 (OMB regulations).  The original CIA regulations, like the OMB regulations, required federal agencies to provide records to requesters who were representatives of the news media "for the cost of reproduction alone, excluding charges for the first 100 pages."  52 Fed. Reg. at 46,460; *see also* 52 Fed. Reg. at 10,019 (OMB regulations).  In addition, the CIA's original regulations defined "[r]epresentatives of the news media" to mean "any *person* actively gathering news for a United States entity that is organized and operated to

10

publish or broadcast news in the United States to the general public." 52 Fed. Reg. at 46,458

(emphasis added). The regulations further defined the term "news" to mean "information that is

about current events *or* that would be of current interest to the general public." *Id.* (emphasis

added); *see also supra* ¶ 15 (OMB regulations).

26.    In 1997, the CIA revised these regulations. The revised regulations, which are

still purportedly in force, continue to subject "'representatives of the news media' requesters . . .

[o]nly [to] charges for reproduction beyond the first 100 pages," and thereby exempt these

requesters from search and review fees. 32 C.F.R. § 1900.13(i)(2). However, the revised

regulations also provide in pertinent part:

> Representative of the news media means *a request from* an individual
> actively gathering news for an entity that is organized and operated to
> publish and broadcast news to the American public and pursuant to their
> news dissemination function and not their commercial interests; the term
> news means information which concerns current events, would be of
> current interest to the general public, *would enhance the public
> understanding of the operations or activities of the U.S. Government*, *and*
> is in fact disseminated to a significant element of the public at minimal
> cost . . . . "

*See* 32 C.F.R. § 1900.02(h)(3) (emphasis added). In issuing these revised regulations, the CIA

stated in the Federal Register that these changes would "not alter substantially any existing rights

of members of the public." 62 Fed. Reg. 32,479, 32,480 (June 16, 1997). The CIA further

commented that the revisions were intended "to expand" the definition of news media. *Id.* at

32,480.

### The CIA's Unlawful Refusal To Accord News Media Status to the Archive

27.    From August 10, 2005 through March 17, 2006, the Archive submitted to the CIA

45 separate requests under the FOIA for records relating to various topics germane to U.S.

governmental and national security decision-making. Each request reasonably described the

11

requested records and otherwise complied with all applicable statutory and regulatory requirements. Each request further stated that the Archive qualified for waiver of search and review fees as a representative of the news media and that the request was being made as part of a scholarly and news research project and not for commercial use. A list of these 45 requests, with their respective processing numbers assigned by the Archive and the CIA, is attached hereto as **Exhibit 2**. A true and accurate copy of one of these 45 requests (Archive No. 20051224CIA157, later designated CIA Processing No. F-2005-01773) is attached (for illustrative purposes) as **Exhibit 3** to this Complaint.

28.    In response to 42 of these requests, the CIA instructed the Archive to provide additional information explaining why each particular request should be accorded preferential fee treatment under the criteria set forth in the CIA's regulations, 32 C.F.R. § 1900.02(h)(3).

a)    Specifically, the CIA demanded information on how the requested records (i) concern current events; (ii) interest the general public; and (iii) enhance the public understanding of the operations or activities of the U.S. Government. The CIA also asked how the Archive planned to disseminate the information to a significant element of the public at minimal cost.

b)    The CIA told the Archive that it would hold the requests in abeyance for 45 days, pending receipt of additional information from the Archive, and that if the Archive failed to respond within that time, the CIA would close the requests.

c)    A true and accurate copy of one of the CIA's letters seeking such additional information (dated October 28, 2005) is attached (for illustrative purposes) as **Exhibit 4** to this Complaint.

12

29.    By letters dated November 10 and December 22, 2005, and January 27 and May 8, 2006, the Archive objected to the CIA's demand for additional information justifying favorable fee treatment for each request, citing, among other authorities, the D.C. Circuit's decision in *Archive v. DOD*.  The Archive also provided the CIA with detailed information demonstrating that each of the 42 requests satisfied the criteria set forth in the CIA's demand letter and regulations.  True and accurate copies of the Archive's letters are attached hereto as **Exhibits 5, 6, 7,** and **8**.

