# EXHIBIT 11

Central Intelligence Agency



Washington, D.C. 20505

8 February 2006

Ms. Meredith Fuchs
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Re:  National Security Archive Freedom of Information Act Requests
       F-2006-00081 20051532CIA193
       F-2006-00098 20051548CIA196
       F-2006-00099 20051551CIA197
       F-2006-00100 20051559CIA198
       F-2006-00106 20051573CIA202
       F-2006-00107 20051568CIA201
       F-2006-00118 20051586CIA208
       F-2006-00129 20051601CIA213
       F-2006-00173 20051612CIA214
       F-2006-00186 20051619CIA215
       F-2006-00187 20051622CIA216
       F-2006-00190 20051645CIA220
       F-2006-00191 20051637CIA219

Dear Ms. Fuchs:

    We have received via facsimile your letter of 22 December 2005 and supporting documentation explaining why you believe CIA should place the National Security Archive in the "representative of the news media" fee category for purposes of the Freedom of Information Act requests referenced above. Using the standards for defining "news" the CIA makes publicly available at 32 C.F.R § 1900.02 (h)(3), and after fully considering the facts and comprehensive arguments you set forth in your letter, I have made the following determinations in my capacity as CIA Information and Privacy Coordinator.

- F-2006-00081 20051532 CIA193: request for "all documents issued between July 1, 1977 and May 31, 1978, relating in whole or in part to students' political activities in Indonesia and the Indonesian government's actions in relation to those activities." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it neither

20051532CIA193      CIA
RECNO:32221      SEQCOR:119177
2/13/2006      FOISG: Simpson, Brad
student protests in Indonesia - 1977-78

concerns a current event nor enhances the public's understanding of the operations or activities of the U.S. Government.

- F-2006-00098 20051548CIA196: request for "any and all documents related in whole or in part to the January 8th, 1993 meeting between President Clinton and Mexican President Carlos Salinas de Gortari in Austin Texas in which NAFTA was discussed." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00099 20051551CIA197: request for "any and all documents related in whole or in part to the visit of President George H. Bush to the state of Nuevo Leon, Mexico in November, 1990 where he met with Mexican President Carlos Salinas." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00100 20051559CIA198: request for "all documents issued between February 1 and April 30, 1978, relating in whole or in part to the session of Indonesia's MPR (Majelis Permusyawaratan Rakyat; People's Consultative Assembly) in March 1978." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it neither concerns a current event nor enhances the public's understanding of the operations or activities of the U.S. Government.

- F-2006-00106 20051573CIA202: request for "all documents issued between November 1, 1980 and January 31, 1981 relating in part or in whole to the anti-Chinese riots in Indonesia which started in November 1980 and the actions taken by the Indonesian government in response to them." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it neither concerns a current event nor enhances the public's understanding of the operations or activities of the U.S. Government.

- F-2006-00107 20051568CIA201: request for "all documents pertaining in whole or in part to March 5, 1979 action memorandum sent from the CIA to the SCC regarding Afghanistan referenced in the attached page from Robert M. Gates, *From the Shadows,* New York: Simon & Schuster Inc., 1996, p. 144." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00118 20051586CIA208: request for "all documents pertaining in whole or in part to September 14, 1979 and December 19, 1979 'Alert' memoranda authored by CIA Director Admiral Stansfield Turner relating to Afghanistan

Ms. Meredith Fuchs                    Page 3                    8 February 2006
General Counsel

referenced in the attached pages from Robert M. Gates, *From the Shadows,* New York: Simon & Schuster Inc., 1996, pp. 132-133." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00129 20051601CIA213: request for "all documents issued between April 1 and August 31, 1982, relating in part or in whole to the visit of Indonesian Defense Minister Mohammed Jusuf (also spelled as Yusuf) to the United States in July 1982 and any official meetings or appearances made by him during the visit, including but not limited to his meeting with President Reagan and Secretary of Defense Weinberger." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00173 20051612CIA214: request for "copies of the Central Intelligence Agency, 'Daily Summary,' as prepared for President Harry Truman, for the following days: February 22-26, 1948; June 21-25, 1948; January 3-7, 1949; August 29-September 4, 1949; June 22-26, 1950; October 22-26, 1950." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00186 20051619CIA215:  request for all documents issued between August 1, 1983, and March 31, 1985, relating in part or in whole to the Indonesian government's policy to make pancasila the sole ideological basis of political parties and social organizations in the country." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it neither concerns a current event nor enhances the public's understanding of the operations or activities of the U.S. Government.

- F-2006-00187 20051622CIA216:  request for "all documents issued between June 1 and November 30, 1983, relating in part or in whole to the planned visit of President Ronald Reagan to Indonesia, which was canceled in October 1983." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency regulations. For example, it does not concern a current event.

- F-2006-00190 20051645CIA220: request for "all documents issued between August 1 and December 31, 1984, relating in whole or in part to the 'Petition of 50' group in Indonesia and its members including but not limited to Ali Sadikin, A. M. Fatwa, H. M. Sanusi, and H.R. Dharsono." I deny your request for news media status in this case because it does not meet the criteria outlined in Agency

Ms. Meredith Fuchs                                  Page 4                                  8 February 2006
General Counsel

      regulations. For example, it neither concerns a current event nor enhances the
public's understanding of the operations or activities of the U.S. Government.

