## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE NATIONAL SECURITY ARCHIVE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06-CV-1080 (GK) |
| CENTRAL INTELLIGENCE AGENCY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## <u>AS TO WHICH PLAINTIFF CONTENDS THERE IS NO GENUINE ISSUE</u>

Pursuant to Fed. R. Civ. P. 56 and Local Civ. R. 7(h) and 56.1, Plaintiff submits this statement of material facts as to which Plaintiff contends there is no genuine issue:

1.       Plaintiff National Security Archive ("Archive") is a not-for-profit research institution located at George Washington University in Washington, D.C.  It was established in 1985 to promote research and public education on U.S. governmental and national security decision-making and to promote and encourage openness in government and government accountability.  The Archive collects, analyzes, and publishes declassified documents acquired through the Freedom of Information Act ("FOIA").  *See* Decl. of Thomas S. Blanton ("Blanton Decl.") ¶ 2.

2.       In 1989, the United States Court of Appeals for the District of Columbia Circuit held in *National Security Archive v. U.S. Department of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1029 (1990) ("*Archive v. DOD*"), that the Archive qualifies as a "representative of the  news media" under the fee provisions of the FOIA.

3.     In 1988, the Archive sued the CIA in this Court, seeking a declaratory judgment that the Archive is entitled to waiver of all search and review fees under the FOIA based on its status as a "representative of the news media." *See National Security Archive v. CIA*, No. 88-0501 (D.D.C. Jan. 30, 1990) at 2 ("1990 Memorandum and Order"); Blanton Decl. ¶ 9. In 1990, applying the holding of the D.C. Circuit in *Archive v. DOD*, this Court reversed the CIA's "determination that plaintiff [the Archive] is not entitled to a fee waiver under 5 U.S.C. 552(a)(4)(A)(ii)(II)," and "ORDERED that defendant [CIA] must treat plaintiff as a 'representative of the news media,' within the meaning of" the statute. 1990 Order at 1, 2.

4.     In the 15 years following the *Archive* decisions, the Archive submitted hundreds of FOIA requests to the CIA seeking information for non-commercial purposes to support the Archive's ongoing activities of gathering, publishing, and disseminating information related to government operations and national security issues. *See* Blanton Decl. ¶ 10. Until October 2005, the CIA with few exceptions recognized the Archive as a "representative of the news media" and processed the Archive's numerous FOIA requests without assessing fees for document search or review and without requiring the Archive to reestablish its fee status as a "representative of the news media." The Archive is unaware of any occasion between 1991 and October 2005 on which the Archive paid search or review fees to the CIA or any other federal agency. In addition, the Archive is unaware of any occasion between May 1992 and October 2005 on which the CIA tried to assess such fees. *See id.*

5.     Beginning in late October 2005, the CIA ended its longstanding treatment of the Archive as a "representative of the news media" and instead adopted a practice of demanding that the Archive prove its news media status with respect to each particular request. Specifically, the CIA has refused to recognize the Archive's status as a "representative of the news media" in

connection with 42 FOIA requests that the Archive submitted to the CIA between August 10,

2005, and March 7, 2006. *See* Blanton Decl. ¶ 12.

6.      Each of the 42 requests at issue stated that the Archive qualified for a waiver of

search and review fees as a "representative of the news media" and explained that the request

was made as part of a scholarly and news research project and not for commercial use. *See*

Blanton Decl. ¶ 13 & Attach. 4 (compiled requests). Broadly speaking, the 42 requests at issue

sought information falling into one of four geographic subject areas: (i) Afghanistan, including

biographies of certain Taliban members and memoranda from 1979 regarding the United States'

policy of aiding the Mujahadeen; (ii) Mexico, including meetings between United States and

Mexican officials about NAFTA and other matters, specific events related to the Salinas

administration and his role as ex-President, particular elections and efforts toward electoral

reform, and specific instances of political corruption, conflict, or violence; (iii) Indonesia,

including visits by United States and Indonesian officials to each others' countries, events related

to the resurgence of Muslim extremist activities, political uprisings, and alleged acts of political

repression during the Suharto regime; and (iv) Colombia, including peace negotiations between

the government and the National Liberation Army and authorization for the Colombia-Venezuela

pipeline. *See* Blanton Decl. Attach. 3 (Selected Requests Submitted by the National Security

Archive to the CIA Between August 10, 2005 and March 7, 2006 ("List of Requests")); Blanton

Decl. Attach. 4 (compiled requests). The Archive subsequently withdrew one of the 42 requests.

*See* Blanton Decl. ¶ 13.

