**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| THE NATIONAL SECURITY ARCHIVE, )<br><br>Plaintiff, )<br><br>v. )<br><br>CENTRAL INTELLIGENCE AGENCY, )<br>*et al.*, )<br><br>Defendants. ) | No. 06-CV-1080 (GK) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

Patrick Carome (D.C. Bar No. 385676)
David S. Mendel (D.C. Bar No. 470796)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 663-6000 (t)
(202) 663-6363 (f)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037
(202) 994-7000 (t)
(202) 994-7005 (f)

*Counsel for Plaintiff National Security Archive*

September 22, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................8

     I.     Standard of Review......................................................................................8

     II.    The CIA's Assertion That It Is Voluntarily Ceasing Certain Illegal Conduct Does Not Moot This Action...........................................................................9

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162 (D.C. Cir. 1994) ...........................10

*Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) .................................9, 14, 20

*Associated Builders & Contractors, Inc. v. Herman*, 976 F. Supp. 1 (D.D.C. 1997)....................10

*Better Gov't Ass'n v.Dep't of State*, 780 F.2d 86 (D.C. Cir. 1986) ........................................ *passim*

*Byrd v. U.S. EPA*, 174 F.3d 239 (D.C. Cir. 1999) ......................................................... *passim*

*21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192 (D.C. Cir. 2003) .................................18

*City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421 (D.C. Cir. 1994)................ *passim*

*Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184 (D.C. Cir. 2004) ............................10, 20

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) ...........................................................10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ......... *passim*

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) .........................................................................9

*Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192 (D.C. Cir. 1992)..............................................9

*In re Arcadian Corp.*, 1995 WL 626501 (D.C. Cir. Oct. 4, 1995) ..................................................10

*In re Int'l Union*, 231 F.3d 51 (D.C. Cir. 2000)...........................................................................10

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) ......................................................................................................................10

*Independent Community Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28 (D.C. Cir. 1999) .................................................................................................................19

*Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005) ......................6, 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................................9, 18

* *Nat'l Security Archive v. CIA*, Civ. No. 88-0501 (D.D.C. Jan. 30, 1990)........................................4

* *Nat'l Security Archive v. U.S. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1029 (1990) ..................................................................................... *passim*

* *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) ............................ *passim*

*Shoreham-Wading River Cent. Sch. Dist. v. U.S. Nuclear Regulatory Comm'n*, 931 F.2d 102 (D.C. Cir. 1991) ..................................................................................................... 10

*Super Tire Eng'g Co. v. McCorkle* , 416 U.S. 115 (1974) ................................. 10, 11, 17

*Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78 (D.D.C. 2000) ............................. 8

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ........................................... 10, 16

*Wilbur v. CIA*, 273 F. Supp. 2d 119 (D.D.C. 2003), *aff'd*, 355 F.3d 675 (D.C. Cir. 2004) ....... 8, 20

## STATUTES

Freedom of Information Reform Act of 1986,
Pub. L. No. 99-570, § 1801-1804, 100 Stat. 3207-48, 48-50 ........................................... 3

5 U.S.C. § 552(a)(4)(A)(ii) ....................................................................................... 1, 3

5 U.S.C. § 552(a)(4)(A)(ii)(II) ............................................................................. *passim*

5 U.S.C. §§ 701-706 ..................................................................................................... 1

## REGULATIONS

32 C.F.R. § 1900.02(h)(3) ..................................................................................... *passim*

32 C.F.R. § 1900.13(i) ............................................................................................... 7, 8

* Authorities upon which the National Security Archive chiefly relies upon are marked with asterisks.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| THE NATIONAL SECURITY ARCHIVE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| *et al.*, | ) |
|  | ) |
| Defendants. | ) |

No. 06-CV-1080 (GK)

---

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Through this action, Plaintiff National Security Archive ("Archive") challenges the Central Intelligence Agency's ("CIA") refusal to recognize the Archive as a "representative of the news media" under fee provisions of the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552(a)(4)(A)(ii), as contrary to long-standing D.C. Circuit precedent and an order of this Court specifically directing the CIA to accord such status to the Archive.[1]  The Archive seeks declaratory and injunctive relief reversing 43 separate adverse determinations of the CIA; permanently enjoining the CIA's illegal policy and practice of refusing to recognize the Archive as a "representative of the news media" based on the agency's scrutiny of the *content* of each request; and invalidating pertinent CIA regulations, including 32 C.F.R. § 1900.02(h)(3).

---

[1]    The Archive brings this action under the FOIA, 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, against Defendants CIA, General Michael V. Hayden, in his official capacity as Director of the CIA, and Scott A. Koch, in his official capacity as Information and Privacy Coordinator of the CIA (collectively "CIA").

On September 8, 2006, the same day that the CIA was required to answer the Archive's Complaint (and after the Archive had moved for summary judgment), the Archive received from Mr. Adolfo Tarasiuk, Jr., Chief Information Officer of the CIA, a letter in which Mr. Tarasiuk promised that the CIA would, among other things, "withdraw" its prior determinations regarding the 43 requests at issue. *See* Tarasiuk Letter to Meredith Fuchs, General Counsel, Archive (Sept. 8, 2006) ("Tarasiuk Letter") at 1. Also on September 8, the CIA filed the present motion to dismiss for lack of subject matter jurisdiction, stating that it "has provided the [Archive] with all of the relief requested in the Complaint to which it is entitled." Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 1. But contrary to the CIA's position, this case is not moot. Mr. Tarasiuk's eleventh-hour proffer of relief is facially deficient and, in any event, his letter cannot foreclose the Archive from seeking judicial intervention to prevent future illegal conduct by the agency. It is the prerogative of this Court, not the CIA, to determine the judicial relief to which the Archive "is entitled," and the CIA's motion should be denied accordingly.

