IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE NATIONAL SECURITY ARCHIVE,<br><br>Plaintiff,<br><br>v.<br><br>THE CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>Defendants. | No. 06cv01080 (GK) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

On September 8, 2006, defendants issued their Decision granting plaintiff representative of the news media status for plaintiff's pending FOIA requests at issue in this lawsuit (the "September 8, 2006 Decision").  See September 8, 2006 Decision, attached as Exhibit A to defendants' motion to dismiss ("Defendants' MTD").  In addition, defendants granted plaintiff representative of the news media status for all future FOIA request, so long as plaintiff's future requests comported with statutory requirements found in the FOIA, as well as the precepts outlined in National Security Archive v. U.S. Department of Defense, 880 F.2d 1381 (D.C. Cir. 1989).  Exhibit A, Defendants' MTD.  Given defendants' September 8, 2006 Decision, no live case or controversy exists, plaintiff's lawsuit is moot, and the Court should dismiss plaintiff's Complaint for lack of subject-matter jurisdiction.  Contrary to the assertions made in plaintiff's opposition, the "voluntary cessation" exception to the mootness doctrine is inapplicable in this case, as there is absolutely no evidence that defendants issued the September 8, 2006 Decision with the intention of evading litigation, and there is no reasonable likelihood of a recurrence of

the challenged conduct. Finally, the Court lacks jurisdiction over plaintiff's prospective attack on defendants' September 8, 2006 Decision as applied to plaintiff's future FOIA requests, as any future injury is purely speculative, and plaintiff's challenge to the Decision is not ripe for review.

**I.      Plaintiff's Suit Respecting its Pending FOIA Requests is Moot.**

Plaintiff does not appear to disagree that its claims with respect to its pending FOIA requests are moot.[1] Indeed, given defendants' September 8, 2006 Decision granting plaintiff representative of the news media status for all of plaintiff's pending FOIA requests, plaintiff would be hard pressed to argue otherwise. See Better Gov't Assoc. v. Dep't of State, et al., 780 F.2d 86, 88 (D.C. Cir. 1986) (noting that where government reversed position and waived the fees in question, plaintiff's "challenges to the guidelines and the regulation as applied to the particular fee waiver requests are indisputably moot"). The September 8, 2006 Decision also noted that plaintiff's pending FOIA requests retained "their original positions in the processing queue." Exhibit A, Defendants' MTD. As such, plaintiff cannot premise standing on any alleged delay, as there is none.

Nor may plaintiff assert standing based on costs and expenses related to litigation. "Art[icle] III standing requires an injury with a nexus to the substantive character of the statue or regulation at issue." Diamond v. Charles, 476 U.S. 54, 70 (1986) ("Any liability for fees is, of course, a consequence of Diamond's decision to intervene . . . . But the mere fact that continued

---

[1] Plaintiff refers disparagingly to defendants' so-called "eleventh-hour proffer of relief," Opposition at 2, and argues that it had standing "at the time of the Complaint." Id. at 19. Regardless, "[e]ven where litigation poses a live controversy when filed, the doctrine [of mootness] requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir.1990) (citation omitted).

adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III"). A litigant "may not allege the drain on its resources from conducting this litigation as injury in fact. This position, which would enable every litigant automatically to create injury in fact by filing a lawsuit, has been expressly rejected by the Supreme Court." Haitian Refugee Ctr. v. Gracey, 809 F.2d 794, 799 n.2 (D.C. Cir. 1987). Likewise, plaintiff may not base standing on expenses occurred in pursuing administrative remedies. Amarillo v. Sullivan, 1992 WL 88035, *5 (D.D.C. 1992) (no cognizable harm in being "forced to seek immediate judicial relief, at great time and expense"); cf. Vencor Nursing Centers, L.P., v. Shalala, 63 F. Supp. 2d 1, 13 (D.D.C. 1999) ("As a matter of law, neither the burden of pursuing administrative appeal nor the burden of prosecuting the instant action can constitute 'irreparable harm'" to plaintiff for purposes of establishing a likelihood of success on the merits in preliminary injunction motion) (citation omitted). Nor may plaintiff seek a declaration from this court that defendants' initial refusals to waive FOIA search fees for plaintiff's pending FOIA requests was unlawful "[as] such a declaration would be an advisory opinion which federal courts may not provide." Better Gov't Assoc., 780 F.2d at 91. Plaintiff's claims respecting its pending FOIA requests are therefore moot.

