**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE NATIONAL SECURITY ARCHIVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-CV-1080 (GK) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE
TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY AND
IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Although Defendant Central Intelligence Agency ("CIA") has now issued a final rule

amending regulations pertinent to this lawsuit brought by Plaintiff National Security Archive

("Archive"), that final rule does not support the Defendants' contention that this lawsuit is moot.

Through this action, the Archive has challenged as illegal not only the CIA's written regulations,

but also Defendants' policy and practice of refusing to treat the Archive as a "representative of

the news media" under the processing fee provisions of the Freedom of Information Act

("FOIA"). This policy and practice is illegal because, among other reasons, it flouts binding

precedent of the D.C. Circuit, *see National Security Archive v. U.S. Dep't of Def.*, 880 F.2d 1381

(D.C. Cir. 1989) ("*Archive v. DOD*"), and an Order of this Court that specifically directs the CIA

to "treat [the Archive] as a 'representative of the news media' within the meaning of 5 U.S.C.

§ 552(a)(4)(A)(ii)(II)." Order, *National Security Archive v. CIA*, Civ. No. 88-0501, at 2 (D.D.C.

Jan. 30, 1990) ("*Archive v. CIA*") (Compl. Ex. 1). The CIA's new rule, issued July 18, 2007,

does nothing to assuage concerns that Defendants, absent an additional order from this Court

1

directing them to give the Archive proper treatment under the statute, will not continue their pattern of illegal conduct toward the Archive. Indeed, the grudging tone of the CIA's Federal Register Notice adopting the new rule, in which the CIA defends its prior regime and belittles the Archive's efforts to vindicate its statutory rights through this lawsuit, only heightens these concerns.

## BACKGROUND

On June 14, 2006, the Archive brought this action challenging the CIA's repeated misapplication of the FOIA's fee provisions to requests for records submitted by the Archive to the agency. In its Complaint, the Archive alleged that, in October 2005, contrary to the D.C. Circuit's decision in *Archive v. DOD*, the separate Order of this Court in *Archive v. CIA*, and the CIA's own precedents in handling requests submitted by the Archive, the CIA began systematically refusing to treat the Archive as a "representative of the new media" under 5 U.S.C. § 552(a)(4)(A)(ii). *See* Compl. ¶¶ 4-5. As a result, the CIA began charging the Archive for search fees for FOIA requests that the Archive submitted in furtherance of its publishing activities and not for a commercial use, even though assessment of those fees was and is prohibited by the statute and the binding decisions of the D.C. Circuit and this Court. *See id.* ¶ 5.

In the first two counts of its Complaint, the Archive challenged the legality of the CIA's decisions with respect to at least 43 separate FOIA requests, *e.g.*, *id.* ¶¶ 5, 6, 30, 33, 47, 51, and, more broadly, the CIA's ongoing illegal policy and practice of denying the Archive the fee status to which it is entitled under the FOIA, *e.g.*, *id.* ¶¶ 2, 6, 36, 46, 48, 50, 56. Under that policy and practice, as alleged in the Complaint, the CIA has unlawfully demanded that the Archive justify its fee status separately for each request it submits, and unlawfully analyzed the Archive's entitlement to preferred fee status according to the subject matter of each request, rather than the

2

Archive's activities in gathering and disseminating news. *E.g.*, *id.* ¶¶ 34, 36, 46, 55. The Archive sought an order declaring, in pertinent part, that the CIA's "ongoing policy and practice of refusing to waive search fees for the Archive's FOIA requests" violates the FOIA and the Administrative Procedure Act, *id.* ¶ 6, and enjoining the CIA to treat the Archive as a "representative of the news media" for all future FOIA requests that are not made for a commercial purpose and to refrain from requiring the Archive to pay search fees or to justify its news media status separately for each request. *Id.* at 23 (Prayer for Relief at ¶¶ (1), (2), (3)).

Separately, in the third count of its Complaint, the Archive challenged the CIA's written regulations (adopted in 1997) that purported to implement the FOIA's fee provisions as arbitrary, capricious, an abuse of discretion, and not in accordance with law, *see* Compl. ¶¶ 58-59, and sought an order declaring the regulations invalid and enjoining their enforcement, *id.* at 23-24 (Prayer for Relief at ¶ (4)).[1] These regulations had been in place for approximately eight years before the CIA, in 2005, started its illegal policy and practice of refusing to treat the Archive as a "representative of the news media."

