UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
NATIONAL SECURITY ARCHIVE,     )
                               )
        Plaintiff,             )
                               )
    v.                         )   Civil Action No. 06-1080(GK)
                               )
THE CENTRAL INTELLIGENCE       )
AGENCY, et al.,                )
                               )
        Defendants.            )
_____)
```

## MEMORANDUM OPINION

Plaintiff National Security Archive(the "Archive") brings this action against the Central Intelligence Agency (the "CIA"), General Michael V. Hayden, in his official capacity as Director of the CIA, and Scott A. Koch, in his official capacity as Information and Privacy Coordinator of the CIA (collectively "Defendants"). This matter is before the Court on the Archive's Motion for Summary Judgment [Dkt. No. 12] and Defendants' Motion to Dismiss [Dkt. No. 15]. Upon consideration of both Motions, their Oppositions, Replies, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss is **granted**, and accordingly the Archive's Motion for Summary Judgment is **denied.**

I.   **BACKGROUND**[1]

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended by the Freedom of Information Act of 1986 ("FIRA"), Pub. L. No. 99-570, § 1801-04, 100 Stat. 3207-48, 48-50. The Archive alleges that Defendants violated the FOIA by failing and refusing to treat the Archive as a "representative of the news media" (Count I); violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, by "adopting, interpreting, and applying the CIA regulations defining 'representative of the news media' and 'news' in a manner that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and lacking in substantial evidence or factual basis" (Count II); and violated the APA relying on CIA regulations that "are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law" (Count III).

The Archive brings this action against the Defendants seeking a judgment: (1) declaring that the Archive is entitled to preferential status as a "representative of the news media" for purposes of assessing FOIA processing fees; (2) declaring that the CIA's determinations to the contrary and its continuing policy and practice of refusing to waive search fees for the Archive's FOIA requests violate the FOIA and the APA; (3) enjoining the CIA to treat the

---

[1] For purposes of ruling on a motion to dismiss for lack of subject matter jurisdiction, the factual allegations of the complaint must be presumed to be true. <u>Wilbur v. CIA</u>, 273 F. Supp. 2d 119, 122 (D.D.C. 2003). Therefore, the facts set forth herein are taken from Plaintiff's First Amended Complaint.

Archive as a representative of the news media for existing and future requests that are not made for commercial uses; (4) declaring invalid and enjoining enforcement of regulations relied upon by the CIA to determine that the Archive is not a "[r]epresentative of the news media," including but not limited to 32 C.F.R. § 1900.02(h)(3); (5) providing further injunctive and equitable relief requiring the CIA immediately to process the Archive's previously submitted requests for records, to accord those requests the place in the processing queue that they would have had if the CIA had not refused to process the requests without the Archive's agreement to pay search fees, and to disclose improperly withheld records; and (6) to reimburse the Archive for all wrongfully assessed processing fees (including but not limited to search fees) that the Archive pays or has paid prior to resolution of this action. Compl. at 4. The Archive requests that the Court retain jurisdiction over this matter until Defendants have fulfilled all of their statutory, regulatory, and Court-ordered obligations, and also seeks attorneys' fees. Compl. at 24.

The events giving rise to this lawsuit began in October of 2005, when the CIA halted its presumptive treatment of the Archive as a "representative of the news media" under the FIRA and instead requested that the Archive prove its news media status for each of 42 separate FOIA requests. Compl. at 12-13. In March 2006, the CIA retroactively denied the Archive news media status in connection with one of its requests that originally had been accorded news media

3

status when submitted in 1999, bringing the total of contested requests to 43.

Each request stated that the Archive qualified for waiver of search and review fees as a representative of the news media and that the request was made as part of a scholarly and news research project and not for commercial use.[2]  The CIA provided various reasons for refusing to treat the Archive's requests as having been made by a representative of the news media.  All of its reasons were based on the CIA's stated conclusion that the content of the requests did not meet the definition of "news" set forth in the applicable CIA regulations, 32 C.F.R. § 1900.02(h)(3), and therefore that the Archive did not qualify as a "representative of the news media." Compl. at 13-14.

