**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE NATIONAL SECURITY ARCHIVE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06-CV-1080 (GK) |
| CENTRAL INTELLIGENCE AGENCY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR RECONSIDERATION OF
THE COURT'S JULY 14, 2008 ORDER DISMISSING THE CASE, OR, IN THE
ALTERNATIVE, FOR RELIEF FROM OR TO ALTER OR AMEND JUDGMENT**

As of July 14, 2008, when this Court decided the parties' competing dispositive motions,

the only claim still at issue was the Archive's challenge to the CIA's policy and practice of

regularly failing to treat the Archive as a "representative of the news media" under the FOIA's

fee provision, 5 U.S.C. § 552(a)(4)(A)(ii). By that time, the Archive's other principal

claims—for reversal of the CIA's denial of news media status with respect to 43 particular

Archive FOIA requests and for invalidation of a CIA regulation purporting to govern fee status

determinations—had been rendered moot by the agency's post-suit reversal of those denials and

abandonment of that regulation. While the Archive did not contest that those claims had become

moot, it nevertheless steadfastly maintained that a live (and ripe) controversy remained with

respect to its challenge to the CIA's ongoing practice due to the non-speculative risk that that

practice will persist.

In its July 14 ruling, this Court correctly held that the Archive's claims concerning both the CIA's handling of the 43 particular FOIA requests and the CIA's superceded regulation were moot. As for the Archive's challenge to the CIA's ongoing practice, however, the Court declined to accept the agency's invitation to dismiss on grounds of mootness. Instead, the Court dismissed this challenge on the basis of lack of ripeness, an issue that the CIA had not even mentioned in its opening memorandum in support of its motion to dismiss and that the Archive's opposition to that motion had addressed only in a footnote.

While it undoubtedly was appropriate for the Court to examine the issue of ripeness, the Court was misled to the wrong conclusion regarding ripeness by false assurances that the CIA provided to the Court. Specifically, the Court's ripeness determination relied heavily on the CIA's repeated assurances that, in the wake of its reversal of its 43 adverse fee determinations and its abandonment of its prior regulation, "the Archive will be considered a representative of the news media with respect to all future FOIA requests." *See* Memorandum Opinion (Dkt. No. 30) ("Mem. Op.") at 8-9, 13-15 & n.6. As demonstrated below, however, recent events reveal that the CIA's assurances to this Court were wholly unreliable, and, at least in retrospect, completely false.

This Motion states substantial grounds for reconsideration and relief from judgment under Federal Rules of Civil Procedure 59(e) and 60(b)(3). These grounds include the existence of "newly discovered evidence," the need to correct manifest injustice, and the imperative of avoiding a judgment that the CIA procured through misrepresentations and other misconduct. In short, this Court should now reconsider and vacate its ripeness determination because, in direct contravention of the CIA's repeated representations to this Court, the CIA is once again routinely refusing to consider the Archive a representative of the news media with respect to many of its

2

recent FOIA requests.  During the past five months—including as recently as eleven days ago and three days *after* the Court's decision—the CIA's FOIA office has issued written determinations that the Archive is not entitled to "news media" fee status in connection with at least 100 separate FOIA requests for which the Archive had sought that status.  Most (but not all) of these determinations were accompanied by statements that the CIA will not seek to collect the fees, but only as a matter of "administrative discretion."  This practice of explicitly denying the Archive's status as a "representative of the news media" continues unabated, notwithstanding administrative appeals by the Archive, which the CIA announced it would not consider less than six weeks before this Court's July 14 decision.  Declarations from Catherine Nielsen, the Freedom of Information Coordinator for the Archive, and Kristin Adair, the Archive's Staff Counsel, detail the undisputed facts related to these recent events and accompany this motion.

The very recent, frequently repeated, and stubbornly continuing recurrence of the CIA's practice of declaring that the Archive is not entitled to "news media" status clearly makes the Archive's challenge to that practice ripe for adjudication.  This recurrence not only demonstrates that the CIA's contrary assurances to this Court were worth less than the paper on which they were written, but also supplies the very element that this Court's decision indicated would be necessary to make this controversy ripe: namely, concrete "evidence that the [CIA's] new [fee] regulations have been applied so as to violate FOIA or the APA." Mem. Op. at 14.

For these reasons, as explained more fully below, the Court should grant the Archive's motion for reconsideration, vacate its dismissal of the Archive's challenge to the CIA's ongoing practice of denying the Archive's requests for "news media" fee status, and proceed to decide the merits of that challenge.

## BACKGROUND

### A.    Procedural History

This action originally arose from the CIA's repeated misapplication of the FOIA's

processing-fee provisions to requests for records submitted by the Archive to the agency.  Mem.

Op. at 2-5.  In October 2005, the CIA began systematically refusing to treat the Archive as a

"representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii), a status that entitles the

requestor to have its FOIA requests fulfilled without having to pay fees for the agency's

searching for and reviewing responsive documents.  *See* Compl. ¶¶ 4-5.  Assessment of such fees

by the CIA was and is prohibited by the statute and by directly binding decisions of the D.C.