30.    By letter dated November 25, 2005, by two letters dated February 8, 2006, and by two letters dated May 31, 2006, the CIA refused to treat the Archive as a "representative of the news media" for the 42 requests for which the Archive had supplied the CIA with additional information, as requested by the agency.  On this basis, according to these letters, the CIA also refused to waive search fees for these 42 requests.  True and correct copies of these letters are attached hereto as **Exhibits 9, 10, 11, 12,** and **13**.

a)    In denying favorable fee treatment for five of the requests, the only reason stated by the CIA was that each request "does not meet each of the criteria defining news our regulations set forth at 32 C.F.R. § 1900.02(h)(3)."  Ex. 9 at 1-2.

b)    In denying favorable fee treatment for 26 of the requests, the only reasons stated by the CIA were that, "[u]sing the standards for defining 'news' the CIA makes publicly available at 32 C.F.R. § 1900.02(h)(3), and after fully considering the facts and comprehensive arguments set forth in your letter[s]," the CIA determined that each request did "not meet the criteria outlined in Agency regulations.  For example, it neither concerns a current

13

event nor enhances the public's understanding of the operations or activities of the U.S. Government." Exs. 10, 11.

c)    In denying favorable fee treatment for nine of the requests, the only reasons stated by the CIA were that, "[u]sing the standards for defining 'news' the CIA makes publicly available at 32 C.F.R. § 1900.02(h)(3), and after fully considering the facts and comprehensive arguments set forth in your letter[s]," the CIA determined that each request did "not meet the criteria outlined in Agency regulations.  For example, it does not concern a current event." Exs. 10, 11.

d)    In denying favorable fee treatment for the other two requests, the CIA stated that it had asked the Archive to "explain how the request satisfies the [agency's] criteria . . . particularly with regard to 'enhancing the public understanding of the operations or activities of the U.S. Government;'" the CIA had considered the explanations provided by the Archive; and the CIA had "determined that the request does not meet the criteria." Exs. 12, 13.

e)    The CIA has not contended that any of the 42 requests are for commercial use.

f)    The CIA refused to process each of these 42 requests unless the Archive agreed to pay search costs and thus refused to disclose the requested records in the absence of such agreement.

g)      The date on which the CIA denied preferential fee treatment for each of

the 42 requests is indicated on the list attached as **Exhibit 2** to the

Complaint.

31.     Among the requests that the CIA determined did not concern "current events"

were two requests for biographical records relating to certain members of the Taliban in

Afghanistan (CIA Processing Nos. F-2005-01811, F-2005-01773); records regarding the

development of U.S. policy in Afghanistan in the five months before President Carter authorized

U.S. aid to the Mujahadeen opposition to the Soviet-backed Afghan regime (No. F-2006-00107);

CIA Daily Summaries to President Truman for the days leading up to various crises in the late

1940s, including the Berlin Crisis and the first Soviet atomic test (No. F-2006-00173); and

various records detailing aspects of U.S.-Mexican relations, including a series of meetings in late

1990 between President George H.W. Bush and Mexican President Carlos Salinas (No. F-2006-

00099).

32.     The CIA did not assess search fees for three of the 45 requests submitted by the

Archive between August 10, 2005 and March 17, 2006.  These three requests concerned NAFTA

and illegal Mexican immigration (No. F-2006-00203), weapons of mass destruction in Iraq

(No. F-2006-00667), and Ayatollah Ali Sistani's July 2003 fatwa concerning Iraqi elections

(No. F-2006-00728).  In determining not to assess search fees for these requests, the CIA did not

explain how they differed from the 42 requests for which preferential fee treatment, based on the

Archive's status as a representative of the news media, was denied.  While the three requests for

which fees were waived concerned events that took place in the last ten to fifteen years, some of

the requests for which preferential fee treatment was denied also took place in this time frame.

For example, the CIA granted preferential fee treatment for a request for all records dating back

15

to 1990 discussing any aspect of NAFTA with regard to illegal migration from Mexico into the United States (No. F-2006-00203), but denied preferential fee treatment for a request concerning President Clinton's 1993 meetings with President Salinas (No. F-2006-00098).