- F-2006-00191 20051637CIA219: request for "all documents issued between
  February 1 and May 31, 1984, relating in part or in whole to the visit of U.S. Vice
  President George H.W. Bush to Indonesia in May 1984 and any official meetings
  or appearances made by him during the visit, including but not limited to his
  meeting with Indonesian President Suharto (also spelled as Soeharto)." I deny
  your request for news media status in this case because it does not meet the
  criteria outlined in Agency regulations. For example, it does not concern a
  current event.

      I therefore place these requests in the "all other" category, which means that the
Archive will be responsible for charges associated with searching for and reproducing
responsive records (if any) beyond the first 100 pages of reproduction. Copies beyond
the first 100 pages are ten cents per page. The first two hours of search time for each
request will be free. In accordance with Section (a) of the fee schedule enclosed, search
fees are assessable even if we find no records or, if we find any, we determine that they
are not releasable. This means we will charge you even if our search results are negative
or if we determine that we cannot release any information under the FOIA.

      In accordance with the provisions of the Administrative Procedures Act, you have
the right to seek judicial review of these decisions in a United States district court.
Agency regulations do not provide a right of administrative appeal for a fee
categorization decision. The applicable provision of 32 C.F.R. § 1900.42 (a) limits
administrative appeals to three circumstances: denial of access to records or any portion
thereof; searches that locate no records; and denial of requests for fee *waivers*.

      Because we estimate fees to exceed $100, our regulations require that we receive
the Archive's commitment to pay fees incurred before our office can begin processing
these requests. The search fees for each item in a request are usually about $150. We
will hold these requests in abeyance for 45 days pending our receipt of the Archive's
commitment to pay fees. Upon our receipt of the Archive's fee commitment, we will
place these thirteen requests in the processing queue using the date of the initial request
letter.

      Agency regulations require us to make fee category decisions on a request-by-
request basis. Therefore, we will determine your fee category for future requests based
on the facts of each case and the criteria outlined in Agency regulations. A detailed
initial explanation why each request meets the criteria of a particular fee category may

Ms. Meredith Fuchs                    Page 5                         8 February 2006
General Counsel

eliminate our need to ask for further clarification and will help make processing as
efficient as possible.

Sincerely,

Scott A. Koch, Ph.D.
CIA Information and Privacy Coordinator

# EXHIBIT 12

Central Intelligence Agency



Washington, DC 20505

31 May 2006

Mr. Michael Evans
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, DC 20037

Reference:  F-2006-00622 / Archive # 20060134CIA012

Dear Mr. Evans:

This responds to Ms. Fuchs' 8 May 2006 letter concerning your
3 February 2006 Freedom of Information Act (FOIA) request for records
pertaining to:

**The recent peace negotiations on or about**
**December 2005 between the government of**
**Colombia and the Ejercito de Liberacion Nacional**
**(National Liberation Army, or ELN).**

In our 5 April 2006 letter we asked that you explain how the request
satisfies the criteria required to be placed into the fee category of "news
media," particularly with regard to "enhancing the public understanding of the
operations or activities of the U.S. Government." We have considered carefully
the reasons you gave on pages 1 and 2. I have determined that this request
does not meet the criteria.

Your request therefore falls into the "all other" fee category, which
means that you will be required to pay charges which recover the cost of
searching for and reproducing responsive records (if any) beyond the first 100
pages of reproduction and the first two hours of search time, which will be
furnished without charge. Copying costs will be assessed at the rate of ten
cents per page.

Before we can begin processing your request, we must receive your
commitment to pay fees incurred under the conditions stated above. The
search fees for each item in a request could amount to as much as $150.

20060134CIA012
RECNO:32636
6/6/2006
Demobilization Peace Talks in Cuba

CIA
SFOCOR:121485
FOIS:F:Evans, Michael

We will hold your request in abeyance for 45 days pending receipt of your commitment to pay the fees associated with your request. If, however, we do not hear from you within 45 days from the date of this letter, we will assume that you are no longer interested in receiving the information requested, and we will close your request.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# EXHIBIT 13

Central Intelligence Agency



Washington, DC 20505

31 May 2006

Mr. Michael Evans
The National Security Archive
Gelman Library, Suite 701
2130 H Street, NW
Washington, DC  20037

Reference:  F-2006-00623 / Archive # 20060132CIA011

Dear Mr. Evans:

This responds to Ms. Fuchs' 8 May 2006 letter concerning your 3 February 2006 Freedom of Information Act (FOIA) request for records pertaining to:

1. **The agreement between President Alvaro Uribe of Colombia and President Hugo Chavez of Venezuela authorizing the construction of a 215-kilometer gas pipeline between the Paraguana Refinery Complex in Venezuela and Punta Ballenas in Colombia, signed on or about November 24, 2005;**
2. **Further discussions concerning a possible extension of the pipeline to other Andean countries; and**
3. **The agreement to create a Binational Border Development Fund to improve living conditions along the Colombian-Venezuelan border.**

In our 5 April 2006 letter we asked that you explain how the request satisfies the criteria required to be placed into the fee category of "news media," particularly with regard to "enhancing the public understanding of the operations or activities of the U.S. Government." We have considered carefully the reasons you gave on pages 2 and 3.  I have determined that this request does not meet the criteria.