7.      In response to these 42 requests, the CIA demanded that the Archive justify its

news media status separately for each particular request. *See* Blanton Decl. ¶ 14 & Attach. 5. In

a paradigmatic response, the CIA stated that the Archive's "request . . . does not appear to satisfy

3

the criteria our published regulations require to receive preferential fee treatment as a

representative of the news media," and asked the Archive to provide, "pursuant to 32 C.F.R. §

1900.02(h), additional information on why and how the documents you seek . . . concern current

events," "interest the general public," and "enhance the public understanding of the operations or

activities of the U.S. Government"; and "how you plan to disseminate the information to a

significant element of the public at minimal cost." *See* Letter from Koch to Elias dated Oct. 28,

2005, regarding F-2005-01773, included in compilation of CIA demand letters (Blanton Attach.

5); Blanton Decl. ¶ 14.  The CIA further informed the Archive that it would not process the 42

requests unless the Archive agreed to pay search costs under the FOIA.  *See* Blanton Attach. 5.

      8.     In response to the CIA's demands for additional information justifying favorable

fee treatment on a request-by-request basis, the Archive objected to the CIA's actions as contrary

to the D.C. Circuit's 1989 decision that the Archive is a "representative of the news media."  The

Archive presented these objections in four separate letters, each addressing a sub-group of the 42

disputed requests.  *See* Blanton Decl. ¶ 15; Letter from Fuchs to Koch dated November 10, 2005

("Nov. 10 Fuchs Letter") (Blanton Attach. 6); Letter from Fuchs to Koch dated December 22,

2005 ("Dec. 22 Fuchs Letter") (Blanton Attach. 7); Letter from Fuchs to Koch dated January 27,

2006 ("Jan. 27 Fuchs Letter") (Blanton Attach. 8); and Letter from Fuchs to Koch dated May 8,

2006 ("May 8 Fuchs Letter") (Blanton Attach. 9).  The Archive also provided a detailed

explanation of how, since that court's decision, it had dramatically expanded its publication

activities and, therefore, possessed an even *stronger* entitlement to preferential fee treatment

under the Court of Appeal's reasoning.  *See, e.g.*, Dec. 22 Fuchs Letter at 1; Jan. 27 Fuchs Letter

at 2 (Blanton Attachs. 7, 8).

4

9.      As it noted in letters to the CIA describing its publication activities, the Archive's journalistic work has received numerous awards, including, most recently, the 2005 Emmy Award for Outstanding Achievement in News and Documentary Research, presented by the National Television Academy at the 26th Annual News & Documentary Emmy Awards.  *See* Dec. 22 Fuchs Letter at 1-2; Jan. 27 Fuchs Letter at 2 (Blanton Attachs. 7, 8); Blanton Decl. ¶ 3.

10.     As it noted in its letters to the CIA, the Archive has produced over 40 books, including:  *The Pinochet File: A Declassified Dossier on Atrocity and Accountability*, by Peter Kornbluh (New York: The New Press, 2003), *The Kissinger Transcripts: The Top Secret Talks with Beijing and Moscow*, by William Burr (New York: The New Press, 1999), *Bay of Pigs Declassified: The Secret CIA Report*, by Peter Kornbluh (New York: The New Press, 1998), and *Atomic Audit: The Costs and Consequences of U.S. Nuclear Weapons since 1940*, by Stephen I. Schwartz, with Thomas S. Blanton, William Burr, *et al.* (Washington, D.C.: Brookings Institution Press, 1998).  *See* Blanton Decl. ¶ 4; Nov. 10 Fuchs Letter at 2, and website lists included in enclosures to this letter (Blanton Attach. 6).  Other recently published titles include *Spying on the Bomb: American Nuclear Intelligence from Nazi Germany to Iran and North Korea*, by Jeffrey T. Richelson (W.W. Norton March 13, 2006), *Cardboard Castle: An Inside History of the Warsaw Pact, 1955-1991*, by Malcolm Byrne, *et al.* (Central European University Press, June 30, 2005), and *The 1956 Hungarian Revolution: A History in Documents*, edited by Malcolm Byrne (Central European University Press, Jan. 1 2003).  *See* Blanton Decl. ¶ 4.