Pursuant to Local Civil Rule 7(f), the Archive requests an oral hearing on the CIA's motion to dismiss.

## BACKGROUND

The Archive is a not-for-profit research institution established in 1985 to promote research and public education on U.S. governmental and national security decision-making and to promote and encourage openness in government and government accountability. Complaint ("Compl.") ¶ 9. The Archive has an extensive history of publishing and disseminating information, including publication of books, articles, document sets, electronic newsletters, and electronic "briefing books" on subjects relating to national security, intelligence-gathering, foreign policy, and the operations of the U.S. Government. *Id.* ¶¶ 9, 20-24. The Archive's journalistic work has received numerous awards, including the 2005 Emmy Award for

2

Outstanding Achievement in News and Documentary Research. *Id.* ¶ 20. To support its

publication activities, the Archive relies heavily on the FOIA, using it to obtain, analyze, and

disseminate government documents and information pertaining to issues of major pubic concern.

*Id.* ¶¶ 2, 9, 19, 48

      To enhance public access to government information, the FOIA, as amended by the

Freedom of Information Reform Act of 1986 ("FIRA"),[2] limits the fees agencies may impose

upon requesters to recover the costs of processing document requests. In particular, a requester

who qualifies as a "representative of the news media" is exempt from paying the costs of

searching for and reviewing documents for all requests that are not made for commercial use.

5 U.S.C. § 552(a)(4)(A)(ii). Such a requester may be charged only fees for record duplication.

*Id.*

      Applying these provisions, the D.C. Circuit in 1989 held that "the [FIRA], read in light of

the legislative history, is clear: Congress intended that an organization like the Archive qualify

as a representative of the news media," and, therefore, is entitled to preferential fee treatment for

its FOIA requests. *Nat'l Security Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1383 (D.C.

Cir. 1989), *cert. denied*, 494 U.S. 1029 (1990) ("*Archive v. DOD*"). Thus, for purposes of non-

commercial requests, federal agencies could impose on the Archive "only the cost of duplicating

the records [they] release[]." *Id.*

      The Court of Appeals rested its decision not on the nature of the Archive's FOIA

requests, but on the Archive's publication and dissemination activities. A "representative of the

news media" was "in essence, a person or entity that gathers information of potential interest to a

segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and

---

[2]      Pub. L. No. 99-570, § 1801-1804, 100 Stat. 3207-48, 48-50.

distributes that work to an audience." *Id.* at 1387.   At the time of the court's decision, the

Archive had previously published one book and had a "firm intention" to publish "document

sets" in the future.  *Id*. at 1386.[3]  Based on these activities, the Court concluded that "[a]bsent . . .

a change in circumstances, . . . the Archive is entitled to preferred status." *Id.* at 1388.

The following year, this Court applied the D.C. Circuit's holding to a suit the Archive

had filed against the CIA, holding that the Archive was a "representative of the news media" for

purposes of FOIA requests it had submitted to the CIA.  *Nat'l Security Archive v. CIA*, Civ. No.

88-0501 (D.D.C. Jan. 30, 1990) ("1990 Memorandum and Order") (Compl. Ex. 1).  This Court

"ORDERED that defendant [CIA] must treat plaintiff as a 'representative of the news media'

within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii)(II)."  1990 Order at 2 (Compl. Ex. 1).

For fifteen years, the CIA abided by that order, processing  hundreds of FOIA requests

from the Archive without charging search or review fees or otherwise questioning the Archive's

status as a "representative of the news media."  Compl. ¶ 19.  In October 2005, the CIA's

compliance with the *Archive* decisions ended.  *See id*. ¶¶ 27-44.  Rather than presumptively

treating the Archive as a "representative of the news media" for all non-commercial FOIA

requests, as the CIA had routinely done, the CIA adopted a policy and practice of requiring the

Archive to prove its news media status for individual requests, by satisfying the CIA that the

*subject matter* of these requests was "newsworthy." *Id.* ¶ 28.  Specifically, in connection with 42

separate requests, the CIA, citing its regulation, 32 C.F.R. § 1900.02(h)(3), demanded that the

---

[3]      Each such document set was to "be devoted to a particular topic of current interest,
including current United States policies toward various countries and regions," and would be
compiled from a variety of sources, including documents obtained through FOIA requests.
*Archive v. DOD*, 880 F.2d at 1386.  The court held that the Archive's intention to sell its
document sets did not constitute a "commercial use" for purposes of preferred fee status under
the FOIA. *Id.* at 1387-88.