**II.    Plaintiff's Facial Challenge to 32 C.F.R. § 1900.02(h)(3) is Likewise Moot; Moreover, Plaintiff Lacks Standing to Challenge the Regulation, and Any Such Challenge is Not Ripe.**

Plaintiff contends that its challenge to the facial validity of 32 C.F.R. § 1900.02(h)(3) maintains a live case or controversy between the parties. Plaintiff's Opposition at 17 ("The Archive's challenge to the CIA's unlawful FOIA regulation thus remains a live controversy."). This assertion is incorrect, as plaintiff lacks standing to challenge 32 C.F.R. § 1900.02(h)(3), and

3

any such challenge is, in any event, unripe.  "[T]his circuit's case law provides that if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, *so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe*."  City of Houston, Texas, v. Dep't of Hous. and Urban Develop., 24 F.3d 1421, 1429 (D.C. Cir. 1994) (emphasis added).  Plaintiff's request for declaratory and injunctive relief fails at both steps.

Article III's standing requirement contains three elements.  First, "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and punctuation omitted).  Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  Id. (citation and internal punctuation omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. at 561 (citation and internal punctuation omitted). Defendants' September 8, 2006 Decision granted plaintiff representative of the news media status for all future FOIA requests, irrespective of 32 C.F.R. § 1900.02(h)(3).  See Exhibit A, Defendants' MTD ("We recognize the Archive as a 'representative of the news media' for purposes of assessing FOIA processing fees for all future requests the Archive submits for a non-commercial purpose in compliance with 5 U.S.C. § 552(a)(4)(A)(ii)(II), and in accordance with the Court's decision in National Security Archive v. U.S. Department of Defense, 880 F.2d 1381 (D.C. Cir. 1989), cert. denied, 494 U.S. 1029 (1990).").  Given the September 8, 2006 Decision,

plaintiff lacks standing to mount a challenge against the CIA's regulation, as there is no evidence that it will suffer injury as a result of the regulation.[2] City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (holding a claim for equitable relief is moot "absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again").

Defendants' September 8, 2006 Decision also informed plaintiff that defendants intended to "initiate a change to our regulations respecting the definition of 'representative of the news media,' 3[2] C.F.R. § 1900.02(h)(3). The CIA will promptly publish in the Federal Register a notice of proposed rulemaking and a proposed rule defining 'representative of the news media' to comport with OMB regulations." Exhibit A, Defendants' MTD at 2. Consequently, even if plaintiff somehow had standing to challenge the regulation, any such challenge would not be ripe, given defendants' publicly announced intention to revise the regulation.

The framework for assessing prudential ripeness[3] was established in Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967), in which the Supreme Court provided a two-pronged test that requires a reviewing court to evaluate "both the fitness of the issue for judicial decision and

---

[2] In addition, enjoining the CIA's regulation would have no practical effect because defendants have granted plaintiff representative of the news media status for all future FOIA requests. Plaintiff therefore fails the redressability prong of standing because the remedy it seeks against the CIA regulation would be of nugatory effect. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105-07 (1998).

[3] "Ripeness law overlaps at its borders with Article III requirements of case or controversy." Eagle-Picher Industries v. EPA, 759 F.2d 905, 915 (D.C. Cir. 1985). Plaintiff's remaining attack on 32 C.F.R. § 1900.02(h)(3) – given the lack of actual injury-in-fact – implicates the doctrine in its prudential aspects. In that form, the ripeness inquiry takes into account pragmatic concerns regarding "the institutional capacities of, and the relationship between, courts and agencies." Eagle-Picher Indus., Inc., 759 F.2d at 915.