On September 8, 2006, the Archive moved for summary judgment on all claims in the Complaint. Also on September 8, Defendants moved to dismiss the Archive's Complaint for lack of jurisdiction, arguing that the case had become moot as a result of a letter sent by a CIA official to the Archive late that same day. In its letter, the CIA stated that it would withdraw its prior determinations regarding the 43 FOIA requests discussed in the Complaint, and that it would treat the Archive as a "representative of the new media" for the Archive's future requests, so long as the CIA determined that doing so was "in compliance" with the statute and that the

---

[1]    In addition, Count I of the Complaint in part challenged the CIA's written regulation as unlawful under the FOIA. *See* Compl. ¶ 52. However, this component of the Archive's claims under Count I is separate from the Archive's challenge to the CIA's other unlawful conduct under the FOIA. *See id.* ¶¶ 45-51.

Archive had made "no change" in its publishing activity after September 8, 2006. The CIA also represented that it would initiate a rulemaking to revisit its challenged regulations. Both the Archive's motion for summary judgment and the CIA's motion to dismiss are pending.[2]

On July 18, 2007, the CIA issued a final rule amending its regulations implementing FOIA's processing fee provisions. The new rule changes the CIA's written definition of "representative of the news media" to mean "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public." 72 Fed. Reg. 39,315, 39,316 (July 18, 2007). The regulation defines "news" to mean "information that is about current events or that would be of current interest to the public." *Id.* In its statement accompanying the final rule, the CIA insisted that its "previous interpretation of 'news media' fee status" was perfectly "adequa[te] and sufficien[t]," and that the amendment therefore made only a "modest change." *Id.* And it openly acknowledged that the sole purpose of this change was to avoid judicial review of its conduct through what the CIA called "sterile and unproductive technical litigation," *id.*, which can only be understood to refer to this lawsuit. Along similar lines, on July 31, 2007, Defendants filed a "Notice of Supplemental Authority" in this action, advising the Court of the issuance of the final rule and arguing that the new rule supports their motion to dismiss and "forecloses" any claim that Defendants might resume their illegal pattern of conduct. *See* Notice of Supplemental Authority at 1.

---

[2]     The CIA has not identified any material facts in dispute or contested the merits of any of the Archive's claims under the FOIA and the APA. This failure constitutes a default and an adequate basis, by itself, for the Court to grant summary judgment to the Archive. *See Hester v. District of Columbia*, 433 F. Supp. 2d 71, 78 (D.D.C. 2006); *M.R.S. Enters., Inc. v. Sheet Metal Workers' Int'l Ass'n, Local 40*, 429 F. Supp. 2d 72, 78 (D.D.C. 2006); Pls.' Reply to Defs.' Opp. to Pl.'s Mot. For Summ. J. at 3 & n.2 (filed Sept. 29, 2006).

**ARGUMENT**

It is well settled that mootness as to one claim or request for relief in a lawsuit does not render moot the remaining claims or requests for relief in that suit. *See, e.g.*, *Payne Enters., Inc. v. United States*, 837 F.2d 486, 490-492 (D.C. Cir. 1988) (fact that defendant agency had capitulated in plaintiff's FOIA suit, provided requested records, and promised to provide all such records in the future did not moot plaintiff's challenge to agency's underlying policy and practice of illegally withholding records, even though other aspects of the suit might have been moot); *see also* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss ("MTD Opp'n") at 10-13 & n.13 (discussing *Payne* and similar cases). The claims in this case challenge Defendants' illegal pattern of conduct toward the Archive, not just the terms of the CIA's written regulations. *See supra* at 2-3. The new rule neither addresses that illegal conduct nor provides any assurance that Defendants have abandoned the illegal policy and practice challenged in this suit. Therefore, even assuming the revised rule would render moot the Archive's challenge to the CIA's written definition of "representative of the news media," it does not eliminate the controversy concerning the CIA's treatment of the Archive or its illegal policy and practice of denying the Archive news media status and demanding that the Archive justify its status on a case-by-case basis according to the subject matter of each request.

As the Archive showed in its opposition to Defendants' motion to dismiss, Defendants' assertion of mootness with respect to the Archive's challenge to the CIA's illegal policy and practice is subject to analysis under the "voluntary cessation" standard, which holds that a defendant's voluntary cessation of unlawful conduct moots a case "only if it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (*per curiam*) (quoting *United States v.*

*Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (emphasis added by *Adarand* Court)); *see also United States v. Generix Drug Corp.*, 460 U.S. 453, 456 n.6 (1983) ("The possibility that [defendant] may change its mind in the future is sufficient to preclude a finding of mootness."); MTD Opp. at 9-10.  The party asserting mootness bears the "heavy burden" of meeting this "stringent" standard.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).[3]

The basis for Defendants' motion to dismiss was a last-minute letter that a CIA official sent to the Archive on the day the Archive moved for summary judgment, which purported to recognize the Archive's status as a "representative of the news media" for pending and (subject to conditions) future requests.  *See* Letter from A. Tarasiuk, Chief Information Officer, CIA, to M. Fuchs, General Counsel, Archive (Sept. 8, 2006) ("Tarasiuk Letter") (Ex. A to Defs.' Mem. in Supp. of Mot. to Dismiss).  But, as the Archive has demonstrated, the Tarasiuk Letter did not come close to satisfying Defendants' "heavy burden" of showing that the CIA would not resume its unlawful conduct.  *See* MTD Opp'n at 13-16.