The Archive alleges that in failing to treat it as a representative of the news media, Defendants departed from 15 years of settled practice without any reasonable explanation.  The Archive also alleges that Defendants' refusal was contrary to law, citing the Court of Appeals' decision in Nat'l Security Archive v. U.S. Dep't of Defense, 880 F.2d 1381 (D.C. Cir. 1989), in which it held that certain publication activities of the Archive qualified the organization as a "representative of the news media" under FIRA.  The

---

[2]The FOIA, as amended by the FIRA, authorizes federal agencies to charge a FOIA requester fees sufficient to recover certain costs of processing the FOIA request, unless the records "are not sought for commercial use" and the requester is a "representative of the news media" or another favored type of requester identified by the statute.  See 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Archive also relied on Judge Jack Penn's 1990 Memorandum Order in Nat'l Security Archive v. CIA, in which he enjoined the CIA from denying the Archive's "pending fee waiver requests on the ground that [the Archive] is a 'commercial requester.'" Judge Penn also ordered the CIA to treat the Archive "as a 'representative of the news media,' within the meaning of 5 U.S.C. 552(a)(4)(A)(ii)(II)." Civ. No. 88-0501 (D.D.C. Jun. 30, 1990), at 1,2.

On September 8, 2006, Defendants notified the Archive that the CIA had reconsidered and withdrawn its previously-issued decisions respecting denial of news media representative status and the imposition of search fees for the requests at issue. See Defs.' Mot. to Dismiss at 2. Defendants further informed the Archive that the CIA was issuing a new decision with respect to the FOIA requests at issue, granting the Archive news media representative status for those requests, and granting the Archive news media representative status with respect to all future FOIA requests, so long as the requests were not for commercial purposes and complied with the requirements of 5 U.S.C. § 552. Id. at 2-3. Defendants also noted the likely revision of 32 C.F.R. § 1900.02(h)(3) to reflect the Office of Management and Budget ("OMB") guidelines.[3] On July 18, 2007, the CIA did revise the regulation at issue, changing its

---

[3]The OMB guidelines in question define "representative of the news media" to mean "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public." 52 Fed. Reg. 10,012 10,018 (Mar. 27, 1987). "News" is defined as "information that is about current events or that would be of current interest to the public." Id.

5

definition of "news" to match that found in the OMB guidelines. <u>Id.</u> at 3; <u>see also</u> Defs.' Not. of Supplemental Auth. [Dkt. No. 22].

**II.  STANDARD OF REVIEW**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction to hear its case. <u>See</u> <u>Jones v. Exec. Office of President</u>, 167 F. Supp. 2d 10, 13 (D.D.C. 2001).  In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." <u>Wilbur</u>, 273 F. Supp. 2d. at 122 (citations and quotations omitted).  The Court may consider matters outside the pleadings.  <u>See</u> <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).  The Court may also rest its decision on the Court's own resolution of disputed facts.  <u>Id.</u>

**III. ANALYSIS**

Defendants allege that the grant of the 43 FOIA requests at issue, the CIA's statement that it will treat the Archive as a news media representative in the future, and the CIA's revision of the relevant regulations moot the instant civil action.  To prevail on mootness grounds, a defendant must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (internal quotations and citations omitted).

Defendants have met that burden with respect to the 43 FOIA requests.  The CIA has granted, subsequent to the Archive's filing of this suit, the Archive's request for news media representative status, has not charged fees for production of the requested documents, and has accorded the requests the place they would otherwise occupy in the Agency's FOIA queue.  Therefore, all claims based upon the alleged wrongful withholding of news media representative status in connection with those 43 FOIA requests must be dismissed.  Accordingly, the Archive's request for injunctive and equitable relief requiring the CIA immediately to process the Archive's previously submitted requests for records and to reimburse the Archive for all wrongfully assessed processing fees is denied as moot.[4]

---

[4] Since the Archive had never actually paid any processing fees, none were refunded.

However, the Archive responds by arguing that the CIA's denial of news media representative status is a result of an ongoing CIA policy and practice of refusing to waive search fees for the Archive's FOIA requests in violation of the FOIA and the APA. The Archive argues that even if its claims involving the specific 43 FOIA requests have been mooted, its request that the Court enjoin the CIA to treat the Archive as a representative of the news media for all future requests is <u>not</u> moot.[5]

Even assuming the correctness of the Archive's argument that some of its claims have not been mooted by the CIA's recent actions, those claims nevertheless should be dismissed as unripe. The Archive concedes that it seeks a pre-enforcement injunction to "prevent the CIA from <u>future</u> illegal conduct." Pl.'s Opp. to Defs.' Mot. to Dismiss at 2. Given the recent revision of CIA regulations and Defendants' representations that the Archive will be accorded news media status, any attempt by this Court at this time to "prevent the CIA from <u>future</u> illegal conduct" would amount to providing the parties an advisory opinion. At present it is unclear how the CIA will apply its revised regulations. Therefore, any potential injury

---

[5] The Archive also requests that the Court declare invalid and enjoin enforcement of the regulations relied upon by the CIA to determine that the Archive is not a "[r]epresentative of the news media," including but not limited to 32 C.F.R. § 1900.02(h)(3). Compl. at 4. This prayer for relief is mooted by the CIA's recent revision of the regulations at issue here. Indeed, the CIA's recent revision conforms its regulations to the Office of Management and Budget regulations on this topic. This is prcisely what the Archive has asserted was required to comply with FOIA. Pl.'s Mot. for Summ. J. at 31-32.