Circuit and this Court that specifically held the Archive to be a "representative of the news

media."  *See id.* ¶ 5.[1]  Nonetheless, the CIA continued to pursue this policy and practice of

charging the Archive for search fees to process FOIA requests that the Archive had submitted in

furtherance of its publishing activities and not for a commercial use.

Following extensive but unsuccessful efforts to halt the CIA's illegal practices through

administrative appeals and discussions, the Archive was forced to resort to litigation in June,

2006.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss (Dkt. No. 18) ("MTD Opp'n") at 5-6.

The core of the Archive's Complaint detailed the CIA's ongoing illegal policy and practice of

---

[1]    *See also National Security Archive v. U.S. Dep't of Def.*, 880 F.2d 1381 (D.C. Cir. 1989) ("*Archive v. DOD*") (holding that the Archive is a "representative of the news media" within the meaning of the statute); Order, *National Security Archive v. CIA*, Civ. No. 88-0501, at 2 (D.D.C. Jan. 30, 1990) ("*Archive v. CIA*") (Compl. Ex. 1) (ordering CIA to treat the Archive as a "representative of the news media").  During the pendency of this lawsuit, Congress amended the statutory definition of "representative of the news media" to codify the definition adopted by the D.C. Circuit in *Archive v. DOD*, confirming that the Archive qualifies for this preferred fee status.  *See* OPEN Government Act of 2007, Pub. L. No. 110-175, § 3, 121 Stat. 2525 (2008); *see also* 153 Cong. Rec. S10988 (Aug. 3, 2007) ("We have incorporated into the amendment the definition of media requestor that was announced by the D.C. Circuit in *National Security Archive v. U.S. Department of Defense*.") (statement of Sen. Kyl).

unlawfully demanding that the Archive justify its fee status separately for each request it

submits, of unlawfully analyzing the Archive's entitlement to preferred fee status according to

the subject matter of each request rather than the Archive's activities in gathering and

disseminating news, and of charging search fees for a large number of its FOIA requests. *E.g.,*

*id.* ¶¶ 2, 6, 34, 36, 46, 48, 50, 55, 56.  The Archive sought a judgment declaring that this

"ongoing policy and practice of refusing to waive search fees for the Archive's requests" violates

the FOIA and the Administrative Procedure Act, enjoining the CIA to treat the Archive as a

"representative of the news media" for all future FOIA requests that are not made for a

commercial purpose, and ordering the CIA to refrain from requiring the Archive to pay search

and review fees or to justify its news media status separately for each request.  *Id.* at ¶6 and

Prayer for Relief at ¶¶ (1), (2), (3).

Although the Archive's original Complaint also included challenges to the legality of the

CIA's fee determinations with respect to 43 particular FOIA requests and to the CIA's written

fee regulations, *e.g.,* Compl. ¶¶ 5, 6, 30, 33, 47, 51, 58-59, those claims were rendered moot by

the agency's subsequent actions.  Late in the evening of Friday, September 8, 2006—in direct

response to the Archive's Complaint and summary judgment motion filed earlier that day (and in

an apparent attempt to avoid judicial review of its illegal practices)—CIA official Adolfo

Tarasiuk, Jr., sent a letter to the Archive stating that the CIA would reverse its prior

determinations regarding the 43 FOIA requests discussed in the Complaint and would "initiate a

change in our regulations respecting the definition of 'representative of the news media.'"  *See*

Decl. of Catherine Nielsen ("Nielsen Decl."), ¶2 and Ex. A.  In subsequent briefing, the Archive

effectively conceded that its claims with respect to the 43 FOIA requests and the superceded CIA

regulations were mooted by these actions and by the CIA's adoption on July 18, 2007 of a final

rule[2] amending its FOIA fee regulations to comport with the regulations issued by the Office of Management and Budget. *See* MTD Opp'n at 10; Pl.'s Suppl. Mem. in Response to Defs.' Notice of Suppl. Auth. (Dkt. No. 23) ("Pl.'s Suppl. Mem.") at 5.

In its September 8, 2006 letter, the CIA also promised that it would treat the Archive as a "representative of the news media" for all of the Archive's future non-commercial requests, so long as the CIA determined that doing so was "in compliance" with the statute and that the Archive made "no change" in its publishing activity after the date of the letter. *See* Nielsen Decl. Ex. A.[3] The Archive did *not* concede that these assurances mooted the Archive's policy and practice claim. *See* MTD Opp'n at 9-20; Pl.'s Supp. Mem. at 5-10. Nonetheless, based on these representations, the CIA moved to dismiss the policy and practice claim on mootness grounds, making similar representations to this Court in its opening and subsequent briefs that it would treat the Archive as a "representative of the news media" for purposes of all future non-commercial FOIA requests, and that there was no reasonable likelihood that its previous, unlawful denials of the Archive's news media status would recur. These repeated representations included the following:

- In its opening brief on mootness, the CIA stated that the Archive "would be considered a representative of the news media with respect to all future FOIA requests, in accordance with [*Archive v. DOD*], and so long as the requests were not for commercial purposes and complied with the requirements of 5 U.S.C. § 552." Defs.' Mem. in Supp. of Mot. to Dismiss (Dkt. No. 15) at 2-3; *see also id.* at 7, 9 ("Defendants have granted Plaintiff representative of the news media status for . . . future requests.").