33.    More than seven years ago, on March 30, 1999, the Archive submitted a request for 26 CIA news bulletins concerning India and/or Pakistan from 1971.  By letter dated October 27, 1999, the CIA informed the Archive that the agency accepted this request (No. F-1999-00850) "[b]ased on The National Security Archive's agreement to pay copying costs as a requester in the category of 'representative of the news media.'"  Three months ago, by letter dated March 9, 2006, the CIA informed the Archive that it was sending a "final response" to the request, and that, "[a]s a requester in the 'all other' category, you are required to pay charges which recover the cost of searching for and reproducing responsive records (if any) beyond the first 100 pages of reproduction and the first two hours of search time, which are furnished without charge."  The CIA further stated that, "[s]ince this request has taken additional time, we are waiving charges for the search time."   True and correct copies of the CIA's October 27, 1999 and March 9, 2006 letters are attached hereto as **Exhibits 14** and **15** respectively.

34.    In seeking additional information for 42 FOIA requests submitted by the Archive since August 2005 and failing to treat the Archive as a representative of the news media for those requests, as described in the aforementioned paragraphs 27 to 33, the CIA:

a)    departed from 15 years of settled practice without any reasonable explanation, and acted contrary to law, including the D.C. Circuit's decision in *Archive v. DOD* and the District Court's 1990 Order in *Archive v. CIA*, by determining whether the Archive is a representative of the news

16

media on the basis of the subject matter of each request rather than on the news gathering and disseminating activities of the Archive itself;

b)  departed from 15 years of settled practice without any reasonable explanation, and acted contrary to law, including the D.C. Circuit's decision in *Archive v. DOD* and the District Court's 1990 Order in *Archive v. CIA*, by refusing to treat the Archive as a representative of the news media for the 42 requests;

c)  applied incorrect criteria under the FOIA;

d)  irrationally concluded that the release of information of current interest to the public that sheds light on important historical events cannot constitute "news"; and

e)  irrationally concluded that release of information obtained by the U.S. government about foreign affairs does not enhance the public understanding of the operations or activities of the U.S. Government.

35.    In seeking additional information for 42 FOIA requests submitted by the Archive since August 2005, failing to treat the Archive as a representative of the news media for those 42 requests, and retroactively deciding not to treat the Archive as a representative of the news media for a request from 1999, as described in the aforementioned paragraphs 27 to 33, the CIA inconsistently and irrationally applied the criteria set forth in its regulation, 32 C.F.R. § 1900.02(h)(3).

36.    The CIA has maintained and implemented an illegal policy and practice of refusing to treat the Archive as a representative of the news media, and refusing to process the

Archive's FOIA requests until the Archive agrees to pay search costs. This illegal policy and practice continues today.

37. Through its illegal actions, the CIA has arrogated to itself broad discretion to decide, on a case-by-case basis, what information constitutes "news," thereby displacing the judgments of news reporters and editors on this issue. Additionally, by failing to provide the news media with a presumptive entitlement to a waiver of search fees as mandated by Congress, the CIA has made vastly more inefficient, to the detriment of all taxpayers and the general public, the process by which the agency determines fee waivers under the FOIA. Under the CIA's unauthorized and fact-intensive approach, the CIA and parties requesting records under the FOIA may well routinely generate stacks of correspondence about fees that ultimately exceed the volume of records actually requested.

38. By letter dated December 22, 2005, the Archive administratively appealed the CIA's refusal to treat the Archive as a representative of the news media in connection with five requests. A true and correct copy of the Archive's December 22, 2005 letter to the Agency Release Panel, c/o Defendant Koch, is attached hereto as **Exhibit 16**.

39. By letter dated February 8, 2006, the CIA told the Archive that it had no right to administratively appeal the agency's refusal to treat the Archive as a representative of the news media, but that the Archive had a right to seek judicial review of the CIA's determinations. A true and correct copy of the CIA's February 8, 2006 letter refusing the Archive's appeal rights is attached hereto as **Exhibit 17**. The CIA similarly informed the Archive in its initial denials of 35 other requests that there was no right of administrative appeal, but that the Archive could seek judicial review of the CIA's fee determinations. Exs. 10, 11.