Your request therefore falls into the "all other" fee category, which means that you will be required to pay charges which recover the cost of searching for and reproducing responsive records (if any) beyond the first 100 pages of reproduction and the first two hours of search time, which will be furnished without charge.  Copying costs will be assessed at the rate of ten cents per page.

20060132CIA011
RECNO:32634
6/6/2006
Colombia-Venezuela pipeline construction

CIA
SRQCOR:121486
FOISG: Evans, Michael

Before we can begin processing your request, we must receive your commitment to pay fees incurred under the conditions stated above. The search fees for each item in a request could amount to as much as $150.

We will hold your request in abeyance for 45 days pending receipt of your commitment to pay the fees associated with your request. If, however, we do not hear from you within 45 days from the date of this letter, we will assume that you are no longer interested in receiving the information requested, and we will close your request.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# EXHIBIT 14

Central Intelligence Agency



Washington, D.C. 20505

*990130CIA036*

OCT 27 1999

RECEIVED OCT 2 9 1999

Ms. Joyce Battle
National Security Archive
The Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Reference: F-1999-00850

Dear Ms. Battle:

    This is to acknowledge receipt of your 30 March 1999 Freedom of
Information Act (FOIA) request (Archive File No. 990130CIA036) for the
following **Central Intelligence Bulletins:**

1. **Communist China-Pakistan: Aid, May 4, 1971**
2. **Communist China-Pakistan: Aid, May 13, 1971**
3. **Communist China-Pakistan: Military, July 15, 1971**
4. **Communist China-Pakistan: Diplomacy, August 24, 1971**
5. **Communist China: Military, August 25, 1971**
6. **Communist-China-India: Diplomacy, October 23, 1971**
7. **Pakistan-Communist China: Diplomacy, November 4, 1971**
8. **Pakistan-China: Diplomacy, November 5, 1971**
9. **Communist China-Pakistan: Diplomacy, November 9, 1971**
10. **India-Israel: Military, November 16, 1971**
11. **India-Poland: Military, November 19, 1971**
12. **India-Pakistan-Communist China: Diplomacy, November 19, 1971**
13. **Pakistan-Communist China: Military, November 19, 1971**
14. **India-Pakistan: Military, December 4, 1971**
15. **India-Pakistan: Military, December 6, 1971**
16. **India-Pakistan: Military, December 7, 1971**
17. **India-Pakistan: Military, December 8, 1971**

18. **India-Pakistan: Military, December  9, 1971**
19. **India-Pakistan: Military, December 10, 1971**
20. **India-Pakistan: Military, December 11, 1971**
21. **India-Pakistan: Military, December 13, 1971**
22. **India-Pakistan: Military, December 14, 1971**
23. **India-Pakistan: Military, December 15, 1971**
24. **India-Pakistan: Military, December 16, 1971**
25. *India-Pakistan: Military, December 17, 1971*
26. **India-Pakistan: Military, December 19, 1971.**

For identification purposes we have assigned your request the number referenced above. We apologize for the delay in our response caused by an administrative oversight and will therefore place your request in its rightful place in our processing queues based on the 30 March 1999 date of your original request.

Based on The National Security Archive's agreement to pay copying costs as a requester in the category of "representative of the news media," we accepted your request; it will be processed in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431. Our search will be for documents in existence as of and through the date of this acceptance letter.

However, we also searched our database of previously released material and located item 25 of your request titled "India-Pakistan: Military, dated December 17, 1971." Please find the enclosed 9 page document which counts towards the first 100 pages to which you are entitled free of charge.

Concerning your request for a fee waiver, the FOIA, 50 U.S.C. § 552 (a)(4)(iii), specifically provides that "documents shall be furnished without any charge or at a charge reduced below the fees established under the clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [United States] government and is not primarily in the commercial interest of the requester."

We have reviewed your request and have determined that the information you seek from Agency files would not contribute significantly to the public understanding of the operations or activities of the United States Government. Accordingly, in this instance, your request for a fee waiver is denied.

The heavy volume of FOIA requests received by the Agency has created delays in processing. Since we cannot respond within the 20 working days stipulated by the FOIA, you have the right to consider this a denial and may appeal to the Agency Release Panel. It would seem more reasonable, however, to have us continue processing your request and respond to you as soon as we can. You can appeal any denial of records at that time. Unless we hear from you otherwise, we will assume that you agree, and we will proceed on this basis.

Sincerely,

Kathryn I. Dyer
Acting Information and Privacy Coordinator

Enclosure

F-1999-0080

Search Title/Keywords - Find ALL search terms
SEARCH TERMS: "Central", "Intelligence", "Bulletins"

**Requester Report**

Database Transactions from: 01/01/1971 to 12/31/1971

Date of Report: 10/25/1999

Sorted by Document Number

*(Only includes UNCLASSIFIED documents with Final Release Status of RIFPUB, RIPPUB, RIFPUBND or RIPPUBND)*

| Mori ID # | Pub Date | Pages | Document Title | Document Number |
|-----------|----------|-------|----------------|-----------------|
| 96392 | 12/17/1971 | 9 | CENTRAL INTELLIGENCE BULLETIN | 17 DECEMBER 1971 |

**Total # Documents: 1**    **Total # Pages: 9**

Page 1

# EXHIBIT 15



Central Intelligence Agency

Washington, D.C. 20505

9 March 2006

Ms. Joyce Battle
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Reference: F-1999-00850 / Archive #990130CIA036

Dear Ms. Battle:

This is a final response to your 30 March 1999 Freedom of Information Act (FOIA) request for 26 listed **Central Intelligence Bulletins**. Your request was processed in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431. Our processing included a search for records as described in our acceptance letter, existing through the date of that letter, 27 October 1999.