11.     In its letters to the CIA, the Archive also listed 26 of its most recently published document sets, which contain documents obtained through the FOIA, along with commentary, indexes and finding aids.  *See* Blanton Decl. ¶ 5.  These document sets included:  *U.S. Policy in the Vietnam War, Part I, 1954-1968; U.S. Policy in the Vietnam War, Part II: 1969-1975; Japan*

*and the United States: Diplomatic, Security, and Economic Relations, Part II, 1977-1992;* and

*Guatemala and the United States, 1954-1999. Id.* As the Archive explained to the CIA, the

document sets are available digitally and on microfiche; are distributed to a broad range of

libraries, universities, and research institutes; and are available to the public for free in the

Archive's reading room. *See* Nov. 10 Fuchs Letter at 2, and website lists included in enclosures

to this letter (Blanton Attach. 6); Blanton Decl. ¶ 5. While the Archive provided the CIA with a

list of 26 document sets that it had published, in fact the Archive has published 27 such

document sets. Other recent document sets include: *The Cuban Missile Crisis Revisited: An*

*International Collection of Documents from the Bay of Pigs to the Brink of Nuclear War*

(forthcoming 2006); *The Kissinger Transcripts: A Verbatim Record of U.S. Diplomacy 1969-*

*1977* (2005); and *Terrorism and U.S. Policy: 1968-2002* (2002). *See* Blanton Decl. ¶ 5.

      12.    As it noted in its letters to the CIA, articles written by the Archive's analysts have

appeared in *The Washington Post, The New York Times, The Wall Street Journal, Congressional*

*Quarterly, The LA Times, Harpers Magazine, The Miami Herald, The Nation, The Guardian,*

*Vanity Fair, The Bulletin of the Atomic Scientists, World Policy Journal, Foreign Affairs,*

*Foreign Policy, Newsweek, The International Journal of Intelligence and Counterintelligence,*

*International Security, Intelligence and National Security* and other publications. *See* Nov. 10

Fuchs Letter at 3; Dec. 22 Fuchs Letter at 4; Jan. 27 Fuchs Letter at 4 (Blanton Attachs. 6-8);

Blanton Decl. ¶ 6.

      13.    As it noted in its letters to the CIA, the Archive actively distributes electronic

newsletters, at no cost, on an almost weekly basis to over 7,000 subscribers. These newsletters

directly link to documents recently released through the Archive's FOIA requests and update the

public on issues pertaining to the operations and activities of the U.S. government. *See* Nov. 10

Fuchs Letter at 3; Dec. 22 Fuchs Letter at 4; Jan. 27 Fuchs Letter at 4 (Blanton Attachs. 6-8);

Blanton Decl. ¶ 7.

14.     As it noted in its letters to the CIA, the Archive also publishes "electronic briefing

books" on subjects related to the FOIA requests at issue, and the Archive intends to publish

additional briefing books on related subjects.  A complete list of its electronic briefing books is

available at http://www.gwu.edu/~nsarchiv/NSAEBB/index.html.  *See* Nov. 10 Fuchs Letter at

3; Dec. 22 Fuchs Letter at 4; Jan. 27 Fuchs Letter at 4 (Blanton Attachs. 6-8); Blanton Decl. ¶ 7.

Updated frequently, these briefing books represent a small sample of documents in the Archive's

published and unpublished collections, and they provide online access to important declassified

records on issues such as U.S. national security, foreign policy, diplomatic and military history,

and intelligence policy.  Approximately 190 of those electronic briefing books are available at

the Archive's website, which attracts well over one million successful visits per month, and

visitors to the site download an estimated 300,000 pages per day of declassified documents.  *See*

Blanton Decl. ¶ 7.

15.     In response to the CIA's demands, the Archive also provided detailed information

about the 42 individual requests and how each request satisfied the criteria in the CIA's FOIA

fee regulation, 32 C.F.R. § 1900.02(h)(3).  For each of its requests, the Archive provided an

exhaustive explanation of how each of the CIA's regulatory criteria were met.  *See* Nov. 10

Fuchs Letter, Dec. 22 Fuchs Letter, Jan. 27 Fuchs Letter, and May 8 Fuchs Letter (Blanton

Attachs. 6-9); Blanton Decl. ¶ 15.

16.     For example, the Archive explained that documents it requested pertaining to U.S.

policy in Afghanistan in 1979 were essential to obtaining "insight into how the [Special

Coordinating Committee] at the [National Security Council] made the decision to aid the

Mujahadeen — a decision which continues to have tremendous ramifications for the safety and security of the U.S. public today, as many of these same Mujahadeen fighters currently now advocate and participate in terrorist activities against U.S. interests and the U.S. public." Dec. 22 Fuchs Letter at 10 (discussing No. F-2006-00107) (Blanton Attach. 7). Additionally, the Archive confirmed that it would disseminate the requested information through its normal channels; moreover, the information would be included in a "briefing book" containing recently released documents on U.S. aid to the Mujahadeen between January 1979 and January 1992, which was then being prepared by the Archive analyst who made the FOIA request. *See id.* at 11.