Archive show how the requested records (1) "concern current events"; (2) "interest the general public"; and (3) "enhance the public understanding of the operations or activities of the U.S. Government." *Id.* ¶ 28 & Ex. 4. The CIA also asked how the Archive planned to disseminate the information to a significant element of the public at minimal cost. *See id.*

In a series of letters, the Archive vehemently objected to the CIA's new regime as contrary to the D.C. Circuit's decision in *Archive v. DOD.*[4] The Archive also explained in considerable detail how each of the 42 requests satisfied the CIA's criteria, while at the same time making clear that the Archive disagreed with those criteria. *Id.* These protests and explanations were uniformly rejected by the CIA. In cryptic letters responding to the Archive's submissions, the CIA informed the Archive that each of the requests at issue failed to meet the definition of "news" set forth in the CIA's regulations, 32 C.F.R. § 1900.02(h)(3), and, therefore, the CIA refused to recognize the Archive's news media status for these requests. *Id.* ¶ 30 & Exs. 9, 10, 11, 12, 13.[5]

The Archive attempted administratively to appeal the CIA's determinations, again emphasizing the D.C. Circuit's binding precedent. *Id.* ¶ 38 & Ex. 16. While this attempted appeal was pending, in a further effort to persuade the CIA that its new policy was illegal, the Archive sought and obtained a meeting with the agency. The meeting, held January 5, 2006, was attended by several CIA officials, including Edmund Cohen, Director of Information

---

[4]    The requests at issue originally had been submitted by the Archive to the CIA between August 10, 2005 and March 7, 2006. *See* Compl. ¶ 27 & Ex. 2. The Archive set forth its objections to the CIA's demands with respect to these requests in letters dated November 10 and December 22, 2005, and January 27 and May 8, 2006. *Id.* ¶ 29 & Exs. 5, 6, 7, 8. In these letters, the Archive described the dramatic expansion of its publication and dissemination activities since the D.C. Circuit's decision in *Archive v. DOD*.

[5]    The CIA has never contended that any of the 42 requests were made for commercial use. *Id.* ¶ 30.

Management Services; Herbert Briick, Vice Chairman, Agency Release Panel; and Alan Tate,

Information Review and Release Manager. *See* Decl. of Kristin Adair ("Adair Decl.") ¶ 2.[6]  At

the meeting, the Archive reiterated its position that the CIA could not, consistent with the statute

and *Archive v. DOD*, refuse to recognize the Archive's news media status based on the agency's

review of the subject matters of individual requests. *See id*. ¶ 3.  The Archive also pointed out

that the CIA previously had recognized the Archive as a "representative of the news media" for

numerous prior requests, and that the CIA's decision to start questioning the Archive's fee status

in October 2005 was a stark departure from prior practice. *See id.*  Although at the conclusion of

the meeting the CIA told the Archive that it would take the Archive's position under advisement,

*see id.* ¶ 4, later the CIA informed the Archive that the agency stood by its adverse

determinations against the Archive, *see* Compl. ¶¶ 30, 33, 39 & Exs. 10, 11, 17.  Indeed, the CIA

told the Archive that it had no right to an administrative appeal of those determinations, and that

its options for recourse were limited to "seek[ing] judicial review."  Compl. ¶ 39 & Ex. 17.

On June 14, 2006, the Archive filed this lawsuit alleging that the CIA had violated — and

was continuing to violate — the FOIA and the APA by refusing to recognize the Archive as a

"representative of the news media" in connection with 43 individual requests;[7] adopting a policy

and practice of determining news media status by evaluating the "newsworthiness" of each

individual FOIA request; and in promulgating and relying on its regulation, 32 C.F.R.

---

[6]     The Court may consider materials outside the pleadings in deciding whether to grant a
motion to dismiss for lack of jurisdiction. *See Jerome Stevens Pharmaceuticals, Inc. v. FDA*,
402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

[7]     In addition to the 42 requests described above, in March 2006 the CIA retroactively
denied the Archive's news media status in connection with a request that had originally been
accorded news media status when it was submitted in 1999.  Compl. ¶ 33 & Exs. 14, 15.

6

§ 1900.02(h)(3), to issue adverse determinations against the Archive.  Compl. ¶¶ 5-6, 35-36, 46-

47, 52, 55-56, 58-59.  In its Prayer for Relief, the Archive seeks, among other relief, a judgment:

(1)    declaring that the Archive qualifies as a "representative of the news media" for the requests at issue and for all future requests submitted for a non-commercial purpose to the CIA;

(2)    enjoining and ordering Defendants to treat the Archive as a "representative of the news media";

(3)    declaring that Defendants acted arbitrarily and capriciously and contrary to law; and

(4)    declaring invalid the pertinent regulations, including but not limited to 32 C.F.R. § 1900.02(h)(3), and enjoining Defendants from relying on these regulations in the future.

*Id.* at 23-24.  The Archive also sought an award of costs and reasonable attorneys fees.  *Id.* at 24.