5

the hardship to the parties of withholding court consideration." This Circuit has explained that the "primary focus" of the ripeness doctrine is to balance "the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." Eagle-Picher Industries v. EPA, 759 F.2d 905, 915 (D.C. Cir. 1985); see also City of Houston, Texas, 24 F.3d at 1431. Pursuant to the "fitness of the issues" prong, the Court first must decide whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review. Better Gov't Assoc., 780 F.2d at 92. Second, the Court determine whether the Court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form. Id. Finally, the Court examines plaintiff's interest in immediate review. Id. In order to outweigh any institutional interests in the deferral of review, plaintiff must demonstrate "hardship," *i.e.*, that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs." Id. (citation omitted).

      Under this standard, plaintiff's challenge to 32 C.F.R. § 1900.02(h)(3) is not ripe. Although an assessment of the regulation involves legal questions, agency action has not taken its final form – the September 8, 2006 Decision expressly indicates that the regulation will be changed. Exhibit A, Defendants' MTD at 2; compare Better Gov't Assoc., 780 F.2d at 93 (finding agency action had taken final form and was ripe for review where "the Government clearly intend[ed] to apply these purportedly objectionable standards to FOIA fee waiver requests in the future," the government had not "suggested that it intend[ed] to take steps to

adopt revised or different regulations" and "no further procedural or substantive evolution [was] expected"). Finally, plaintiff has demonstrated no hardship to it from the challenged regulation. Defendants' September 8, 2006 Decision expressly provides plaintiff with representative of the news media status for future FOIA requests, irrespective of 32 C.F.R. § 1900.02(h)(3). As such, there are no concrete and present injuries to plaintiff stemming from the challenged regulation, and plaintiff's claim is not ripe for review. City of Houston, Texas, 24 F.3d at 1431-32 (finding plaintiff's challenge to HUD regulation unripe for review).

### III.  The Voluntary Cessation Exception to the Mootness Doctrine Does Not Apply in This Case.

Plaintiff argues that its claims are not moot in that the "voluntary cessation" exception to the mootness doctrine applies. Plaintiff contends that its suit "challenges not only the CIA's actions in connection with 43 specific FOIA requests, but also the CIA's continuing 'policy and practice' of determining fees applicable to the Archive's FOIA requests based on the subject matter of each request." Opposition at 13. Plaintiff further argues that defendants' September 8, 2006 Decision granting plaintiff representative of the news media status not only for the 43 pending requests, but also for all future requests, "falls far short of meeting its 'heavy burden' of showing that it is 'absolutely clear' that [defendants'] unlawful refusal to recognize the Archive's news media status will not recur." Opposition at 14 (citation omitted). Plaintiff is wrong. The voluntary cessation exception does not apply in this case, and moreover, there is no reasonable expectation that the challenged conduct will recur.

The voluntary cessation exception to the mootness doctrine is based on the interest of the judiciary in preventing a manipulative defendant from changing its behavior during the course of litigation, only to return to its prior conduct once dismissal on mootness ground is obtained. See,

7

e.g., United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). Courts, however, have been reluctant to ascribe manipulative motives to government actors. This Circuit in particular has expressed great reluctance to apply the underlying assumption of the voluntary cessation exception to the government: "[a]t least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on a likelihood of manipulative purpose." Clarke v. United States, 915 F.2d 699, 705 (D.C. Cir. 1990). Although the coordinate branch discussed in Clarke was Congress, "the courts accord the executive branch the same presumption of legitimate motive as is given the legislative branch." National Black Police Ass'n v. District of Columbia, 108 F.3d 346, 353 (D.C. Cir. 1997).[4]

Even if there were no bar to application of the voluntary cessation doctrine to the government, it should not be applied in the absence of evidence that the cessation is not genuine:

> We do not dispute that [the voluntary cessation exception] is the appropriate standard for cases between private parties, but this is not the view we have taken toward acts of voluntary cessation by government officials. Rather, "[w]hen the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine."