Like the Tarasiuk Letter, the revised regulation fails to carry Defendants' heavy burden under the voluntary cessation standard.  This is so for at least five reasons.

---

[3]    This standard applies equally to federal government defendants as to private parties.  *E.g.*, *Adarand Constructors*, 528 U.S. at 221-222; *Payne*, 837 F.2d at 491-492; *see also, e.g.*, *Byrd v. United States E.P.A.*, 174 F.3d 239, 244-245 (D.C. Cir. 1999); *American Iron & Steel Inst. v. United States E.P.A.*, 115 F.3d 979, 1007 (D.C. Cir. 1997); *Wagner v. Taylor*, 836 F.2d 566, 570 n.33 (D.C. Cir. 1987); *In re Center for Auto Safety*, 793 F.2d 1346, 1351-1353 (D.C. Cir. 1986); *Atlantic Richfield Co. v. United States*, 774 F.2d 1193, 1198 (D.C. Cir. 1985); *Northwestern Univ. v. United States Dep't of Agriculture*, 403 F. Supp. 2d 83, 85-86 (D.D.C. 2005); *Gray Panthers Project Fund v. Thompson*, 273 F. Supp. 2d 32, 34-37 (D.D.C. 2002); *Fund for Animals v. Jones*, 151 F. Supp. 2d 1, 5-7 (D.D.C. 2001); *American Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1308-1312 (D.D.C. 1995).  Defendants' unsupported assertion to the contrary, *see* Defs.' Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 7-9, ignores this body of case law.  *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990), cited by the Defendants, held only that the voluntary cessation standard did not apply because Congress's "non-reenactment of a one-time condition that expired of its own terms cannot be viewed as cessation of conduct." *Id.* at 705.  Any additional dicta in *Clarke* as to the applicability of the standard applied specifically to Congress, not to other government entities.  *Id.*; *see also American Historical Ass'n*, 876 F. Supp. at 1312 (rejecting argument that under *Clarke* the "voluntary cessation" rule did not apply to a government defendant).

*First*, to assume that the CIA will correct its illegal conduct now that it has amended its regulation ignores the history that led to this suit: Defendants adopted and maintained their illegal policy and practice of denying the Archive's news media status despite (1) binding D.C. Circuit authority specifically holding that the Archive qualifies as a "representative of the news media"; (2) an Order of this Court specifically directing the CIA to treat the Archive as a "representative of the news media"; and (3) mounting evidence of the Archive's expanding role as a disseminator of news, *see* Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Summ. J. Mem.") at 9-11. Before bringing this suit, the Archive repeatedly brought prior case law and information about its publishing activities to the CIA's attention and vigorously tried to persuade the CIA to desist its illegal policy and practice, all to no avail. *Id.* at 9-14; MTD Opp'n at 5-6. If these conditions did not prevent the CIA from illegally refusing to treat the Archive as a "representative of the news media," then the adoption of the new regulation cannot reasonably be expected to do so either—let alone to provide the strong assurance needed to make it "*absolutely* clear" that the CIA's wrongful behavior cannot reasonably be expected to recur. *See Payne*, 837 F.2d at 492 (defendant officials' "history of stubborn refusals" to honor plaintiff's FOIA requests weighed against finding of mootness).

*Second*, whatever the content of the new regulation, the CIA through the Tarusiak Letter already has indicated that it retains discretion to subject the Archive to different (and less favorable) standards than the agency otherwise would apply to news-gathering organizations under the regulation. Specifically, the CIA told the Archive that, in all events, it would treat the Archive as a 'representative of the news media" for future FOIA requests only if the CIA, applying unspecified criteria, determined that doing so was "in compliance" with the statute and that the Archive has made "no change" in its publishing activity since the date of the letter.

Thus, the CIA has indicated that the new regulation has no bearing on its pattern of illegal conduct toward the Archive.

*Third*, the CIA's newly revised definition simply parrots the definition found in regulations promulgated two decades ago by the Office of Management and Budget ("OMB"). *See* 52 Fed. Reg. 10,012, 10,018 (Mar. 27, 1987). Those OMB regulations were in force when the CIA adopted and maintained the illegal policy and practice that is challenged in this lawsuit, yet the CIA ignored them even though the FOIA specifically requires that all U.S. government agencies, including the CIA, "shall conform" their FOIA fee policies to the OMB's guidelines. 5 U.S.C. § 552(a)(4)(A)(i). The revision of the CIA's regulations thus does not substantially alter the legal landscape against which the CIA assesses FOIA processing fees, but simply restates a rule with which the CIA was already required to comply.