that may occur from application of those regulations is far too speculative for adjudication. Accordingly, all claims not dismissed on mootness grounds must nevertheless be dismissed as unripe.

**A.   The Archive's Claims with Respect to the 43 Initially Denied FOIA Requests Must be Dismissed on Mootness Grounds.**

"A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Community Hous. Trust v. Dep't of Consumer & Regulatory Affairs, 257 F. Supp. 2d 208, 218 (D.D.C. 2003) (quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)).

Under the mootness doctrine, a defendant that voluntarily ceases activities challenged by the Plaintiff, and then moves to dismiss on the grounds of mootness, bears a "heavy burden" of proof to demonstrate that the challenged action will not happen again. Community Hous. Trust, 257 F. Supp. 2d at 218 (quotations and citations omitted). As the Supreme Court has stated, it is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982). Rather, if a defendant claims its voluntary conduct has mooted the controversy, it must show that "there is no reasonable expectation that the conduct will recur and . . . 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Arizona Pub. Serv.

9

Co. V. EPA, 211 F.3d 1280, 1296 (D.C. Cir. 2000) (emphasis in original) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

Thus, in this case, Defendants bear the "heavy burden" of showing that "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (internal quotations and citations omitted). Defendants have carried this burden with respect to the 43 specific FOIA requests at issue. Indeed, the Archive does not appear to contest that its claims with respect to the 43 FOIA requests are mooted. Instead, the Archive argues in its Opposition to the CIA's Motion to Dismiss that "the mootness of one claim in a suit does not deprive the Court of jurisdiction over the remaining, live claims in the case." Pl.'s Opp. to Defs.' Mot. to Dismiss at 10 (citations omitted). In other words, the Archive concedes that its suit is moot with respect to the 43 FOIA requests, but contends that its allegation that the CIA adopted a policy and practice of assessing processing fees in violation of the FOIA is not mooted by the CIA's grant of those 43 specific, identified requests.

It is true that "if a plaintiff challenges both a specific agency action and the policy that underlies the action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." City of Houston v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1428 (D.C. Cir. 1994) (emphasis

10

in original) (citing Payne Enters., Inc. V. United States, 837 F.2d 486 (D.C. Cir. 1988); Better Gov't Ass'n v. Dep't of State, 780 F.2d 86 (D.C. Cir. 1986); Super Tire Eng'g Co. V. McCorkle, 416 U.S. 115 (1974)).  Defendants argue, however, that events that transpired subsequent to the filing of this litigation (namely, the CIA's decision to grant news media representative status to the Archive's requests, the CIA's representation that future requests would be accorded such status, and the revision of the relevant regulation) make clear that Defendants' past practices under the prior regulation "could not reasonably be expected to recur." Washington Legal Found. v. Hemney, 202 F.3d 331, 336 (D.C. Cir. 2000).

Because the Archive's remaining claims are unripe for adjudication, the issue of whether Defendants' actions in this case have mooted the Archive's additional claims need not be reached.

> **B.    The Archive's Claims with Respect to the CIA's Ongoing Policy and Practice Are Unripe for Adjudication.**

In determining whether a case is ripe for adjudication, a court must evaluate "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." Abbot Labs. v. Gardner, 387 U.S. 136, 149 (1967).  Our Court of Appeals has held that the ripeness inquiry involves consideration of both constitutional Article III concerns and prudential, "pragmatic concerns," such as "the agency's interest in crystallizing its policy before that policy is subjected to judicial review, the court's interests in avoiding unnecessary adjudication and in deciding issues

11

in a concrete setting, and the petitioner's interest in prompt consideration of allegedly unlawful agency action." Better Gov't Ass'n, 780 F.2d at 92.