- In arguing that the Archive's motion for summary judgment was mooted by the September 8, 2006 letter, the CIA represented it had granted the Archive "precisely th[e]

---

[2]    *See* 72 Fed. Reg. 39,315 (July 18, 2007); 32 C.F.R. § 1900.02(h)(3).

[3]    Since issuance of this letter, the Archive has made no change to its publishing activity, and the CIA has made no finding that any of the Archive's requests were for commercial purposes or that treating it as a "representative of the news media" would not be in compliance with the statute. Nielsen Decl. ¶¶ 4, 11.

relief" sought by undertaking to treat the Archive as a "representative of the news media" for "all future FOIA requests." Defs.' Opp'n to Pl.'s Mot. for Summ. J. (Dkt. No. 17) at 2-3, 4.

- In replying to the Archive's argument that the CIA's voluntary cessation of its illegal conduct could not moot the Archive's suit, the CIA asserted that its September 8, 2006 letter granted the Archive "representative of the news media status for all future FOIA requests," and that there was no reasonable likelihood that the CIA's challenged conduct would recur, because the letter constituted a "genuine alteration of government policy that cannot reasonably be expected to be reversed." Defs.' Reply in Supp. of Mot. to Dismiss (Dkt. No. 21) at 1-2, 4-5, 9-10.

- In a supplemental brief addressing the effect of its new regulations adopted on July 18, 2007, the CIA told the Court that the Archive would receive news media status "for all future requests," further defended the September 8, 2006 letter as a meaningful change in policy, and claimed that any assertion that the CIA would resume its illegal conduct was nothing but "invective and pure speculation." Defs.' Opp. to Pl.'s Motion to File Suppl. Mem. of Law (Dkt. No. 24) at 2, 3-4, 5.

On July 14, 2008, this Court took the CIA at its word and granted Defendants' motion to dismiss with respect to the Archive's challenge to the CIA's ongoing policy and practice of denying the Archive's news media status in violation of the law. Mootness was not the basis for this aspect of the Court's ruling.[4] Instead, the Court held that the Archive's claim for relief from the CIA's ongoing policy and practice was not ripe for judicial review. Mem. Op. at 11-15. The Court's decision made clear that the central premise of this holding were the facts that the CIA had repeatedly represented it would treat the Archive as a "representative of the news media" for all future FOIA requests and that there was no indication that the CIA might resume its unlawful practices. *Id.* at 8-9, 13-15 & n.6.

---

[4]    In fact, the Court agreed with the Archive that, even if the claims involving the 43 specific FOIA requests discussed in the Complaint and the now-revised written regulation were mooted by subsequent action, the Archive's policy and practice claim was not necessarily moot. Mem. Op. at 10-11. As the Archive had argued, decisions of the court of appeals on virtually identical facts confirm that this aspect of the Archive's suit is not moot. *See* MTD Opp'n at 10-14.

**B.      CIA's Resumption of Illegal Denials of the Archive's News Media Status**

For over a year after the September 8, 2006 Tarasiuk letter, the CIA appeared to adhere to

the assurances made in that letter and purported to grant news media status for all of the

Archive's FOIA requests that the agency processed after that date.  *See* Nielsen Decl. ¶ 3.

Earlier this year, however—and in direct contravention of Defendants' repeated representations

to this Court—the CIA abandoned that approach and reverted to its prior policy and practice of

denying the Archive's news media status for many of its FOIA requests.

Specifically, from late February 2008 until the present, the Archive has received letters

from the CIA denying news media status for 100 of its FOIA requests.  *Id.* ¶¶ 4-5 and Ex. B &

H.[5]  The CIA is making these denials on a request-by-request basis, despite clear law—including

the CIA's own revised regulations that were amended in response to this lawsuit, *see supra* nn. 1

& 2—that require the CIA to afford the Archive preferred news media status based on the

Archive's overall activities and without regard to the content of each FOIA request.  In these

recent letters, the CIA asserts that it has determined that the Archive does not qualify as

"representative of the news media" for purposes of these requests and is therefore placing these

100 requests in the "all other" fee category.  *Id.* ¶ 4 and Ex. B; Decl. of Kristin Adair ("Adair

Decl.") ¶ 3 and Ex. I.  The letters offer no explanation for these decisions other than to state:

"Based on the information you provided in your letter, we determined that your request falls into

the 'all other' fee category, which means that you will be required to pay charges that cover the

---

[5]      These requests sought documents concerning a broad range of subjects, including both
matters of historical interest and matters related to current events, such as the ongoing war in
Iraq.  Nielsen Decl. ¶ 8.

cost of searching for and reproducing responsive records . . . ." *Id.*[6]  In the 98 adverse fee

determinations that the Archive received before this month (*i.e.*, before July 2008), the CIA

strangely—and again without explanation—announced that it would exercise its "administrative

discretion" to waive those charges and to process the Archive's requests without requiring

payment.  Nielsen Decl. ¶ 5 and Ex. B.