40.    By letter dated April 10, 2006, the CIA informed the Archive that it needed to commit by April 21, 2006, to pay processing fees (including search fees) for the 40 requests for which by that time the CIA had refused to treat the Archive as a representative of the news media, or else the CIA would close those requests. A true and correct copy of the CIA's April 10, 2006 letter is attached hereto as **Exhibit 18**.

41.    By letter dated April 21, 2006, the Archive reasserted its objection to the CIA's actions and requested an additional 45 days to consider its options. A true and correct copy of the Archive's April 21, 2006 letter is attached hereto **Exhibit 19**.

42.    By letter dated May 1, 2006, the CIA informed the Archive that it would close the 40 requests unless the Archive committed within 14 days to pay all processing fees. A true and correct copy of the CIA's May 1, 2006 letter is attached hereto as **Exhibit 20**.

43.    On or about May 12, 2006, the Archive informed the CIA that it would pay the assessed fees (but asked the CIA to inform the Archive before it incurred costs above $250 for any individual request). The Archive expressly told the CIA that its commitment to pay fees was made under protest and without prejudice to Archive's legal rights and remedies.[1]

44.    On or about May 31, 2006, in denying favorable fee treatment for the remaining two requests, the CIA told the Archive that it would hold the requests in abeyance for 45 days pending receipt of the Archive's commitment to pay the processing fees (including search fees) associated with those two requests, and that if the Archive failed to respond within that time, the CIA would close the requests. Exs. 12 and 13.

---

[1]    On June 1, 2006, the Archive withdrew one of these requests (No. F-2006-00173).

## PLAINTIFF'S CLAIMS FOR RELIEF

### COUNT I
Violations of the Freedom of Information Act
(5 U.S.C. § 552)

45.     The Archive re-alleges and incorporates the allegations set forth in paragraphs 1-44 as if set forth fully herein.

46.     For 15 years, Defendant CIA recognized plaintiff Archive to be a "representative of the news media" for purposes of FOIA fee assessments, in accordance with the statute, the well-settled precedent of the D.C. Circuit, and the District Court's 1990 order directly binding the CIA.  Defendant CIA has now adopted a policy and practice of denying the Archive the preferential fee treatment to which it is entitled under the FOIA.  The CIA has reached these determinations by unlawfully assessing search fees on the basis of the subject matter of the Archive's requests, rather than the Archive's characteristics as a publisher and disseminator of news, in violation of the FOIA and the District Court's 1990 order, and directly contrary to the D.C. Circuit precedent.  The CIA has further relied on definitions of "[r]epresentative of the news media" and "news" that are contrary to the FOIA and the prior *Archive* decisions.  In addition, the CIA has inconsistently and unlawfully applied its own illegal definitions of "[r]epresentative of the news media" and "news" with the result of unlawfully refusing to treat the Archive status as a "representative of the news media."

47.     Based on its unlawful and erroneous failure to treat the Archive as a "representative of the news media," the CIA has unlawfully refused to process the Archive's requests for information or to disclose requested records unless and until the Archive agrees to pay all assessed fees, including fees for record search.

20

48.    The Archive regularly and frequently requests information from the CIA under the FOIA.  The CIA's failure to treat the Archive as a "representative of the news media" constitutes a continuing barrier to the Archive's rights of access to information under the FOIA.

49.    The Archive has exhausted all available administrative remedies.

50.    On the basis of the facts alleged above and for such further reasons as the Archive may prove at or before trial, the Archive alleges that it qualifies as a "representative of the news media" under the FOIA and that the CIA violated and continues to violate the FOIA, 5 U.S.C. § 552, and the District Court's 1990 Order in *Archive v. CIA*, by assessing search fees against the Archive for requests that were not made for commercial use.

51.    The Archive further alleges that the CIA's refusal to process Plaintiff's FOIA requests until the Archive agrees to pay search fees constitutes a wrongful withholding of the requested agency records, in violation of the FOIA, 5 U.S.C. § 552.

52.    To the extent the CIA's actions were or are purportedly authorized or compelled by regulations that it promulgated pursuant to the FOIA, including but not limited to 32 C.F.R. § 1900.02(h)(3), such regulations are unlawful under the FOIA, and should therefore be declared to be invalid.