We completed a thorough search for records responsive to your request, located material and made the following determinations. We provided a 17 December 1971 document as an enclosure with our acceptance letter; we were unable to locate the 15 July 1975 Bulletin requested. However, regarding the other dates, we found two and sometimes three versions of the requested information. Enclosed are 47 responsive documents that we have determined can be released in segregable form with deletions made on the basis of FOIA exemptions (b)(1) and (b)(3).

As a requester in the "all other" category, you are required to pay charges which recover the cost of searching for and reproducing responsive records (if any) beyond the first 100 pages of reproduction and the first two hours of search time, which are furnished without charge. Copying costs are assessed at the rate of ten cents per page. The cost associated with processing your request amounts to $17.20. This consists of reproduction of 272 pages at a cost of $17.20. Since this request has taken additional time, we are waiving charges for the search time. Please send me your check or money order in the amount of $17.20 *payable to the Treasurer of the United States,* citing Reference Number F-1999-00850 to ensure proper credit to your account.

We apologize for the time it has taken us to answer your request. We have received and accumulated a large number of requests during the past several years. Under the circumstances, we have done our best to be fair to all of our requesters. Thus, some years ago we established the policy of first-received, first-answered. Thank you for your patience and consideration while we were processing your request.

You have the right to appeal our decision within 45 days of the date of this letter. Please address your appeal, in my care, to the Agency Release Panel. You may include the reasons you think our initial decision is wrong.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosures

# EXHIBIT 16

# The National Security Archive

**The George Washington University**
**Gelman Library, Suite 701**
**2130 H Street, N.W.**
**Washington, D.C. 20037**

**Phone: 202/994-7000**
**Fax: 202/994-7005**
**nsarchiv@gwu.edu**
**www.nsarchive.org**

December 22, 2005

**By Facsimile and First Class Mail**

To the Agency Release Panel
c/o Scott Koch
Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505
Fax: (703) 613-3007

RE:    Appeal of Adverse Fee Categorization Determination
       for FOIA Requests:

**F-2005-01811** 20051294CIA165
**F-2005-01773** 20051224CIA157
**F-2006-00057** 20051507CIA192
**F-2006-00039** 20051114CIA141
**F-2006-00052** 20051500CIA189

To the Agency Release Panel:

I am writing to appeal the denial of representative of the news media status for the purpose of fee determinations with respect to each of the above referenced FOIA requests. My November 10, 2005, letter responding to the CIA's query about news media status for these requests is attached, as well as the agency's November 25, 2005, denial of news media fee status. **(Enclosure A)**

As an initial matter, the November 25, 2005, denial appears to be denying the Archive's right to an administrative appeal within the CIA. Under the unambiguous terms of the Freedom of Information Act and the CIA's own FOIA regulations, the Archive has a right to an administrative appeal before the CIA Agency Release Panel. *See, e.g.,* 32 C.F.R. Sec. 1900.42 ("A right of administrative appeal exists whenever … a request for a fee waiver is denied."). If the CIA is denying the Archive's appeal rights, then please inform me immediately.

## Federal Recognition of the Archive as a Representative of the News Media

In *National Security Archive v. U.S. Dep't of Defense,* 880 F. 2d 1381, 1387 (D.C. Cir 1989), *cert. denied* (Mar. 19, 1990), the D.C. Circuit held that the National Security Archive is entitled to a waiver of all search and review fees under the FOIA as a "representative of the news media." The D.C. Circuit's decision was based on the fact the Archive had published one book and intended to publish document sets in the future. The now-Chief Judge of the D.C. Circuit, Judge Ginsburg, writing for a unanimous court, explained: "A representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id.* at 1387. Since the time of the court decision, the Archive's publication activity has expanded dramatically and the Archive's journalistic work had

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act. Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

Letter to Agency Release Panel
December 22, 2005

received numerous awards, including most recently, the 2005 Emmy Award for Outstanding Achievement in News and Documentary Research, presented by the National Television Academy at the 26th Annual News & Documentary Emmy Awards.

In *National Security Archive*, the D.C. Circuit also held that FOIA requests submitted by the National Security Archive in furtherance of its publication activities are not for a "commercial use," *Id.* at 1388. Each of the FOIA requests referenced above is for documents that will directly further the publication activities of the National Security Archive.

Further, the D.C. Circuit held that "[a]bsent [] a change in circumstances ... the Archive is entitled to preferred [news media] status." The *National Security Archive* decision was based on a full consideration of the statute and the legislative history. The language of the FOIA prohibiting search and review fees for representatives of the news media is no different today than it was at the time of the *National Security Archive* decision. Moreover, as explained in the next section of this letter, the facts today are even more supportive of the Archive's news media status than they were at the time of the decision.