17.    By letter dated November 25, 2005, two letters dated February 8, 2006, and two letters dated May 31, 2006, the CIA summarily refused to recognize the Archive as a "representative of the news media" in connection with the 42 disputed requests. The CIA did not contend that any of the 42 requests were made for commercial use, but instead asserted that each request failed to satisfy the CIA's criteria for defining "representative of the news media." The CIA informed the Archive that the Archive would be required to pay the costs of searching for and reproducing the requested documents, and that the CIA would not begin processing the requests until the Archive committed to pay the assessed fees. *See* Letter from Koch to Fuchs dated Nov. 25, 2005 ("Nov. 25 Koch Letter") (Blanton Attach. 10); Letter from Koch to Fuchs dated Feb. 8, 2006 ("Feb. 8 Koch Letter") (Blanton Attach. 11); Letter from Koch to Elias dated Feb. 8, 2006 ("Second Feb. 8 Koch Letter") (Blanton Attach. 12); Letter from Koch to Fuchs dated May 31, 2006 ("May 31 Koch Letter") (Blanton Attach. 13); Second Letter from Koch to Fuchs dated May 31, 2006 ("Second May 31 Koch Letter") (Blanton Attach 14); Blanton Decl. ¶ 16.

18.     By letter to the Agency Review Panel dated December 22, 2005, the Archive administratively appealed the CIA's refusal to treat the Archive as a representative of the news media in connection with five requests. *See* Letter from Fuchs to Agency Release Panel, c/o Koch, dated Dec. 22, 2005 (Blanton Attach. 15); Blanton Decl. ¶ 17.

19.     By letter dated February 8, 2006, the CIA informed the Archive that it had no right to administratively appeal the CIA's refusal to recognize the Archive as a "representative of the news media," but that the Archive could seek judicial review of the CIA's determinations. *See* CIA Letter dated Feb. 8, 2006 (Blanton Attach. 16); Blanton Decl. ¶ 18. The CIA similarly informed the Archive in its initial denials of 34 other requests in dispute (not including the withdrawn request) that no administrative appeal was available, but that the Archive could seek judicial review of the CIA's fee determinations. *See* Feb. 8 Koch Letters (Blanton Attachs. 11, 12); Blanton Decl. ¶ 18.

20.     By letter dated April 10, 2006, the CIA informed the Archive that it would close the 40 requests for which the CIA had refused to recognize the Archive's news media status unless the Archive agreed by April 21, 2006, to pay search fees for those requests. *See* Letter from Koch to Elias dated Apr. 10, 2006 (Blanton Attach. 17); Blanton Decl. ¶ 19.

21.     By letter dated April 21, 2006, the Archive reasserted its objections to the CIA's actions and requested an additional 45 days to consider its options *See* Letter from Fuchs to Koch dated April 21, 2006 (Blanton Attach. 18); Blanton Decl. ¶ 20.

22.     By letter dated May 1, 2006, the CIA informed the Archive that it would close the 40 requests unless the Archive committed within 14 days to pay all processing fees. *See* Letter from Koch to Evans dated May 1, 2006 (Blanton Attach. 19); Blanton Decl. ¶ 21.

23.     On or about May 12, 2006, the Archive informed the CIA that it would pay the assessed fees (but asked the CIA to inform the Archive before it incurred costs above $250 for any individual request).  The Archive stated that its commitment to pay fees was made under protest and without prejudice to the Archive's legal rights.  *See* Blanton Decl. ¶ 22.

24.     By letters dated May 31, 2006, the CIA informed the Archive of its denial of favorable fee treatment for the remaining two requests and told the Archive that it would close the requests if the Archive failed to commit within 45 days to pay search fees.  *See* Letters from Koch to Evans dated May 31, 2006 (Blanton Attachs. 20-21); Blanton Decl. ¶ 23.

25.     On or about June 27, 2006, the Archive similarly agreed, under protest, to pay processing fees associated with the other two requests for which the CIA had refused to recognize the Archive's news media status, which the CIA had similarly threatened to close unless the Archive agreed to pay the assessed fees.  *See* Blanton Decl. ¶ 24.