On September 8, 2006, the Archive moved for summary judgment on all claims in the

Complaint.  That evening, having received two extensions of time in which to answer or

otherwise respond to the Archive's Complaint, the CIA filed the instant motion to dismiss for

lack of jurisdiction, arguing that the case has become moot as the result of Mr. Tarasiuk's letter

sent late that same day.[8]  In his letter, Mr. Tarasiuk informed the Archive that, "[u]pon

reconsideration of your requests, we withdraw our previous determination to place your requests

in the 'all other' fee category."[9]  Tarasiuk Letter at 1.  Mr. Tarasiuk further stated that, "[w]e

---

[8]    Although the CIA describes the letter as a "Decision Letter from Scott A. Koch," Defs.' Mem. at 2, the letter is in fact signed by Mr. Tarasiuk.  The Archive is unaware whether there has been any change in Defendant Koch's tenure as Information and Privacy Coordinator of the CIA, but notes that any successor to Defendant Koch is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d)(1), and that such a substitution does not abate the Archive's action, *id.*

[9]    CIA regulations provide that, with respect to FOIA requests from requesters who are not "commercial use requesters," "educational and non-commercial scientific requesters," or "'representatives of the news media' requesters," the requests fall into the "All other" fee

recognize the Archive's status as a 'representative of the news media' under 5 U.S.C. §

552(a)(4)(A)(ii)(II), for the 43 FOIA requests" at issue, and "for purposes of assessing FOIA

processing fees for all future requests the Archive submits for a non-commercial purpose *in*

*compliance with 5 U.S.C. § 552(a)(4)(A)(ii)(II)*," and "so long as there is *no change* in the nature

of the Archive's information-gathering, publishing, and dissemination activities, *compared to the*

*present*, as to effect a change in these activities." *Id.* at 1-2 (emphasis added). Mr. Tarasiuk also

represented that the CIA would "promptly publish in the Federal Register a notice of proposed

rulemaking and a proposed rule defining 'representative of the news media' to comport with

OMB regulations." *Id.* at 2. However, Mr. Tarasiuk did not state that the CIA would refrain

from relying on its current regulation, 32 C.F.R. § 1900.02(h)(3), nor did he specify the content

of the CIA's new proposed rule or what it would mean for this proposed rule to "comport with"

the OMB regulation, nor did he offer any assurance that any final rule would resemble whatever

the CIA proposed.

 For the reasons that follow, the CIA's motion should be denied.

**ARGUMENT**

**I. Standard of Review**

 In reviewing the CIA's motion to dismiss for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), this Court must accept the Complaint's well-pled

factual allegations as true and draw all reasonable inferences in the Archive's favor. *Thompson*

*v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000); *Wilbur v. CIA*, 273 F. Supp. 2d 119,

122 (D.D.C. 2003), *aff'd*, 355 F.3d 675 (D.C. Cir. 2004). The Court may decide the motion on

---

category. *See* 32 C.F.R. § 1900.13(i). Requests in this category are subject to charges for
searching for and reproducing responsive records. *See id.*

the Complaint standing alone, or may consider the Complaint supplemented by undisputed facts

evidenced in the record. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir.

1992).[10] While the Court may also rest its decision on the Court's resolution of disputed facts,

*id.*, there are no material facts in dispute in this case. Where a defendant asserts lack of

jurisdiction at the pleading stage, "general factual allegations of injury resulting from the

defendant's conduct may suffice, for on a motion to dismiss [the court] presum[es] that general

allegations embrace those specific facts that are necessary to support the claim." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks

omitted).[11]

## II.    The CIA's Assertion That It Is Voluntarily Ceasing Certain Illegal Conduct Does Not Moot This Action.

A defendant's voluntary cessation of allegedly unlawful conduct moots a case "only if it

is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to

recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (*per curiam*) (quoting

*United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (emphasis

added by *Adarand* Court)). Absent such a rule, a defendant could gain "a powerful weapon

against public law enforcement," evading judicial review while remaining "free to return to his

---

[10]    *See also Jerome Stevens Pharmaceuticals*, 402 F.3d at 1253-54 ("While the district court may consider materials outside the pleadings in deciding whether to grant a motion for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true." (internal quotation marks and citations omitted)).

[11]    The CIA purports also to seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, Defs.' Mot. to Dismiss, and recites the legal standard applicable to such a claim, Defs.' Mem. at 4. Nonetheless, the motion to dismiss is plainly grounded only in Rule 12(b)(1). The sole argument advanced in support of the motion is mootness; the CIA does not attempt to show that the Archive has failed to state a claim, nor could it do so. *See generally Haase v. Sessions*, 835 F.2d 902, 905-07 (D.C. Cir. 1987) (explaining distinction between and proper use of Rules 12(b)(1) and 12(b)(6)).

old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). To prevent defendants from "shelter[ing] their actions from judicial scrutiny simply by claiming that they will stop the challenged conduct," courts will not dismiss a case as moot "unless '(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). This standard is a "stringent" one, and the "heavy burden" of meeting it lies with the party asserting mootness. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).[12]

It is equally well settled that the mootness of one claim in a suit does not deprive the Court of jurisdiction over the remaining, live claims in the case. *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003) (citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S.115, 121-22 (1974)); *see also In re Subpoena Duces Tecum Issued to Commodity Futures Trading*