Federation of Advertising Indus. Representatives, Inc., v. City of Chicago, 326 F.3d 924, 929-30 (7th Cir.) (citation omitted), cert. denied, 124 S. Ct. 302 (2003); see also Committee in Solidarity

---

[4] Although courts have applied the voluntary cessation exception sub silentio to federal defendants, no authority in this Circuit expressly disagrees with the Clarke court's distinction between cases brought against the government and those brought against private parties, or its conclusion that the exception does not apply to the government. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 215 n.1 (1995) ("the unexplained silences of [] decisions lack precedential weight").

with People of El Salvador v. Sessions, 929 F.2d 742, 745 (D.C. Cir. 1991) ("it has been the settled practice to accept [] representations [by the government] in determining whether a case presents a live controversy" (internal quotations omitted)).  Hence, the voluntary cessation exception should not be applied in litigation challenging a government action – in this case, the September 8, 2006 Decision – without proof that the government action at issue was taken in bad faith, in order to manufacture a mootness defense and to return to the status quo ante.  Because there is no such evidence of such manipulation in this case, the voluntary cessation exception should not be applied here.

Moreover, even if the voluntary cessation exception were applied here, plaintiff's claims based on the prospective application of 32 C.F.R. § 1900.02(h)(3) are moot because events subsequent to the filing of this litigation make clear that defendants' past practices under that regulation "could not reasonably be expect to recur." Washington Legal Found. v. Henney, 202 F.3d 331, 336 (D.C. Cir. 2000).  While voluntary cessation does not always render a case moot, a case may nevertheless be moot if the alleged wrongful behavior could not reasonably be expected to recur. SEC v. Medical Comm. for Human Rights, 404 U. S. 403, 406 (1972).  If there is no such reasonable likelihood of a recurrence of the challenged conduct, the case is moot. Iron Arrow Honor Soc'y v. Heckler, 464 U. S. 67, 72 (1983); Princeton Univ. v. Schmid, 455 U. S. 100 (1982).  "[T]o keep the case alive in such circumstances, there must be some cognizable danger of recurrent violation, something more than [a] mere possibility . . . ." W. T. Grant Co., 345 U. S. at 633.

Merely because a defendant has the power to reinstate a rescinded policy after the litigation is over is not sufficient reason to apply the exception.  "Rather, there must be evidence

9

indicating that the challenged law likely will be reenacted." National Black Police Ass'n, 108 F.3d at 349.  Thus, in one dispute between two private parties, the D.C. Circuit acknowledged the "voluntary cessation" exception to the mootness rule, but emphasized that "a claim for injunctive relief still requires 'some cognizable danger or recurrent violation, something more than the mere possibility which serves to keep the case alive.'" Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc., 199 F.3d 477, 486 (D.C. Cir. 1999) (citation omitted), judgment reinstated en banc, 211 F.3d 1312 (D.C. Cir.), cert. denied, 531 U.S. 1011 (2000).

The September 8, 2006 Decision demonstrates that defendants' treatment of plaintiff's past and future FOIA requests constitutes the kind of change in policy that was not adopted simply as a subterfuge to avoid litigation and then return to previous practice, but rather as a genuine alteration of government policy that cannot reasonably be expected to be reversed upon the dismissal of this action.  In this respect, plaintiff's reliance on the Court's decision in Payne Enterprises, Inc., v. United States, 837 F.2d 486 (D.C. Cir. 1988), is misplaced.  In Payne, the government "offered only modest assurance, in the form of an affidavit by an Air Force major, that the contested practice will not be reinstated."  837 F.2d at 492.  In contrast, in the instant case, defendants issued a binding agency Decision, with legal effect on both parties.[5]

The September 8, 2006 Decision expressly references controlling Circuit Court precedent