In fact, the CIA's newly revised definition is nearly identical to the definition of "representative of the news media" contained in the CIA's original 1987 regulations, which likewise mirrored the OMB definition. *See* 52 Fed. Reg. 46,456, 46,458 (Dec. 8, 1987); Compl. ¶ 25. Notably, it took a court order for the CIA to treat the Archive as a "representative of the news media" under that version of the regulation, as well. *See* Order, *Archive v. CIA*, at 2 (Compl. Ex. 1). When the CIA changed course and proposed a different definition in 1997—the now-superseded definition that was challenged in this suit—it explained that the new definition would "not substantially alter the existing rights of members of the public," but would "expand" the definition of "representative of the news media." 62 Fed. Reg. 32,479, 32,480 (June 16, 1997). And indeed, the CIA continued to recognize the Archive's news media status for some eight years under that superseded definition and did not adopt its illegal policy and practice until 2005. Thus, the superseded definition cannot be said to have caused the CIA's illegal policy and

practice, and its amendment cannot reasonably be expected to bring an end to that illegal pattern
of conduct.

*Fourth*, even assuming the CIA determines to apply the new regulation to the Archive's
future FOIA requests, the regulation's language still fails, particularly given the CIA's actions
since 2005, to provide assurance that the CIA will no longer erroneously arrogate to itself the
discretion to decide which of its records are "newsworthy." As the undisputed allegations in the
Complaint show, the CIA's approach to assessing newsworthiness has been arbitrary and
irrational and inconsistent with the FOIA and the D.C. Circuit's decision in *Archive v. DOD*.
The leeway afforded to the CIA to continue its arbitrary approach under the new definition—by
contending that a particular request is not "about current events" or would not be "of current
interest to the public," *see* 72 Fed. Reg. at 39,316—confirms that the enactment of the new
regulation does not provide the assurance necessary to support a finding of mootness.[4]

*Finally*, the cynicism evident in the CIA's Federal Register statement accompanying
notice of the final rule reveals an agency that has not embraced a meaningful change of policy,
but is instead engaged in a transparent effort to evade judicial review of its conduct. The CIA
continues to insist there was nothing wrong with its approach to FOIA processing fees under the
old regulation, *see id.*, making it all the more reasonable to expect that its illegal policy and
practice will continue. *See American Historical Ass'n*, 876 F. Supp. at 1309 ("[C]ourts have

---

[4]    Tellingly, the CIA declined to adopt a more far-reaching rule that it originally had proposed, on
January 8, 2007, that would have established a blanket exemption from search and review fees covering
virtually all organizations submitting FOIA requests, including the Archive. *See* 72 Fed. Reg. 694 (Jan.
8, 2007) (proposing to eliminate review fees for all requesters and to assess search fees only on requests
from a federal, state, or local penitentiary or correctional facility). Under the proposed rule, the CIA
would have had no occasion to determine whether the Archive was a "representative of the news media,"
because there would have been no fee assessment contingent on such a determination. In its July 18
statement, the CIA did not provide any meaningful explanation for its decision to abandon this proposed
rule and to adopt a regulation modeled after the OMB rule, which, the CIA concedes, resulted in "a more
modest change" from the status quo. 72 Fed. Reg. at 39,316.

repeatedly held that a defendant's defense of challenged official conduct 'makes it more likely that [the plaintiff] will be subject to the procedures' in the future." (citations omitted)). Moreover, the CIA has admitted that its purpose in adopting the final rule was not to remedy a defect in its illegal policy and practice—since the CIA recognizes no such defect—but instead to manufacture an alleged basis for ending the Archive's suit. *See* 72 Fed. Reg. at 39,316. Such gamesmanship removes any doubt that Defendants cannot satisfy their heavy burden to show that it is "*absolutely* clear" that their illegal conduct will not resume.

In short, this remains a live case in which only judicially enforceable declaratory and injunctive relief can eradicate the effects of the CIA's illegal policy and practice and assure that it will not continue that pattern of conduct. Nothing in the regulation changes that. Nor should the CIA be permitted to evade judicial review of its illegal conduct through a purported shift in policy that evinces no recognition of wrongdoing and provides no assurance the agency will not revert to its old ways.

## CONCLUSION

For these reasons, and for the reasons stated in the Archive's memorandum in opposition to the motion to dismiss, Defendants' motion to dismiss should be denied. And for the reasons set forth in the Archive's memorandum in support of summary judgment—to which the CIA to this day has never responded—the Court should enter summary judgment in favor of the Archive.

Respectfully submitted,

Dated: August 24, 2007

*David S. Mendel*
Patrick J. Carome (D.C. Bar No. 385676)
David S. Mendel (D.C. Bar No. 470796)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000
(202) 663-6363 (facsimile)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street, N.W.
Washington, D.C. 20037
(202) 994-7000

*Counsel for Plaintiff National Security Archive*