In Better Government Association v. Department of State, the Court of Appeals considered a factual scenario very similar to the one before this Court. In that case, the Better Government Association and the National Wildlife Federation had been denied FOIA fee waivers by Government agencies and had challenged those denials in this Court. 780 F.2d at 88. In each case, the Government reversed its position after the complaints were filed, waived the fees in question, and filed a motion for summary judgment on the grounds that the claims involving the individual denials of the fee waiver requests were moot and that the challenges to the facial validity of the regulations at issue were not ripe. Id. The District Court so held. The Court of Appeals reversed the grant of summary judgment, and held that "[a]lthough the challenges to the guidelines and the regulation as applied to the particular fee waiver requests are indisputably moot . . . the appellants' claims that the . . . regulation [is] facially invalid survive." Id. The Court of Appeals went on to engage in a ripeness analysis of the appellants' facial challenges to the regulation at issue.

In setting forth its ripeness analysis, the Court held that it must first assess "whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review." Id. at 92. Second, the Court would consider

12

"whether the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form." Id.  Finally, the Court would examine "the appellants' interest in immediate review," or whether "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs."  Id. (citation omitted).

First, it must be determined whether the disputed claims raise purely legal questions and therefore would be "presumptively suitable for judicial review."  Better Gov't Ass'n, 780 F.2d at 92. Unlike the factual scenario in Better Government Association, the regulations at issue here have recently undergone a substantial revision, and therefore the Archive's facial challenge to the regulations as failing to comply with the OMB regulations has been mooted. Moreover, the Court has not been presented evidence that the new regulations have been applied so as to violate FOIA or the APA. Indeed, at present the factual record is unclear as to how Defendants' policy and practice will be applied to future Archive FOIA requests.  With these factual questions left unanswered, it is apparent that the disputed claims do not raise "purely legal questions" and therefore are not presumptively suitable for judicial review.

Second, it must be determined whether the court or the agency "would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more

13

concrete form." Better Gov't Ass'n, 780 F.2d at 92. As just mentioned, Defendants have represented that the Archive will be considered a representative of the news media with respect to all future FOIA requests, so long as the requests are not for commercial purposes and so long as they comply with the requirements of 5 U.S.C. § 552. Defs.' Mot. to Dismiss at 2-3. In addition, Defendants have revised the regulation at the center of the Archive's Complaint in this case, 32 C.F.R. § 1900.02(h)(3), to reflect the definition of "news" found in the OMB guidelines, as the Archive has asserted is required under FOIA. Defs.' Not. of Supplemental Auth [Dkt. No. 22]. Given the relatively significant changes made in response to the Archive's Complaint, it is apparent that the Court would benefit from postponement of review until Defendants' "ongoing policy and practice" has assumed a final form. Indeed, given the lack of concrete information regarding how the CIA's new regulation will be applied, any ruling by this Court would risk running afoul of the constitutional prohibition on advisory opinions.

Finally, given Defendants' representations that the Archive will be considered a representative of the news media with respect to all future FOIA requests made in compliance with 5 U.S.C. § 552, there is no indication that the Archive's day-to-day affairs will be impacted negatively by the Court's abstention from ruling on this issue. The Court recognizes the Archive's position that its "heavy reliance on the FOIA and its fee provisions to support its publication activities confers on the Archive a strong interest in prompt adjudication,"

P.'s Opp. to Defs.' Mot. to Dismiss at 19 n.18, but given Defendants' representations that it has changed the policy and practice about which the Archive complains,[6] the Court does not foresee any imminent risk to the Archive's publication activities.

**IV.  CONCLUSION**

For the reasons set forth above, the Archive's Motion for Summary Judgment [Dkt. No. 12] is **denied**, and Defendants' Motion to Dismiss [Dkt. No. 15] is **granted**.  The above-captioned case is dismissed for lack of subject matter jurisdiction.  An Order shall issue with this Memorandum Opinion.


July 14, 2008                              /s/
                                           Gladys Kessler
                                           United States District Judge


**Copies to: Attorneys of record via ECF**

---

[6]The Court of Appeals has held that in deciding "whether a case presents a live controversy," it is a well settled practice to accept a government defendant's representations regarding rectification of the alleged illegal behavior. Comm. in Solidarity with the People of El Salvador (CISPES) v. Sessions, 929 F.2d 742, 744-45 (D.C. Cir. 1991).