  The Archive unsuccessfully attempted to reverse the first 98 of these recent adverse

determinations through the CIA's administrative appeal process.[7]  On March 20, March 28, and

May 23, 2008, the Archive filed administrative appeal letters with the CIA's Agency Release

Panel challenging those determinations.  Nielsen Decl. ¶ 9-10 and Ex. E & F.  In these appeals,

the Archive again summarized the various sources of law requiring the CIA to afford it news

media status and quoted back to the CIA its repeated assurances that the Archive would be

treated as a "representative of the news media" with respect to future requests.  *Id.*  Nonetheless,

on June 3, 2008, the CIA responded that it would not even consider the Archive's administrative

appeals.  *Id.* ¶ 11.  The CIA asserted that, because it had waived the processing fees for those 98

requests "as a matter of administrative discretion," there was no adverse agency determination

from which the Archive had a right to appeal.  *Id.*

---

[6] In addition to the 100 requests for which news media status was denied (2 of which have
not yet been administratively appealed and one of which does not waive processing fees), during
the same time period, the CIA has recognized the Archive's news media status with respect to 17
of the Archive's FOIA requests, without offering any explanation for the differing treatment of
these requests.  Nielsen Decl. ¶ 6 and Ex. C.  For 14 additional requests, the CIA has begun
processing the requests without making any fee determination at all, stating only that it will
waive any fees as a matter of administrative discretion.  *Id.* ¶ 7 and Ex. D; Adair Decl. ¶ 4 and
Ex. J.

[7] For reasons of both timing and futility, the Archive has not (yet) administratively
appealed the two adverse determinations dated June 30, 2008 and July 17, 2008.

Even more recently, on July 7, 2008, only seven days before this Court's decision, the Archive received from the CIA yet another adverse determination of its fee status, this time in connection with an October 2006 FOIA request for information regarding the killing of seven members of a Colombian security force. Nielsen Decl. ¶ 12 and Ex. H; Adair Decl. ¶ 5. Unlike its previous 98 adverse determinations, this determination, dated June 30, 2008, did not state that it would waive fees, either as an exercise of "administrative discretion" or for any other reason. *Id.* As a result, the Archive now is in the very same position with respect to this October 2006 FOIA request that it had been with respect to the 43 requests contained in the original Complaint.[8]

## ARGUMENT

### A.     Legal Standard for Motions for Reconsideration

A motion for reconsideration[9] under Federal Rule of Civil Procedure 59(e) is discretionary and should be granted by the district court only if there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citation omitted); *accord Ciralsky v. CIA*, 355 F.3d 661, 671-72 (D.C. Cir. 2004). A motion to reconsider may not "present evidence which was available but not offered at the original motion

---

[8]     Even since this Court's July 14 ruling, the Archive has received from the CIA two more determinations, both dated July 17, 2008, that either refuse to recognize the Archive's proper fee status as a "representative of the news media" or fail to make a determination as to the Archive's fee status. Adair Decl. ¶¶ 3-4 and Ex. I & J.

[9]     Although styled as a Motion for Reconsideration, a term not used by the Federal Rules of Civil Procedure, this Motion is, as a formal matter, a motion to alter or amend a judgment under Rule 59(e) and for relief from a final judgment or order under Rule 60(b)(3). *See Piper v. U.S. Dep't of Justice*, 312 F. Supp. 2d 17, 20 (D.D.C. 2004); *see also Lindsey v. United States*, 532 F. Supp. 2d 144, 146 (D.D.C. 2008); *Natural Res. Def. Council, Inc. v. EPA*, 705 F. Supp. 698, 702 (D.D.C.) ("It is well-established that a proper Rule 59(e) motion may urge a court to reconsider or vacate a prior judgment."), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989)

or trial." *Natural Res. Def. Council*, 705 F. Supp. at 702. Rather, new evidence is restricted to evidence that is newly discovered or was previously unavailable despite the exercise of due diligence. *Niedermeier v. The Office of Max S. Baucus*, 153 F. Supp. 2d 23, 29 (D.D.C. 2001). A motion to reconsider should be granted if the moving party presents new facts that "'compel' a change in the court's ruling." *New York v. United States*, 880 F. Supp. 37, 39 (D.D.C. 1995). "Courts have not precisely defined what constitutes 'manifest injustice.'" *Piper*, 312 F. Supp. 2d at 22; *accord Oneida Indian Nation of New York v. County of Oneida*, 214 F.R.D. 83, 100 (N.D.N.Y. 2003).