**COUNT II**
Violations of the Administrative Procedure Act
(5 U.S.C. §§ 701-706)
(General)

53.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-52 as if set forth fully herein.

54.    On the basis of facts alleged above and for such reasons as the Archive may prove at or before trial, the Archive alleges that Defendants have violated the APA, 5 U.S.C. § 706, by adopting, interpreting, and applying the CIA regulations defining "representative of the news

media" and "news" in a manner that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and lacking in substantial evidence or factual basis.

55.    Among other things, Defendants have unlawfully required the Archive to demonstrate its entitlement to preferential fee treatment on the basis of the subject matter of the request, rather than the Archive's long-standing status as a gatherer, publisher, and disseminator of news; have applied improper criteria to determine whether the Archive's activities or requests concern "news"; have improperly failed to treat the Archive as a representative of the news media on the grounds that certain requests did not concern current events or enhance the public's understanding of the operations or activities of the U.S. Government; have applied the CIA regulations in an arbitrary and inconsistent manner; and have arbitrarily departed without explanation from their longstanding precedent of treating the Archive as a "representative of the news media" for purposes of FOIA fee processing.

56.    The Archive further alleges that Defendants' continued policy and practice of requiring the Archive to demonstrate its entitlement to preferred fee status on the basis of the subject matter of each request, refusing to treat the Archive as a representative of the news media on grounds that the particular records requested do not concern current events or enhance the public's understanding of the operations or activities of the U.S. Government, and otherwise determining that the Archive's activities or requests do not concern "news," is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

### COUNT III
#### Violations of the Administrative Procedure Act
(5 U.S.C. §§ 701-706)
(CIA regulation)

57.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1-56 as if set forth fully herein.

58.    In refusing and continuing to refuse to treat the Archive as a representative of the news media in connection with its FOIA requests, Defendants relied and are continuing to rely on CIA regulations promulgated pursuant to the FOIA, including but not limited to 32 C.F.R. § 1900.02(h)(3).

59.    Such regulations, including but not limited to 32 C.F.R. § 1900.02(h)(3), are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Archive prays for relief and a judgment against Defendants, as follows:

(1 )    declaring that the Archive qualifies as a "representative of the news media" for purposes of assessing processing fees associated with all of the Archive's FOIA requests submitted to the CIA after August 10, 2005; the Archive's request submitted to the CIA on March 30, 1999 (No. F-1999-00850); and all future requests submitted by the Archive to the CIA (except for requests, if any, that the CIA properly determines are for a commercial purpose).

(2 )    enjoining and ordering Defendants to treat the Archive as a "representative of the news media;" to refrain from requiring the Archive to agree to pay fees other than duplication fees as a condition of processing the Archive's FOIA requests; and to reimburse the Archive for all wrongfully assessed fees that the Archive pays or has paid prior to resolution of this action;

(3 )    declaring that Defendants' refusal to treat the Archive as a representative of the news media was and is arbitrary, capricious, an abuse of discretion, or otherwise in violation of the law;

(4 )    declaring that the regulations relied upon by Defendants in refusing to treat the Archive as a representative of the news media, including but not limited to 32 C.F.R.

§ 1900.02(h)(3), are unlawful, and enjoining and ordering Defendants not to rely upon said regulations in refusing to treat the Archive or any other FOIA requester as a representative of the news media;

(5)    enjoining and ordering Defendants to process immediately the agency records that the Archive requested and to accord those requests the place in the processing queues they would have had but for Defendants' improper refusal to recognize the Archive as a "representative of the news media";

(6)    retaining jurisdiction of this matter until Defendants have fulfilled all of their statutory, regulatory, and Court-ordered obligations;

(7)    awarding the Archive, as appropriate, its costs and reasonable attorneys fees incurred in this action; and

(8)    granting the Archive such other and further relief as this Court deems just and proper.

Respectfully submitted,

*David S. Mendel*

Patrick Carome (D.C. Bar No. 385676)
David S. Mendel (D.C. Bar No. 470796)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 663-6000 (t)
(202) 663-6363 (f)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037
(202) 994-7000 (t)
(202) 994-7005 (f)

*Counsel for Plaintiff National Security Archive*

DATE: June 14, 2006

25