And, in fact, the D.C. Circuit is bound by that decision. As the Supreme Court has frequently explained, considerations of *stare decisis* are particularly forceful in the area of statutory construction, especially when a unanimous interpretation of a statute has been accepted as settled law for several decades. With respect to the FOIA there is no argument that the CIA is entitled to deference, as the statute and legislative history makes clear that this is not an area of statutory interpretation that is within the particular expertise of the CIA or that has been delegated to the agencies. Recently, Justice Scalia explained how this works: "The Court's unanimous holding in *Neal v. United States*, 516 U.S. 284 (1996), plainly rejected the notion that any form of deference could cause the Court to revisit a prior statutory-construction holding: 'Once we have determined a statute's meaning, we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law.' *Id.*, at 29."

Moreover, the CIA — and indeed every other federal agency — has for 15 years abided by the *National Security Archive* decision and recognized the National Security Archive as a "representative of the news media" for similar FOIA requests based on our continuing publication of articles and books. This includes the Department of Defense and all of its component agencies, every other intelligence agency, and the Department of State. The CIA's sudden change in policy, without any explanation, is arbitrary and capricious, and appears that way to all the news media organizations we have spoken with. An agency acts arbitrarily and capriciously when it abruptly departs from a position it previously held without satisfactorily explaining its reason for doing so. "Indeed, where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious." *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 901 (D.C. Cir. 1995); *see also Wisconsin Valley Improvement Company v. FERC*, 236 F.3d 738 (D.C. Cir. 2001) (finding sudden imposition of fees on a licensee that was not previously subject to fees arbitrary and capricious and vacating the fees); *AT & T v. FCC*, 974 F.2d 1351, 1355 (D.C. Cir. 1992) (faulting the FCC for failing to explain why it "changed the original price cap rules" and concluding that the Commission's "Reconsideration Order is arbitrary and capricious for want of an adequate explanation"). As the Supreme Court has put it, "an agency changing its course must supply a reasoned analysis...." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) (citation omitted). It is hard to imagine, under the circumstances presented here, that the CIA will be able to come anywhere close to meeting this standard.

2

Letter to Agency Release Panel
December 22, 2005

## The Archive's News Media Activities

The regulation cited in the denial letter, 32 C.F.R. § 1900.02 (3) states, "[r]epresentative of the news media means a request from an individual actively gathering news for an entity that is organized and operated to publish and broadcast news to the American public pursuant to their news dissemination function and not commercial interests." As you undoubtedly know, this language is drawn from Office of Management and Budget ("OMB") guidelines applicable to all agencies subject to the FOIA. OMB has indicated that news media be "defined generically as "an entity that is organized and operated to publish or broadcast news to the public."" See Uniform Freedom of Information Act Fee Schedule and Guidelines, 52 Fed. Reg. 10,012, 10,012-17 (1987). Furthermore, when establishing qualification as a member of the "news media," OMB advised, "a history of continuing publication.... would suffice." Id.

Here, the National Security Archive unquestionably qualifies for "news media" status. The National Security Archive has an extensive publication history, including the production of over 40 books. These include, *The Pinochet File: A Declassified Dossier on Atrocity and Accountability*, by Peter Kornbluh (New York: The New Press, 551 pp.), *The Kissinger Transcripts: The Top Secret Talks with Beijing and Moscow* by William Burr (New York: The New Press, 515 pp.), *Bay of Pigs Declassified: The Secret CIA Report* by Peter Kornbluh (New York: The New Press, 340 pp), *Atomic Audit: The Costs and Consequences of U.S. Nuclear Weapons since 1940* by Stephen I. Schwartz with Thomas S. Blanton, William Burr et al. (Washington, D.C.: Brookings Institution Press, 680 pp.) A more complete list of books by Archive analysts is attached. (**Enclosure B**) As you can imagine, the books are available to the public in bookstores, libraries, and for purchase over the Internet.

The decision to recognize the Archive as a representative of the news media in the *National Security Archive* case was based on the Archive's intention to publish document sets, along with indexes and finding aids. Our most recent document sets, which publish documents obtained through the FOIA, along with commentary, indexes and finding aids, include *U.S. Policy in the Vietnam War, Part I, 1954-1968, U.S. Policy in the Vietnam War, Part II: 1969-1975, Japan and the United States: Diplomatic, Security, and Economic Relations, Part II, 1977-1992* and *Guatemala and the United States, 1954-1999*. A list of our 26 published document sets is attached as well. (**Enclosure C**) These sets are available digitally and on microfiche, and are distributed to a broad range of libraries, universities, research institutes, and the like. In addition, any member of the public is able to access these for free in our own public reading room.

Articles written by National Security Archive analysts have appeared in *The Washington Post, The New York Times, The Wall Street Journal, Congressional Quarterly, The LA Times, Harpers Magazine, The Miami Herald, The Nation, The Guardian, Vanity Fair, The Bulletin of the Atomic Scientists, World Policy Journal, Foreign Affairs, Foreign Policy, Newsweek, The International Journal of Intelligence and Counterintelligence, International Security, Intelligence and National Security* and other publications.