26.     Prior to October 2005, the CIA recognized the Archive's news media status in connection with FOIA requests seeking information on subjects similar to those covered by the requests at issue in this suit.  For example, one request at issue seeks documents relating to a 1978 session of the Indonesian legislature and the 1978 reelection of Indonesian President Suharto.  The CIA found that the request neither concerned a current event nor enhanced the public's understanding of the operations or activities of the U.S. Government.  *See* Feb. 8 Koch Letter (Blanton Attach. 11) (addressing request No. F-2006-00100); List of Requests (Blanton Attach. 3).  But in 2005, the CIA accorded news media status for a request seeking documents relating to President Suharto's 1976 retirement from the Indonesian Armed Forces.  *See* Letter from Koch to Simpson dated Aug. 19, 2005 (Blanton Attach. 1); Blanton Decl. ¶ 11.

27.     Another contested request seeks documents related to the crackdown on the Zapatista National Liberation Army (EZLN) ordered by Mexican President Zedillo in 1995. The CIA found that the request neither concerns a current event nor enhances the public's understanding of the operations or activities of the U.S. Government. *See* Feb. 8 Koch Letter at 5 (Blanton Attach. 12) (addressing request No. F-2006-00202); List of Requests at 7-8 (Blanton Attach. 3). But in 2002, the CIA accorded news media status for a request for records related to the emergence of the EZLN in Mexico and the EZLN's clashes with the Mexican Army in 1994. *See* Letter from Dyer to Doyle dated June 11, 2002 (Blanton Attach. 2); Blanton Decl. ¶ 11.

28.     By letters dated December 15, 2005, March 14, 2006, and March 22, 2006, the CIA informed the Archive that it would waive search fees for three requests the Archive submitted between August 2005 and March 2006 without seeking additional information from the Archive concerning those requests. *See* Blanton Decl. ¶ 25 & Attachs. 22-24; *see also* List of Requests (Blanton Attach. 3). These requests concerned NAFTA and illegal immigration from Mexico (No. F-2006-00203), weapons of mass destruction in Iraq (No. F-2006-00667), and Ayatollah Ali Sistani's July 2003 fatwa concerning Iraqi elections (No. F-2006-00728). The CIA has not explained how these three requests differ from the 42 requests for which the CIA denied preferential fee treatment. *See* Blanton Decl. ¶ 25. In addition, from August 10, 2005 through mid-October 2005, the period in which the Archive submitted the 42 requests for which the CIA sought written justifications and refused to waive search fees, the Archive submitted over 30 other requests for which the CIA decided not to assess search fees. *See id.*

29.     The CIA also revoked its previous determination that a request the Archive had submitted in 1999 qualified for preferred fee treatment. *See* Blanton Decl. ¶ 26. In 1999, the Archive submitted a request for 26 CIA news bulletins from 1971 concerning India and Pakistan.

By letter dated October 27, 1999, the CIA informed the Archive that the agency accepted this request (No. F-1999-00850) "[b]ased on The National Security Archive's agreement to pay copying costs as a requester in the category of 'representative of the news media.'"  Letter from Dyer to Battle dated Oct. 27, 1999, at 2 (Blanton Attach. 25).  By letter dated March 9, 2006, however, the CIA revoked its earlier determination without explanation and informed the Archive that it was subject to search fees for this request (which the CIA then waived because of its delay in responding to the request).  *See* Letter from Koch to Battle dated March 9, 2006, at 1 (Blanton Attach. 26)).

30.     By letter dated June 14, 2006, the CIA asserted, with respect to a request for documents pertaining to certain 1979 memoranda from National Intelligence Officer for Soviet Affairs Arnold Horelick to CIA Director Admiral Stansfield Turner (No. F-2006-00119), that the Archive had agreed to pay fees attendant to the request in the "all other" fee category.  In fact, the Archive had never indicated such agreement.  *See* Letter from Koch to Elias dated June 14, 2006 (Blanton Attach. 27); Blanton Decl. ¶ 27.

31.     By letter dated June 14, 2006, the CIA informed the Archive, with respect to four FOIA requests submitted by the Archive in 2000, that "your request, based on similar cases that we processed for The National Security Archive in 2000, falls into the 'news media' fee category."  Letter from Koch to Kornbluh dated June 14, 2006, at 3 (Blanton Attach. 28); Blanton Decl. ¶ 28.

Respectfully submitted,

*David S. Mendel*
_____
Patrick Carome (D.C. Bar No. 385676)
David S. Mendel (D.C. Bar No. 470796)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000 (t)
(202) 663-6363 (f)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037
(202) 994-7000 (t)
(202) 994-7005 (f)

*Counsel for Plaintiff National Security Archive*

DATE:  September 8, 2006