---

[12]     The cases discussed at page eight of the CIA's memorandum are uniformly irrelevant to the mootness issue in this case. Those cases involved challenges to various agencies' failures to initiate rulemaking or to issue a decision. The cases became moot once the agencies took the desired action. *See Action on Smoking & Health v. Dep't of Labor*, 28 F.3d 162, 163-64 (D.C. Cir. 1994) (initiation of rulemaking mooted suit for unreasonable delay in rulemaking); *Shoreham-Wading River Cent. Sch. Dist. v. U.S. Nuclear Regulatory Comm'n*, 931 F.2d 102, 104 (D.C. Cir. 1991) (issuance of decision mooted claim for failure to issue decision); *In re Int'l Union*, 231 F.3d 51, 54 (D.C. Cir. 2000) (issuance of notice of proposed rulemaking mooted mandamus action for unreasonable delay in initiating rulemaking); *In re Arcadian Corp.*, 1995 WL 626501, *1 (D.C. Cir. Oct. 4, 1995) (issuance of decision mooted mandamus action seeking issuance of decision); *Associated Builders & Contractors, Inc. v. Herman*, 976 F. Supp. 1, 8 (D.D.C. 1997) (issuance of notice of proposed rulemaking and final rule mooted challenge to delay in rulemaking). Here, the CIA has not simply failed to take action on the Archive's FOIA requests. Rather, the CIA took action (action which violates the FOIA and the APA) and then purported to change its mind in certain respects and to commit to future steps that may or may not remedy its illegal action. Whether that purported change of course moots the suit is therefore governed by the "voluntary cessation" standard, not the analysis in the cases cited by the CIA governing a suit to compel agency action.

*Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006) (court's ability to offer partial remedy is sufficient to prevent mootness (citing *Church of Scientology v. United States*, 506 U.S. 9, 13 (1992))). Of particular relevance here, "if a plaintiff challenges both a specific agency action and the *policy* that underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994) (citing *Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988); *Better Gov't Ass'n v. Dept. of State*, 780 F.2d 86 (D.C. Cir. 1986); *Super Tire*, 416 U.S. 115); *see also Byrd v. U.S. EPA*, 174 F.3d 239, 244-45 (D.C. Cir. 1999). Applying these principles, Mr. Tarasiuk's September 8 letter has not mooted the Archive's suit.

The D.C. Circuit's decision in *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988), considering an assertion of mootness in a FOIA case, is squarely on point here. In *Payne*, the plaintiff had regularly obtained records through the FOIA, including copies of bid abstracts from the Air Force Logistics Command ("AFLC"). Although the AFLC had routinely released bid abstracts to the plaintiff since 1970, in 1985 certain AFLC officers abruptly began to refuse to release requested documents, justifying their refusal by reference to two FOIA exemptions. *Id.* at 488. On the plaintiff's administrative appeal, the Secretary of the Air Force found the FOIA exemptions inapplicable and ordered the requested bid abstracts released, but the AFLC officers continued to withhold the requested documents. *Id.* at 489-90. The plaintiff brought suit for declaratory and injunctive relief, and while the suit was pending, the AFLC voluntarily changed course and began honoring the plaintiff's requests. *Id.* at 490. In an effort to demonstrate the mootness of the case, the Air Force noted that during the year preceding the Court of Appeals' resolution of the case, the AFLC had denied none of the plaintiff's requests,

11

and an Air Force attorney submitted an affidavit promising that the plaintiff's requests would not

be denied in the future. *Id.*

Although the AFLC had stopped refusing the plaintiff's requests, and although it

promised to grant the plaintiff's future requests, the D.C. Circuit held that the case was not moot.

*Id.* The court reasoned:

> [E]ven though a party may have obtained relief as to a *specific request* under the
> FOIA, this will not moot a claim that an agency *policy or practice* will impair the
> party's lawful access to information in the future.  In this case, Payne has sought
> to show – and the Air Force has conceded – that the appellees are following an
> 'impermissible practice' in evaluating FOIA requests, and that it will suffer
> 'continuing injury due to this practice.'  It is clear that Payne's challenge is not
> moot.
>
> . . . .
>
> So long as an agency's refusal to supply information evidences a policy or
> practice of delayed disclosure *or some other failure to abide by the terms of the
> FOIA*, and not merely isolated mistakes by agency officials, a party's challenge to
> the policy or practice cannot be mooted by the release of specific documents that
> prompted the suit.

*Id.* at 491 (latter emphasis added).  The court went on to find that the Air Force's promise to

desist from the challenged policy or practice did not provide sufficient assurance under the

"voluntary cessation" standard that the alleged violation would not recur, *id.* at 491-92, and

further held that the plaintiff's challenge to the underlying policy was ripe, *id.* at 492-94.  The

court concluded that the plaintiff was entitled to declaratory relief and remanded for the District

Court to consider entry of injunctive relief.  *Id.* at 494-95.[13]

---

[13]     The D.C. Circuit has applied the same principles to reach similar results in other cases.
*See Byrd v. U.S. EPA*, 174 F.3d at 244-45 (EPA's release of documents requested under Federal
Advisory Committee Act ("FACA") did not moot case where plaintiff argued that EPA's
underlying policies were inconsistent with FACA); *City of Houston*, 24 F.3d at 1429 ("[I]f a
plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding
an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to
bring such a forward-looking challenge and the request for declaratory relief is ripe."); *Better*