---

[5] "An agency decision is final if the agency publicizes it expecting compliance from those who are regulated." Fund for Animals v. Williams, 391 F. Supp. 2d 132, 138 (D.D.C. 2005).  In other words, an action is final if it creates a binding obligation. Id.; Bennett v. Spear, 520 U.S. 154, 158 (1997) (holding that a Biological Opinion issued by the EPA is a final agency action because it sets out mandatory terms and conditions for the agency to use when implementing a plan); Appalachian Power Co. v. EPA, 208 F.3d 1015, 1021 (D.C. Cir. 2000) (concluding that a document issued by an agency can be a final agency action if the agency acts as if it is controlling in the field, bases enforcement actions on the policies or interpretations in the document, and leads private parties to believe that they must comply with it).

and its intent to comply with both that precedent, and the FOIA. See Exhibit A, Defendants' MTD. As an official Decision that dictates agency practice, defendants are legally obligated to follow it.[6] This official action by defendants contravenes plaintiff's position that the September 8, 2006 Decision was issued as a ruse to hoodwinkle the Court into dismissing the case, only for the Decision to be reversed as soon as dismissal is accomplished. For this reason, even if the voluntary cessation exception were applied here (though it ordinarily only applies to private parties) it could not save plaintiff's claims from being rejected as moot because the record demonstrates that there is no reasonable likelihood of application of the challenged policy to plaintiff's future FOIA requests. See Iron Arrow Honor Soc'y, 464 U. S. at 72 (holding that even if voluntary cessation line of cases applied, the result would be the same since "the University's announcement of its decision to Iron Arrow, the public and the courts" established "'no reasonable likelihood' that the University would later change its mind . . . ."); Montana Shooting Sports Assoc. v. Norton, 355 F. Supp. 2d 19, 21 n.1 (D.D.C. 2004) (voluntary cessation exception does not apply where defendant "rescinded the challenged order and there is no reasonable expectation that the order could have any future effect . . . although plaintiffs assert that the defendants' allegedly illegal conduct could recur, the defendants have only asserted that they reserve the right to take future action that they are legitimately empowered to do using a valid procedure"); American Fed. of Gov't Employers, AFL-CIO v. Brown, 866 F. Supp. 16, 19

---

[6] Plaintiff's appear to argue that because the September 8, 2006 Decision took the form of a letter it is somehow not worthy of consideration by the Court. See Plaintiff's Opposition at 16. This argument ignores the fact that agency decisions routinely take the form of letters. Indeed, the prior (now withdrawn) CIA Decisions denying plaintiff representative of the news media status for its pending FOIA requests took the form of letters. See Plaintiff's MSJ, Exhibits 9-11, 13-14.

(D.D.C. 1994) (holding case to be moot where "[p]laintiffs have presented no evidence that defendants have taken any action that belies the sincerity of their representations that they will not invoke the language of § 7422(b) to hinder arbitration of plaintiffs' grievance").

### IV. Plaintiff Lacks Standing to Challenge Prospective Application of the September 8, 2006 Decision and Such Challenge is Not Ripe.

On the one hand plaintiff argues that the voluntary cessation exception to mootness applies, because plaintiff allegedly has no assurance (notwithstanding the September 8, 2006 Decision) that defendants will not resume application of the challenged regulation, 32 C.F.R. § 1900.02(h)(3), to plaintiff's future FOIA requests. Opposition at 9-13. As discussed above, this argument has no merit. On the other hand, plaintiff also appears to argue in the alternative that even if defendants' September 8, 2006 Decision is to be taken at face value, the Decision's express language granting plaintiff "'representative of the news media' for purposes of assessing FOIA processing fees for all future requests the Archive submits for a non-commercial purpose in compliance with 5 U.S.C. § 552(a)(4)(A)(ii)(II), and in accordance with the Court's decision in National Security Archive v. U.S. Department of Defense, 880 F.2d 1381 (D.C. Cir. 1989)," see Exhibit A, Defendants' MTD, somehow still "widens the possibility that [the CIA] will once again depart from the teachings of Archive v. DOD," and that the Court should therefore issue a "court order foreclosing the possibility of such a recurrence." Plaintiff's Opposition at 15.[7] Any