Rule 60(b), on the other hand, sets out six discrete grounds for relief from a final judgment or order. *Lindsey*, 532 F. Supp. 2d at 146. Rule 60(b)(3) provides for such relief based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). A motion under Rule 60(b)(3) must be brought within a "reasonable time," but not more than one year from judgment. Fed. R. Civ. P. 60(c)(1). "Fed. R. Civ. P. 60(b)(3) applies to both intentional and unintentional misrepresentations." *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). Even where a movant cannot prove fraud or misrepresentation, he can prevail by demonstrating "other misconduct." *See Summers v. Howard University*, 374 F.3d 1188, 1193 (D.C. Cir. 2004). A movant under Rule 60(b)(3) must also demonstrate actual prejudice to be entitled to relief. *Summers*, 374 F.3d at 1193.

### B.     The CIA's Recent and Continuing Conduct Warrants Relief Under Either Rule 59(e) or 60(b)(3)

While Rule 59(e) motions are disfavored and granted only in "extraordinary circumstances," *Niedermeier*, 153 F. Supp. 2d at 27-28, the CIA's recent conduct constitutes such a circumstance. First, the CIA's recently renewed practice of denying the Archive's status as a "representative of the media" is new evidence that was not available during briefing of the

motions that the Court decided on July 14. *See Natural Res. Def. Council*, 705 F. Supp. at 702.

Approximately six weeks before this Court's decision, despite being repeatedly reminded in

detailed appeal letters of both its legal obligation and prior promises to treat the Archive as a

"representative of the media," the CIA refused to consider the appeals of 98 FOIA responses in

which it failed to live up to those promises and obligations. *See* Nielsen Decl. ¶ 9-10 and Ex. E

& F. While the CIA attempted to justify this decision by stating that the fees pertaining to those

98 requests were otherwise waived, only one week before the Court's July 14 Order, the Archive

received another adverse determination in which the CIA escalated its unlawful conduct. In a

letter dated June 30, and received July 7, the CIA denied the Archive's status as a news media

requestor with respect to yet another FOIA request, but this time it made no mention of any

waiver of the fees resulting from that determination. *See* Nielsen Decl. ¶¶ 4-5 and Ex. H; Adair

Decl. ¶ 5. This response both denied the Archive the preferred status that the law guarantees and

failed to waive any fees that will flow from that unlawful determination. *See id.* The CIA has

also issued 14 letters, one as recently as July 17, 2008, in which it makes no determination of the

Archive's fee status category, but merely indicates that any associated fees will be

administratively waived. *See* Nielsen Decl. ¶ 7 and Ex. D; Adair Decl. ¶ 4 and Ex. J. This

evidence of the CIA's resumed and ongoing practice of denying the Archive the fee status

determination to which it is legally entitled is "newly discovered" evidence that warrants

reconsideration of the July 14 Order.[10]

     Second, reconsideration also is warranted to remedy the manifest injustice that otherwise

would result from the CIA's recently resumed misconduct. This misconduct fatally undermines

the CIA's numerous prior assurances regarding future treatment of the Archive and removes any

---

[10]    The CIA's unlawful practices still continue even in the immediate aftermath of this
Court's ripeness decision. *See* Adair Decl. ¶¶ 3-4 and Ex. I & J.

doubt that the unlawful policy and practice challenged in this suit will persist absent relief from this Court. The CIA returned to its unlawful practices even after issuing the September 8, 2006 Tarasiuk letter, even after making numerous assurances to this Court that those practices would cease, even after replacing its prior regulations, and even after Congress codified into the FOIA the standard adopted in the D.C. Circuit's decision declaring the Archive to be a representative of the news media. *See supra* nn. 1-2. The CIA has done all this while simultaneously (and inconsistently) attempting to insulate its actions from judicial review by purporting to exercise "administrative discretion" to waive many (but not all) of the fees it says the Archive owes. While the standard for granting a motion based on manifest injustice is not well defined, *Piper*, 312 F. Supp. 2d at 22, surely, making bold assurances to the Court that illegal conduct will stop in order to obtain dismissal of an action and then resuming that same unlawful conduct, even while the Court retains jurisdiction over the case, must fit that bill.

Alternatively, Rule 60(b)(3) provides a separate ground for relief from judgment for many of these same reasons. This rule permits relief from judgment due to misrepresentation or "other misconduct" by an opposing party. Fed. R. Civ. P. 60(b)(3). As detailed above, the CIA misrepresented to the Archive in the September 8, 2006 Tarasiuk letter and to the Court in four separate pleadings that it would cease its unlawful practice of denying news media status to the Archive. *See supra* at 6-7. The falsity of its assurances is amply evidenced by the CIA's denial of news media status with respect to 100 Archive FOIA requests to which the agency has responded since February 2008. Whether this misrepresentation was intentional or unintentional is immaterial, as either type entitles the Archive to relief. *See Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). Even if the Court were to find that these false assurances by the CIA are not misrepresentations under Rule 60(b)(3), for all of the reasons noted above, the CIA's recent

13

resumption of its practice of denying news media status to the Archive constitutes "other misconduct" that warrants relief under that same Rule.