Additionally, the National Security Archive actively distributes electronic newsletters, at no cost, on an almost weekly basis to over 7,000 subscribers. These newsletters directly link to documents recently released through the National Security Archive's FOIA activities or update the public on issues pertaining to the operations and activities of the U.S. government. A complete list of our electronic briefing books is available at http://www.gwu.edu/~nsarchiv/NSAEBB/index.html.

## Archive's Satisfaction of CIA's Additional Criteria for News Media Status

Letter to Agency Release Panel
December 22, 2005

The CIA's definition of "news media" contains additional requirements not found anywhere in the OMB Fee Guidelines or in other agencies' FOIA regulations. Although Congress, in the FOIA, directed that agency fee schedules should "conform to the guidelines ... promulgated, pursuant to notice and receipt of public comment, by the Director of the Office of Management and Budget," 5 U.S.C. Sec. 552(a)(4)(A)(i), the CIA's regulations do not meet this standard. Interestingly, when the CIA added additional criteria to its regulations in an Interim Regulation published in the Federal Register eight years ago, it stated that the revised regulations would "not alter substantially any existing rights of members of the public." 62 C.F.R. 32479 (June 16, 1997).[1] We and the other news media organizations we have consulted believe that the new interpretation that the CIA is applying to its regulations does just the opposite. Of course, many of the other news media outlets are profoundly interested in definitions of news media because they have been actively pursuing an expansion of news media definitions to include non-traditional news media, such as the definition in the OPEN Government Act proposed by Senators Cornyn and Leahy.

It is the Archive's position that it meets the standards of the CIA's regulation, even though those standards are not the appropriate ones by which to judge whether a FOIA requester is a representative of the news media. With the exception of the following points, I incorporate by reference my letter of November 10, 2005 (**Enclosure A**) as an explanation of the manner in which these requests satisfy the CIA's regulations for news media.

In general, when new information concerning important events is released it is "news" even if the underlying events took place long ago so long as it is of "current interest to the public." *See* OMB Guidelines ("The term 'news' means information that is about current events **or** that would be of current interest to the public.") (emphasis added); 32 C.F.R. 1900.02 ("the term news means information which ... would be of current interest to the general public"). That is the case with many of the requests described below. The public's desire for knowledge is not satisfied with the mere passage of time. For example, a few weeks ago *The New York Times* published a story about the 1964 Gulf of Tonkin incident and the role intelligence failures at the National Security Agency's played in that incident. Just this week recently uncovered documents from Guatemala's civil war in the late 1970s and 80s made major news, including an Associated Press story "Official Says Guatemala Killed Leftists," from December 14, 2005, which was reproduced in over twenty print publications. New, definitive or official information on these events, some of which took place decades ago, are still some of today's most important news stories because the information is revelatory for the public's understanding of their own histories, and of events that have changed the course of history and that impact current events.

In addition, as to how the Archive will disseminate the information to a significant element of the public at minimal cost, the same response applies to every one of the Archive's FOIA requests. As the National Security Archive has repeatedly done in the past, publication and public dissemination of these documents will be accomplished by one or more methods, all with the explicit goal of reaching the largest audience possible at the lowest cost possible. If the document is released and contains new information not previously widely known to the public, or policy not previously widely documented in the public

---

[1]    The CIA's additional criteria appear to be drawn from the FOIA's definition of what would qualify for a public interest fee waiver, and the cases decided under that provision. The Archive is requesting news media status and is not requesting a public interest fee waiver. Congress was well aware of how to limit applicability of a fee waiver to information meeting content criteria, as demonstrated by its definition of the standard for a public interest fee waiver. Under elementary principles of statutory construction, it is clear that Congress declined to impose such content criteria for the news media fee waiver.

Letter to Agency Release Panel
December 22, 2005

record, we will immediately publish a briefing book explaining the significance of the document and providing relevant historical background with the document. We also publish short electronic briefing books (collections of 5-50 documents that describe a specific event or a specific U.S. government policy). These are circulated at no cost to our over 7000 subscribers and made available at no cost on our Web site for all members of the public. *See* www.nsarchive.org. The documents themselves will be available on our Web site, at no cost, indefinitely, for anyone with Internet access to view, copy, download, disseminate and further utilize. We provide a comprehensive full-text keyword search so that people can locate documents related to their research even if they don't know exactly what document they are looking for.

In addition, the Archive's centerpiece publications are its document sets. If the requested documents contain substantive information, they will be included in a published document set. These document collections are published in microfiche (available at any of the hundreds of libraries that purchase access to our sets), paper copies of documents (available in our reading room to anyone present or via mail to anyone who sends an inquiry), or through the Digital National Security Archive, a database that contains full-text searchable and chronologically organized images of released government documents. For these published sets, the National Security Archive will take between 2-5 years to gather all recently declassified documents on a particular issue. Each set focuses on specific U.S. government policies on a region or an issue and provides an unparalleled resource of declassified government documents to the public.

For the benefit of the Agency release panel, I wish to note that the CIA has now questioned news media status with respect to 36 FOIA requests filed since August 2005. As a matter of policy, it appears to the Archive that the CIA's sudden reversal of longstanding policy, and its apparent eagerness to elevate this matter to a judicial forum (as evidenced by its invitation to the Archive to address this immediately in court rather than through the agency appeal process), betrays a purpose of harassing the Archive and discouraging its FOIA requests. This is exactly what Congress forbade agencies to do under cover of fee determinations. S. Rep. No. 93-1200, Conference Reports on the 1974 Amendments to the FOIA ("The conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information"). As you can imagine, the Archive will appeal each one of these fee determinations to the Agency Release Panel and any future denials. As a matter of good government, it does not appear sensible to use taxpayer money to clog up the CIA's administrative appeal process or cause frivolous legal defenses to be litigated through three courts.