*Payne* disposes of the CIA's assertion of mootness in this case. As in *Payne*, the Archive's FOIA suit squarely challenges not only the CIA's actions in connection with 43 specific FOIA requests, but also the CIA's continuing "policy and practice" of determining fees applicable to the Archive's FOIA requests based on the subject matter of each request, and, consequently — in flagrant disregard of binding circuit precedent and a court order specifically directed to the CIA — refusing to accord news media status to the Archive based on its publication activities.[14] Accordingly, the Archive seeks, among other relief, a broad declaration that the Archive qualifies as a "representative of the news media" for purposes of FOIA fees for all non-commercial requests, an order prospectively enjoining the CIA to treat the Archive as a "representative of the news media," and an order declaring the CIA's FOIA fee policy, as set forth in 32 C.F.R. § 1900.02(h)(3), unlawful and enjoining the CIA from relying on that regulation. Compl. at 23-24; *supra* at 6. The CIA's apparent capitulation with respect to the 43 specific requests that prompted this action does not deprive this Court of jurisdiction to determine whether the CIA's FOIA policies must be declared unlawful and its FOIA regulation vacated or whether the Archive is entitled to an enforceable decree that the CIA must treat the Archive as a "representative of the news media" for purposes of all future FOIA requests not made for a commercial purpose. The Archive seeks additional relief beyond what the CIA has

---

*Gov't Ass'n*, 780 F.2d at 90-92 (where plaintiffs challenged agencies' refusals to waive FOIA fees in specific cases and challenged facial validity of agencies' guidelines for awarding fee waivers, agencies' belated decisions to waive fees did not moot case).

[14]    Compl. ¶ 2 ("Defendants' illegal policy and practice of charging the Archive search fees in connection with its requests is directly contrary to the [*Archive* decisions]."); *id.* ¶ 36 ("The CIA has maintained and implemented an illegal policy and practice of refusing to treat the Archive as a representative of the news media, and refusing to process the Archive's FOIA requests until the Archive agrees to pay search costs."); *id.* ¶ 46 ("Defendant CIA has now adopted a policy and practice of denying the Archive the preferential fee treatment to which it is entitled under the FOIA."); *see also id.* ¶¶ 5-6, 56, 58.

proffered, relief that this Court has jurisdiction to award and should award based on the merits of the Archive's claims.

Although Mr. Tarasiuk's September 8 letter purports to identify other steps the agency will take with respect to the handling of the Archive's requests and the challenged regulation, in proffering this partial relief the CIA falls far short of meeting its "heavy burden" of showing that it is "absolutely clear" that its unlawful refusal to recognize the Archive's news media status will not recur. *See Adarand*, 528 U.S. at 222; *Friends of the Earth*, 528 U.S. at 189. Even assuming that the CIA through a post-complaint *letter* unilaterally could short-circuit the Archive's legal challenge to its policies, which it cannot, the relief purportedly proffered in the letter is inadequate on its face. With respect to the CIA's future conduct toward the Archive, Mr. Tarasiuk states:

> We recognize the Archive as a 'representative of the news media' for purposes of assessing FOIA processing fees for all future requests the Archive submits for a non-commercial purpose *in compliance with 5 U.S.C. § 552(a)(4)(A)(ii)(II)*, and in accordance with [*Archive v. DOD*], . . . *so long as there is no change in the nature of the Archive's information-gathering, publishing, and dissemination activities, compared to the present, as to effect a change in these activities.*

Tarasiuk Letter at 1-2 (emphasis added). Thus, Mr. Tarasiuk qualifies his pledge by asserting that the CIA will treat the Archive as a "representative of the news media" only if *the agency* determines that the Archive's requests are "in compliance with 5 U.S.C. § 552(a)(4)(A)(ii)(II)."[15] But the very point of this lawsuit is to resolve (for yet a third time) that, given the Archive's publication activities and so long as the FOIA requests it submits to the CIA are not for a commercial purpose, the CIA is *required* to treat the Archive as a "representative of the news

---

[15]     The government in its brief took a similar tack, characterizing the Tarasiuk Letter as an acknowledgment that the Archive "is entitled to representative of the news media status for future requests, *so long as such requests comply with the statute.*" Defs.' Mem. at 7 n.2 (emphasis added).

media," and the CIA simply has no further role in determining whether the Archive's requests are "in compliance with" the statute. By overtly seeking to retain discretion on this issue without judicial oversight, the CIA widens the possibility that it will once again depart from the teachings of *Archive v. DOD*, and perpetuate an illegal regime of scrutinizing the subject matters of individual requests for the purpose of determining preferential fee treatment under section 552(a)(4)(A)(ii)(II). Under *Payne*, the Archive is entitled to a court order foreclosing the possibility of such a recurrence.

Mr. Tarasiuk's "promise" on behalf of the CIA is further undermined by his insistence that there be "*no change* in the nature of the Archive's information-gathering, publishing, and dissemination activities, *compared to the present*." Tarasiuk Letter at 2 (emphasis added). Again, this allows the CIA far too much leeway, and, indeed, arguably holds the Archive to a higher standard than that articulated by the D.C. Circuit in *Archive v. DOD*. The Archive has dramatically expanded its publication and dissemination activities since the *Archive* decisions, with over 40 books, 26 document sets, 190 electronic books, and numerous other articles and newsletters to its credit. *See* Compl. ¶¶ 20-24 & Exs. 5, 6, 7. In 1989, the D.C. Circuit found that the Archive "clearly" qualified as a "representative of the news media" when it had published only one book and had a "firm intention" to publish document sets. *Archive v. DOD*, 880 F.2d at 1386. If, in the future, the Archive chooses to focus on different publishing media, moderately slows the pace of its activities, or chooses different research subjects, the CIA should not be heard to suggest that the Archive is no longer a "representative of the news media" because its activities have "changed."