---

[7] Moreover, plaintiff's insistence that "the CIA is *required* to treat the Archive as a 'representative of the news media,' and [that] the CIA simply has no further role in determining whether the Archive's requests are 'in compliance with' the statute," Plaintiff's Opposition at 15, is incorrect. Indeed, NSA v. DOD specifically noted that "our conclusion [that NSA is entitled to representative of the news media status] is not chiseled in granite." 880 F.2d at 1388. The Court further noted that "[i]f the Archive's intention to publish works derived from the documents it requests does not pan out, it will be open to DoD to argue that the Archive is not longer a representative of the news media." Id.

such future injury is entirely based on speculation and conjecture, and plaintiff therefore lacks standing to mount a challenge to the prospective application of defendants' September 8, 2006 Decision.  Lujan, 504 U.S. at 560 (for an injury to confer standing it must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (internal quotation marks and citations omitted).

Likewise, any challenge to defendants' September 8, 2006 Decision and its application to plaintiff's future FOIA requests is not ripe.  As noted above, supra Part II, unripe controversies are not justiciable in federal court.  National Park Hospitality Assoc. v. United States Dep't of Interior, 538 U.S. 803 (2003).

> Ripeness analysis tests whether a question has sufficiently matured to be amenable to adjudication.  The Supreme Court has explained that when considering whether an issue is ripe for judicial review, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties" of refusing a decision . . . . Further, a claim is unripe if it depends on "contingent future events."

Flynt v. Rumsfeld, 355 F.3d 697, 702 (D.C. Cir. 2004) (citations omitted).

Indeed, plaintiff effectively concedes that its challenge to the future application of the September 8, 2006 Decision is unripe.  Plaintiff's Opposition at 15 (complaining that the September 8, 2006 Decision potentially "allows the CIA far too much leeway [in assessing future FOIA requests], and, indeed, arguably holds the Archive to a higher standard than that articulated in [NSA v. DOD]").  Because plaintiff cannot argue that they have been injured under the September 8, 2006 Decision, plaintiff's challenge to that Decision necessarily relies on contingent future events that cannot be regarded as sufficiently mature to be justiciable.  Thus, in weighing the considerations described by the D.C. Circuit in Better Gov't Assoc., 780 F.2d at 92, the balance tips sharply against plaintiff.  The Court certainly has a considerable interest in

refraining from determining the legality of the implementation of the September 8, 2006 Decision that plaintiff admits has not yet been applied.  Defendants undoubtedly have a strong interest in implementing the September 8, 2006 Decision before the Decision is subjected to legal challenge.  In contrast, plaintiff has no legitimate interest in obtaining a premature judicial interpretation of the Decision before it can even say whether it will be applied in a manner that it considers in violation of law.  For these reasons, plaintiff's challenge to the prospective application of defendants' September 8, 2006 Decision is unripe and should be dismissed.  <u>City of Houston, Texas</u>, 24 F.3d at 1431-32 (finding plaintiff's challenge to HUD regulation unripe for review).

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant defendants' motion to dismiss.

Dated: October 4, 2006                                                       Respectfully submitted,

                                                             PETER D. KEISLER
                                                             Assistant Attorney General

                                                             ELIZABETH J. SHAPIRO
                                                             Assistant Branch Director

                                                             _____/s/_____
                                                             HEATHER R. PHILLIPS
                                                             Trial Attorney
                                                             U.S. Department of Justice
                                                             Civil Division/Federal Programs
                                                             Mail:   P.O. Box 883
                                                                      Washington, D.C.  20044
                                                            Street:  20 Massachusetts Ave., N.W.
                                                                      Room 7330
                                                            Washington, DC  20001
                                                           Ph:     (202) 616-0679
                                                           Fax:    (202) 616-8470
                                                           Email: heather.phillips@usdoj.gov