Further, it is undeniable that the CIA's false assurances and other misconduct have resulted in actual prejudice to the Archive. *See Summers*, 374 F.3d at 1193. Not only has the CIA thus far managed to evade judicial review of its actions through clever gamesmanship, it has relegated the Archive to the unenviable position it was in before it filed this lawsuit. Thus, absent relief in the present action, the Archive would have to continue administratively appealing each denial of news media status and consider filing separate court actions each time those appeals are either denied or otherwise rebuffed, and then face the prospect of the CIA evading judicial review through temporary, post-suit reversals of course. Where the CIA has not agreed to waive fees, the Archive also faces the prospect of being billed for the fees related to that request and, if the Archive does not pay these, of having the CIA stop processing its requests altogether while the billing dispute is resolved. For these reasons, absent the injunctive relief requested in the Complaint and this Court's retention of jurisdiction to enforce that remedy, the Archive would be severely prejudiced by the CIA's recurrent failure to afford the Archive the fee status to which it is entitled.[11]

In sum, the Archive is entitled to relief from judgment either under Rule 59(e) or 60(b)(3), and the Court's order dismissing the Archive's policy and practice claim should be

---

[11]    The CIA cannot claim that prejudice to the Archive is eliminated by its "administrative" waiver of fees associated with requests for which it has denied the Archive news media status. First, one of the most recent letters denying news media fee status, dated June 30, 2008 and received July 7, 2008, did not provide any such waiver. *See* Nielsen Decl. ¶ 5 and Ex. H. Second, as discussed further below, *see infra* at 20-21, the statute, binding precedent, and specific orders directing the CIA to treat the Archive as a news media FOIA requestor entitle the Archive to have its status as a "representative of the news media" recognized by the CIA, and do not merely require the CIA to forgive fees for alternative reasons. Third, the Archive has spent considerable time and resources in administratively appealing the CIA's unlawful conduct and in litigating this action, only to be back in the same position it was before it filed this lawsuit.

vacated. The CIA should not be permitted to make numerous promises to the Archive and this Court that it will correct its unlawful conduct, argue that these assurances render the case moot and unripe, and then resume that policy and practice. Nor should the CIA be permitted to sit idly by as the Plaintiff's challenge to that misconduct is dismissed because the Court credits the CIA's false representations that it was committed to altering its prior treatment of the Archive. These facts clearly demonstrate exceptional circumstances warranting post-judgment relief under Rule 59(e) or 60(b)(3).

C.    **Based on the CIA's Recent Conduct, The Archive's Suit Is Ripe For Judicial Review**

While this Court's July 14 Order determined that the Archive's challenge to the CIA's policy and practice is not ripe, re-examination of the controlling case law in light of the CIA's recent actions confirms that the Archive's policy and practice challenge is, in fact, ripe for immediate adjudication. The Supreme Court has established a two-prong test for determining ripeness that requires evaluation of "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." Mem. Op. at 11 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Application of this test compels the conclusion that the Archive's policy and practice claim is ripe.

Under the "fitness of the issue" prong, a court should determine whether the claim raises purely legal questions that are "presumptively suitable for judicial review" and whether the court or agency would benefit from postponing judicial review until the disputed policy has "crystallized." *City of Houston v. Dep't of Hous. and Urban Dev.*, 24 F.3d 1421, 1431 (D.C. Cir. 1994). As this Court observed, the "fitness of the issue" prong involves consideration of other "pragmatic concerns," including the "court's interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting, and the petitioner's interest in prompt consideration of

allegedly unlawful agency action." Mem. Op. at 11-12 (quoting *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 92 (D.C. Cir. 1986)).   Here, the Archive's challenge to the CIA's policy and practice with respect to its treatment of the Archive's FOIA requests raises a purely legal question, and the CIA's recent actions remove any question as to what shape its future conduct will take.