I hope to receive your favorable response to this appeal granting news media fee status related to FOIA requests **F-2005-01811** 20051294CIA165; **F-2005-01773** 20051224CIA157; **F-2006-00057** 20051507CIA192; **F-2006-00039** 20051114CIA141; and **F-2006-00052** 20051500CIA189.

Furthermore, if you decide to deny news media status for any of the above listed requests, please specifically indicate which of the criteria in 32 C.F.R. Sec. 1900.02 you have determined is not met. Your failure to specify which criterion has not been satisfied will be viewed by the Archive, as well as the news media organizations that have been briefed, as evidence that the CIA intends to interfere with legitimate news media use of the FOIA.

5

Letter to Agency Release Panel
December 22, 2005

Please feel free to contact me by telephone if you wish to discuss this further.  I can be reached on my direct line at 202-994-7059.

Sincerely,

Meredith Fuchs
General Counsel

# EXHIBIT 17

Central Intelligence Agency



Washington, D.C. 20505

8 February 2006

Ms. Meredith Fuchs
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Re: Appeal of Freedom of Information Act Fee Categorization Determinations

|  |  |
| --- | --- |
| F-2005-01773 20051224CIA157 | F-2006-00039 20051114CIA141 |
| F-2005-01811 20051294CIA165 | F-2006-00052 20051500CIA189 |
|  | F-2006-00057 20051507CIA192 |

Dear Ms. Fuchs:

We have received your letter of 22 December 2005 ostensibly appealing to the CIA's Agency Release Panel our fee categorization of the above-referenced requests. You asserted that the five requests above met the definition of news and therefore warranted placement in the news media fee category. Based on the information you provided in your letter, we determined that the requests did not deal with news as our regulations define the term. We therefore placed these requests in the "all other" fee category.

I regret that our published regulations provide no right of administrative appeal for a fee categorization decision. The applicable and publicly available provision of 32 C.F.R. § 1900.42 (a) limits administrative appeals to three circumstances: denial of access to records or any portion thereof; searches that locate no records; and denials of requests for fee *waivers*. In accordance with the provisions of the Administrative Procedures Act, you have the right to seek judicial review of these decisions in a United States district court.

Our regulations require a fee commitment for cases in which we estimate fees will exceed $100. We estimate that fees in the above-cases will exceed $100, and therefore require the Archive's commitment to pay them before we can begin processing the cases. The search fees for each item in a request usually approximate $150.

We will hold the five requests above in abeyance for 45 days pending our receipt of the Archive's commitment to pay fees. Once we receive the Archive's commitment,

20051224CIA157       CIA
RECNO:31804       SEQCOR:119150
2/13/2006       FOISG: Elias, Barbara
Taliban Members (Omar, Rabbani)

Ms. Meredith Fuchs                 Page 2                    8 February 2006
General Counsel

we will place these five requests in the processing queue using the date of the initial
request letter.   They will not lose their place in line.


                                        Sincerely,


                                        Scott A. Koch, Ph.D.
                            CIA Information and Privacy Coordinator

# EXHIBIT 18

Central Intelligence Agency



Washington, D.C. 20505

10 April 2006

Ms. Barbara Elias
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

Reference:  Enclosed List of 40 FOIA Requests

Dear Ms. Elias:

On 8 February 2006 I informed you and Ms. Meredith Fuchs, your General Counsel, that we would hold the enclosed list of Freedom of Information Act (FOIA) cases in abeyance for forty-five days pending our receipt of the National Security Archive's commitment to pay fees.  That time has expired.  In an effort to be certain that you have had an adequate opportunity to consider whether you wish to make such a commitment, I am extending the period until Friday, 21 April 2006, *for the enclosed list of forty cases only*.

If we do not receive your fee commitment by Friday, 21 April 2006, we will close all forty cases in accordance with our regulation published at 32 C.F.R. § 1900.13(e).  Please be assured that you may resubmit these requests at any time thereafter.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosure

| | |
|---|---|
| 20051224CIA157 | CIA |
| RECNO:31804 | SEQCOR:120330 |
| 4/14/2006 | FOISG: Elias, Barbara |
| Taliban Members (Omar Rabbani) | |

Enclosure

Ms. Barbara Elias                                          10 April 2006
The National Security Archive