Finally, regardless of the nature of the commitments that Mr. Tarasiuk set forth in his letter, such a proffer, made after the Archive initiated this lawsuit (indeed, on the same day that

the Archive filed its motion for summary judgment[16]), such a letter cannot moot the Archive's request for judicial clarification of the Archive's rights with respect to an allegedly illegal agency policy and practice. Indeed, the court in *Payne* concluded that an *affidavit* from an Air Force major which promised that the Air Force would reform its future conduct "offered only modest assurance . . . that the contested practice will not be reinstated." *Payne*, 837 F.2d at 492. Here, Mr. Tarasiuk's letter — which lacks the formalities of an affidavit and is not independently enforceable against any of the defendants, including the CIA — offers even less assurance that the CIA will not "return to [its] old ways," *W.T. Grant*, 345 U.S. at 632. Given the CIA's refusal for nearly a year to accord the Archive the status to which it is legally entitled under the FOIA — and given that the CIA adhered to this view even in the face of the Archive's repeated remonstrations, binding precedent of the D.C. Circuit, and an order of this Court directed specifically at the CIA — an agency letter could not be a substitute for a court order proscribing the agency's illegal conduct. *See Payne*, 837 F.2d at 492 (holding that the "weak assurance" provided by an attorney's affidavit promising that the contested practice would not recur, "coupled with the history of stubborn refusals" by AFLC officers to honor the plaintiff's FOIA requests, "even in the face of instructions from the Secretary of the Air Force," did not meet the "'heavy burden' of showing that 'there is no reasonable expectation that the wrong will be repeated'" (citation omitted)).

As to the challenged CIA regulation, Mr. Tarasiuk's statement that the CIA "will initiate a change to [its] regulations respecting the definition of 'representative of the news media,'" and

---

[16]    Through prior correspondence and telephone conversations among counsel dating back at least to August 16, 2006, the Archive had made clear to the CIA that the Archive was preparing to file a motion for summary judgment on September 8. Indeed, as of July 17, 2006, the parties had agreed on a proposed briefing schedule for that motion. *See* Defendants' Consent Motion For Enlargement of Time (filed July 17, 2006) (Docket No. 9).

16

propose a new rule that "comports with" the regulation promulgated by the OMB, Tarasiuk Letter at 2, similarly fails to provide the Archive with complete relief or any assurance that the unlawful policy will not continue. As an initial matter, the Archive has asked this Court to declare the existing regulation unlawful and enter an injunction forbidding the CIA from relying on the regulation in denying any future FOIA requests. Compl. at 23-24. No matter how "promptly" the CIA initiates its promised rulemaking, Tarasiuk Letter at 2, the existing regulation will remain in force under the CIA's proposal, and the CIA will remain free to rely on it until such time as the CIA adopts a new final rule. This is far different from an order declaring the regulation unlawful and immediately prohibiting its enforcement. Moreover, Mr. Tarasiuk's vague commitment to propose a new rule that "comport[s] with" the OMB regulation is no guarantee that even the proposed rule — much less any final rule that might ultimately emerge — will not replicate any of the features that make the CIA's present policy unlawful under the FOIA. The Archive's challenge to the CIA's unlawful FOIA regulation thus remains a live controversy. *See Super Tire*, 416 U.S. at 121-22 (challenge to underlying policy remained live even where challenge to specific applications of that policy had become moot); *Payne*, 837 F.2d at 491 (same); *Byrd*, 174 F.3d at 244-45 (same); *City of Houston*, 24 F.3d at 1429 (same); *Better Gov't Ass'n*, 780 F.2d at 90-92 (same).[17]

The CIA's assertion that its conditional agreement to recognize the Archive as a "representative of the news media" strips the Archive of standing to challenge the CIA's FOIA

---

[17]    Indeed, the CIA website providing guidance to the public regarding the agency's FOIA procedures continues to track the language from the illegal regulation. The website identifies the fee category of "U.S. News Media," which is defined as "Representatives of US newspapers, television stations, radio stations, and freelancers (if publishing through one of these news organizations) *disseminating current events of interest to the general public to enhance its understanding of the operation or activities of the US Government*." http:/www.foia.cia.gov/fees.asp (emphasis added) (last visited September 21, 2006).

regulation, Defs.' Mem. at 7 n.2, is also without merit.  Standing is assessed at the time a lawsuit

is commenced, *Friends of the Earth*, 528 U.S. at 180; *21st Century Telesis Joint Venture v. FCC*,

318 F.3d 192, 198 (D.C. Cir. 2003), and there is no doubt the Archive had standing when it filed

its Complaint.  The CIA's unlawful actions directly harmed the Archive in a number of ways.  In

particular, the CIA wrongfully denied the Archive's right to preferred fee treatment for 42 FOIA

requests and reversed its previous grant of preferred treatment for an additional request.  Compl.

¶¶ 5, 28-34.  Additionally, the CIA's improper demands that the Archive prove the

"newsworthiness" of each request increased the expense and burden to the Archive of making

these requests.  And the CIA's refusal to process any of the Archive's requests until the Archive

justified those requests and agreed to pay the demanded fees substantially delayed the processing

of the requests.  *Id.* ¶¶ 2, 28-30, 37, 40-44.  These adverse actions were based on the challenged

regulation and the CIA's policy and practice of determining FOIA fees based on the agency's

assessment of the newsworthiness of each request.  *Id.* ¶¶ 2, 5, 35-37, 46-48, 51, 55-59.  The

Archive thus clearly suffered an actual injury-in-fact as a result of the CIA's unlawful actions.