In *Better Government Association*, the D.C. Circuit held that a challenge to an agency's denial of preferred FOIA fee status presented a purely legal question that neither required nor would be facilitated by further factual development.  780 F.2d at 92-93.  This Court's July 14 opinion distinguished the facts of *Better Government Association* from those of the instant case on the premise that the CIA had revised its written regulations in response to the Archive's Complaint and that there was no evidence of how the CIA would apply its new regulations to the Archive's future FOIA requests.  Mem. Op. at 13.  But, as the evidence presented herein shows, the CIA has continued, and will continue, to deny preferred fee status to the Archive despite its contrary assurances and promulgation of a new regulation.  Thus, the only remaining question is a legal one:  whether the CIA's recurrent policy and practice of denying the Archive status as a "representative of the news media" is inconsistent with the law.  This is a legal question very similar to the one that *Better Government Association* held was ripe for judicial review. *See* 780 F.2d at 92-93; *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 492 (D.C. Cir. 1988)

(challenge to agency's policy and practice of denying access to records under FOIA presented "concrete legal dispute" requiring no further factual development or delay before adjudication).[12]

The Court's July 14 Order, again relying on the CIA's representations that it would treat the Archive as a "representative of the news media" for future FOIA requests, determined that the Court "would benefit from postponement of review until Defendants' 'ongoing policy and practice' has assumed a final form." Mem. Op. at 14. This "so-called 'crystallization' factor involve[s] consideration of whether a court might be forced to guess at the ramifications of vague regulatory standards before the agency lends them content by applying them," but it does not apply where "the outlines and impact of the disputed practice are manifest." *Payne*, 837 F.2d at 492-93. Based on the CIA's recent responses to the Archive's FOIA requests, the "final form" of the CIA's practice under its new regulation has been revealed. And that policy and practice is merely a resumption of the conduct originally complained of: the CIA is determining the Archive's status as a "representative of the news media" on a case-by-case basis (in contravention of the law, of court orders, and of the agency's own revised regulations) and denying that preferred status with respect to a large number of FOIA requests, without any justification for such treatment.[13]

---

[12]    *City of Houston*, which the CIA's reply brief cited on the question of ripeness, *see* Defs.' Reply in Supp. of Mot. to Dismiss (Dkt. No. 21) at 7, held that a "concrete dispute" was required "in order even to know what [the Defendant's] policy *is*." 24 F.3d 1421 at 1431. Here, however, the undisputed facts related to the CIA's adverse treatment of 100 recent Archive FOIA requests and the similarity of that treatment to that of the 43 FOIA requests that formed the original basis of this Complaint provide all the concrete facts necessary to adjudicate the lawfulness of the CIA's ongoing policy and practice with respect to the Archive's entitlement to preferred fee status.

[13]    Any remedial action or further change in policy in response to this motion should not affect the outcome of the Court's ripeness analysis. The CIA should not be allowed to further insulate its actions from judicial review by continually changing its policies in response to litigation in order to appear not to have "crystallized" a final policy or course of conduct.

Due to the CIA's recent conduct, the Court need not give significant consideration to the "hardship" prong of the ripeness analysis. Under this second prong, courts are to "ascertain if the harm that deferring review will cause the petitioners outweighs the benefits it will bring the agency and the court." *Eagle-Picher Industries, Inc. v. EPA*, 759 F.2d 179, 192 (D.C. Cir. 1985). However, "[w]here there are no institutional interests favoring postponement of review, a petitioner need not satisfy the hardship prong." *City of Houston*, 24 F.3d at 1431 n. 9. As the analysis above demonstrates, there are no legitimate benefits to either the Court or the agency in not deciding this case immediately.[14]

In any event, even if a showing of hardship were required, the Archive clearly will suffer great hardship if the CIA's actions are permitted to continue unchecked. This Court has already recognized the potential harm to the Archive of deferring judicial review, noting that the Archive's "heavy reliance on the FOIA and its fee provisions to support its publication activities confers on the Archive a strong interest in prompt adjudication." Mem. Op. at 14-15. Based on the facts available to this Court at the time of its Order, the Court found that no imminent harm to the Archive was foreseeable "given the Defendants' representations that it has changed the policy and practice about which the Archive complains." *Id.* Now that the CIA's representations have proven to be false, the harm to the Archive due to the recurrence of this policy and practice is clear, and far outweighs any imaginable benefit of further deferring review. *See, e.g., Better Gov't Ass'n*, 780 F.2d at 93-95; *Payne*, 837 F.2d at 493-494. The CIA's recently resumed approach to the Archive's FOIA requests also threatens to thwart a central purpose of FOIA: to "ensure an informed citizenry, vital to the functioning of a democratic society, needed

---

[14]    While the CIA would undoubtedly benefit from continuing to evade judicial review of its unlawful conduct for as long as possible, this is not the type of "benefit" envisioned by the case law.

to check against the corruption and to hold the governors accountable to the governed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). For all of these reasons, the Court should reconsider its conclusion that the Archive's policy and practice claim is not ripe for review, vacate its decision dismissing this claim, and proceed to adjudicate the claim.

**D.    The CIA's Recent Actions Also Confirm That This Controversy Is Not Moot**

While not deciding whether the Archive's policy and practice claim is moot, the Court's July 14 Opinion recognized that where, as here, a plaintiff contests both particular actions and a general policy or practice behind those actions, a defendant's voluntary cessation or reversal of the particular challenged actions does not moot the policy and practice claim. Mem. Op. at 10 (citing *City of Houston*, 24 F.3d at 1428). In prior briefs, the Archive has extensively discussed why its policy and practice claim was not mooted by the CIA's purported remedial actions. Rather than repeat that analysis here, Plaintiff incorporates those arguments herein by reference. *See* MTD Opp'n at 9-20; Pl.'s Suppl. Mem. at 5-10.