**List of 40 FOIA Requests: Pending Fee Commitment – Response
Extended through Friday, 21 April 2006**

| CIA FOIA Reference Number | The National Security Archive Number |
|---|---|
| F-2005-01773 | 20051224CIA157 |
| F-2005-01811 | 20051294CIA165 |
| F-2006-00039 | 20051114CIA141 |
| F-2006-00051 | 20051502CIA190 |
| F-2006-00052 | 20051500CIA189 |
| F-2006-00057 | 20051507CIA192 |
| F-2006-00058 | 20051505CIA191 |
| F-2006-00081 | 20051532CIA193 |
| F-2006-00083 | 20051545CIA195 |
| F-2006-00084 | 20051541CIA194 |
| F-2006-00087 | 20051562CIA199 |
| F-2006-00088 | 20051564CIA200 |
| F-2006-00098 | 20051548CIA196 |
| F-2006-00099 | 20051551CIA197 |
| F-2006-00100 | 20051559CIA198 |
| F-2006-00104 | 20051576CIA204 |
| F-2006-00105 | 20051574CIA203 |
| F-2006-00106 | 20051573CIA202 |
| F-2006-00107 | 20051568CIA201 |
| F-2006-00114 | 20051582CIA207 |
| F-2006-00116 | 20051580CIA206 |
| F-2006-00118 | 20051586CIA208 |
| F-2006-00121 | 20051593CIA210 |
| F-2006-00122 | 20051591CIA209 |
| F-2006-00126 | 20051595CIA211 |
| F-2006-00127 | 20051598CIA212 |
| F-2006-00129 | 20051601CIA213 |
| F-2006-00173 | 20051612CIA214 |
| F-2006-00186 | 20051619CIA215 |
| F-2006-00187 | 20051622CIA216 |
| F-2006-00190 | 20051645CIA220 |
| F-2006-00191 | 20051637CIA219 |
| F-2006-00194 | 20051632CIA218 |
| F-2006-00195 | 20051629CIA217 |
| F-2006-00198 | 20051655CIA223 |
| F-2006-00199 | 20051658CIA224 |
| F-2006-00202 | 20051652CIA222 |
| F-2006-00286 | 20051686CIA225 |
| F-2006-00293 | 20051693CIA226 |
| F-2006-00296 | 20051700CIA227 |

# EXHIBIT 19

# The National Security Archive

**The George Washington University**
**Gelman Library, Suite 701**
**2130 H Street, N.W.**
**Washington, D.C. 20037**

**Phone: 202/994-7000**
**Fax: 202/994-7005**
**nsarchive@gwu.edu**
**www.nsarchive.org**
**Direct: 202-994-7059**
**E-mail: mfuchs@gwu.edu**

April 21, 2006

**By Facsimile**

Scott Koch
Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC   20505
Fax: (703) 613-3007

Dear Mr. Koch:

Thank you for your letter dated April 10, 2006.  As we have expressed in prior correspondence to you and to the CIA Agency Release Panel, the Archive disputes the CIA's determination that it is not entitled to news media status for the 40 FOIA requests referenced in your letter.  See, inter alia, Letters Dated November 10, 2005, November 22, 2005, and December 22, 2005.  It is our view that these determinations were made for the purpose of discouraging requests for information by the Archive or as obstacles to disclosure of requested information to the Archive.

You have informed us that we are not entitled to an administrative appeal of the denial of news media status and, accordingly, our only option is to litigate the matter.  Because we continue to evaluate and research our options, we request that you continue to hold these requests in abeyance for an additional 45 business days.  This request should not be construed as a waiver of any legal rights or remedies available to the Archive.  The Archive continues to object to the non-processing of these FOIA requests by the CIA and objects to these requests being closed.

Sincerely,

Meredith Fuchs
General Counsel

An Independent non-governmental research institute and library located at the George Washington University, the Archive collects and publishes declassified documents obtained through the Freedom of Information Act.  Publication royalties and tax deductible contributions through The National Security Archive Fund, Inc. underwrite the Archive's Budget.

# EXHIBIT 20

Central Intelligence Agency



Washington, D.C. 20505

1 May 2006

Meredith Fuchs
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037

VIA FACSIMILE (202) 994-7005 AND FIRST CLASS MAIL

Dear Ms. Fuchs:

I have received your facsimile letter of 21 April 2006 requesting an additional
forty-five business days in which to evaluate and research your options whether you will
pay the FOIA fees associated with being in the "all other" category. My letter of 8
February 2006 held your original requests in abeyance for forty-five days pending my
receipt of your fee commitment.

The National Security Archive did not make a fee commitment within the forty-
five days our regulations require. Nonetheless, given the importance of the issue to you,
by letter of 10 April 2006, I extended that deadline an additional 27 days from the
original expiration date of 25 March 2006. This second deadline expired on 21 April
2006. Under the circumstances, I cannot extend the deadline an additional forty-five
days; but as an act of good faith I will extend it an additional fourteen days.

I must therefore receive your commitment to pay the fees associated with the
forty outstanding requests on or before Friday, 12 May 2006. If I do not receive your
commitment by then, I must close them. You, of course, are free to refile your requests
at any time thereafter.

Should you decide to pay the nominal fees you will likely incur, we will process
your cases as of the date we received them, which will not prejudice your interests or
cause you to lose your place in line. You also will retain all your appeal rights in the

| 20051224CIA157 | CIA |
|---|---|
| RECNO: 31804 | SEQCOR: 120940 |
| DATER: 5/5/2006 | Elias, Barbara |
| Taliban Members (Omar, Rabbani) | |

Meredith Fuchs
General Counsel                              Page 2                                    1 May 2006

event we must deny any information in whole or are unable to locate responsive records.

Sincerely,

Scott A. Koch, Ph.D.
CIA Information and Privacy Coordinator