*See Lujan*, 504 U.S. at 561-62 (where "plaintiff is himself an object of the action (or foregone

action) at issue . . . . there is ordinarily little question that the action or inaction has caused him

injury, and that a judgment preventing or requiring the action will redress it"); *Friends of the*

*Earth*, 528 U.S. at 184-85 (where defendant's alleged unlawful activity is ongoing when the

complaint is filed, and the conduct causes harm to the plaintiff, the injury-in-fact requirement is

satisfied).

    Furthermore, given the CIA's repeated refusals to reconsider its actions and policy, even

after the Archive referred it to the D.C. Circuit's holding in *Archive v. DOD*, the Archive

reasonably apprehended that the CIA would continue to apply the contested regulation to reach

18

adverse fee determinations for the Archive's future FOIA requests.  The Archive's undisputed

allegations (1) that the CIA had adopted a policy and practice, based on the challenged

regulation, of assessing processing fees in violation of the FOIA, (2) that this policy and practice

was continuous and ongoing at the time of the Complaint, and (3) that it was harming the

Archive's rights of access to information under the FOIA and hindering its publication activities,

*see id*. ¶¶ 2, 36, 46, 48, 56, 58, are more than sufficient to establish the Archive's standing.  *See*

*Friends of the Earth*, 528 U.S. at 184-85; *Independent Community Bankers of Am. v. Bd. of*

*Governors of Fed. Reserve Sys*., 195 F.3d 28, 34 (D.C. Cir. 1999) ("We have frequently said that

a party against whom a rule is applied may, at the time of application, pursue substantive

objections to the rule. . ."); *Byrd*, 174 F.3d at 243 (denial of timely access to information gives

rise to Article III standing).[18]

  In sum, this is not a case in which the parties lack a continuing interest or stake in the

litigation.  *See Friends of the Earth*, 528 U.S. at 191-92.  As the Supreme Court has observed,

---

[18]  It is equally clear that the Archive's challenge to the CIA regulation is ripe for judicial
review, and the CIA does not argue otherwise.  To assess ripeness, a reviewing court must
"evaluate 'both the fitness of the issue for judicial decision and the hardship to the parties of
withholding court consideration,'" balancing the plaintiff's "interest in prompt consideration of
allegedly unlawful agency action against the agency's interest in crystallizing its policy before
that policy is subject to review and the court's interest in avoiding unnecessary adjudication and
in deciding issues in a concrete setting.'"  *City of Houston*, 24 F.3d at 1430-31 (quoting *Abbott
Labs. v. Gardner*, 387 U.S. 136, 149 (1967), and *Eagle-Picher Indus. v. EPA*, 759 F.2d 905, 915
(D.C. Cir. 1985)).  Here, assessing the validity of the CIA's fee regulations under the FOIA is a
"purely legal question[], the understanding of which neither requires nor is facilitated by further
factual development."  *Better Gov't Ass'n*, 780 F.2d at 92.  Moreover, the CIA's policy is
sufficiently definite in form that the Court can review it without guessing as to its meaning.  *See
Payne*, 837 F.2d at 492-93; *cf. City of Houston*, 24 F.3d at 1431 (challenge not ripe where policy
had not taken on a definite, final form).  And while a plaintiff need not demonstrate hardship
where there are no institutional interests favoring postponement of review, *City of Houston*, 24
F.3d at 1431 n.9, the Archive's heavy reliance on the FOIA and its fee provisions to support its
publication activities confers on the Archive a strong interest in prompt adjudication.  *See Payne*,
837 F.2d at 493-94; *Better Gov't Ass'n*, 780 F.2d at 93.

dismissal of a suit on grounds of mootness would be justified "only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand*, 528 U.S. at 224. Here, the Archive has asked for additional and different relief well beyond what the CIA's last minute capitulation either provides or ensures. And whatever "relief" is actually afforded by the Tarasiuk Letter does not "completely and irrevocably eradicat[e]" the effects of the CIA's unlawful treatment of the Archive's FOIA requests, nor does it provide meaningful assurance that the CIA's wrongful conduct will not recur. *Coalition of Airline Pilots*, 370 F.3d at 1189. To the contrary, all the Letter provides is the limited and uncertain relief to which *the CIA* has concluded the Archive is "entitled." Defs.' Mem. at 1. But the CIA cannot render this case moot by determining for itself the merits of the issues, awarding the Archive whatever "relief" it thinks appropriate, and declaring its actions and policies immune from judicial review. These questions are for this Court to decide, and they continue to present a live case or controversy within this Court's jurisdiction.

## CONCLUSION

For these reasons, the Defendants' Motion To Dismiss should be denied.

Respectfully submitted,

*David S. Mendel*

Patrick Carome (D.C. Bar No. 385676)
David S. Mendel (D.C. Bar No. 470796)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
(202) 663-6000 (t)
(202) 663-6363 (f)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037
(202) 994-7000 (t)
(202) 994-7005 (f)

*Counsel for Plaintiff National Security Archive*

September 22, 2006