The CIA's most recent actions only confirm that the Archive's challenge to the CIA's illegal policy and practice is not moot. In order for a defendant's voluntary cessation of illegal conduct to moot the entire case, the defendant must establish that "it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (*per curiam*) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968) (emphasis added by *Adarand* Court)). Even assuming it ever could, the CIA certainly cannot make such a showing now. It is enough that the CIA has resumed the exact conduct originally complained of by denying the Archive news media fee status with respect to 100 FOIA requests. *See* Nielsen Decl. ¶ 4 and Ex. B;

Adair Decl. ¶ 3 and Ex. I. Even more troubling is the fact that the CIA refused to remedy that

conduct when the Archive's administrative appeals—which specifically reminded the CIA of its

legal obligations and assurances—provided it with an opportunity to do so. *Id.* ¶¶ 9-11 & Ex. H.

Indeed, not long after its rejection of those appeals, the CIA intensified it misconduct, issuing its

June 30 adverse determination of the Archive's fee status without any waiver of the resulting

fees. In the face of the CIA's escalating refusal to remain true to its word, the Court's ordinary

willingness "to accept a government defendant's representations regarding rectification of the

alleged illegal behavior," Mem. Op. at 15 n.6, is not warranted here.

While the CIA may cynically try to argue that this controversy is nevertheless moot

because it has waived fees as a matter of "administrative discretion" with respect to 99 of the 100

recent FOIA requests for which it has denied the Archive news media status, any such argument

should be rejected. The language of the statute, binding Court precedent, and, in fact, the CIA's

new regulations that the CIA promulgated in response to the present lawsuit all require that the

CIA recognize the Archive as a "representative of the news media" for all non-commercial

requests, not that it merely forgive or waive fees that supposedly arise from such requests. *See*

*supra* at nn. 1-2. Similarly, the CIA's repeated assurances to the Archive and the Court were not

simply that it would not charge fees to the Archive for its future FOIA requests, but that it would

recognize the Archive's rightful status as a "representative of the news media." *See supra* at 6-7.

With respect to the 100 recent requests for which the CIA has denied the Archive news media

status and the 14 for which it has made no fee category determination, the Archive is legally

entitled to appropriate treatment as a news media requestor and should not be forced to rely on

the vagaries of the CIA's "administrative" grace in order to avoid paying fees. Indeed, the Court

need look no further than the CIA's June 30, 2008 adverse determination—which both denied

news media status and refused altogether to waive any resulting fees—to see the peril of living according to the grace of the CIA. *See* Nielsen Decl. ¶12 and Ex. H. Thus, the CIA's ploy of waiving the Archive's fees while denying or failing to make a determination of its status as a news media requestor cannot render the Archive's policy and practice claim moot or unripe.

## CONCLUSION

Because the Court's July 14 decision rested in large part on assurances by the CIA that have now proved false and unreliable, and for the other reasons stated herein and in the Archive's briefs in opposition to Defendants' motion to dismiss, the Court should vacate its order dismissing the Plaintiff's policy and practice claim and deny the motion to dismiss with respect to this claim. Plaintiff further requests that the Court vacate its denial of Plaintiff's Summary Judgment Motion, treat the undisputed factual representations in the instant motion and attached Declarations and Exhibits as a supplement to that motion, and order the Defendants to show cause why summary judgment should not be granted in favor of Plaintiff on the policy and practice claim, with an opportunity for Plaintiff to reply, or else establish an alternative procedure for promptly resolving the merits of this case.[15]

---

[15]    If the Court determines, based on the Defendants' response to the instant motion, that additional briefing or discovery is required to decide the merits of Plaintiff's policy and practice claim, Plaintiff respectfully requests that the Court schedule a status conference for the purposes of discussing an appropriate process and schedule.

Respectfully submitted,


/s/ Patrick J. Carome
Patrick J. Carome (D.C. Bar No. 385676)
Catherine M.A. Carroll (D.C. Bar No. 497890)
Gregory B. Reece (D.C. Bar No. 493974)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 663-6000
(202) 663-6363 (facsimile)

Meredith Fuchs (D.C. Bar No. 450325)
General Counsel
The National Security Archive
Gelman Library, Suite 701
2130 H Street N.W.
Washington, D.C. 20037
(202) 994-7000

*Counsel for Plaintiff National Security Archive*

Dated:  July 28, 2008

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 28th day of July, 2008, a copy of the foregoing

Memorandum in Support of Plaintiff's Motion for Reconsideration of the Court's July 14, 2008

Order Dismissing the Case, or, in the Alternative, for Relief from or to Alter or Amend Judgment

was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic

service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.


/s/  Gregory B. Reece_____
Gregory B. Reece